## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

REIYN KEOHANE,                    )
                                  )
    *Plaintiff*,                   )
                                  )
v.                                )        **Case No. 4:24-cv-00434-AW-MAF**
                                  )
RICKY D. DIXON, *et al.*,          )
                                  )
    *Defendants*.                  )

## THE STATE'S RESPONSE TO PLAINTIFF'S MOTION
## TO RECONSIDER ORDER DENYING MOTION
## FOR TEMPORARY RESTRAINING ORDER

Defendants Ricky D. Dixon ("Dixon"), in his official capacity as Secretary of the Florida Department of Corrections ("FDC"), Clayton Weiss, in his official capacity as Health Services Director of the FDC ("Weiss"), and Gary Hewett, in his official capacity as Warden of Wakulla Correctional Institution ("Hewett" and, together with Dixon and Weiss, the "State"), hereby file this Response to Plaintiff's Motion to Reconsider the Court's Order denying Plaintiff's Motion for a Temporary Restraining Order (Doc. 16). In support of its Response, the State provides as follows:

## INTRODUCTION

For the third time, the State must respond to the retooled arguments of Plaintiff Reiyn Keohane ("Plaintiff"), alleging deliberate indifference regarding treatment

provided by the State for gender dysphoria.[1]  Plaintiff, an inmate diagnosed with gender dysphoria in FDC custody (Doc. 1, ¶ 4), seeks an emergency temporary restraining order (a "TRO") to prevent the State from (a) discontinuing Plaintiff's hormone treatment, and (b) requiring Plaintiff to comply with grooming and clothing standards for biological male inmates.  (Doc. 4).  Importantly, the State agreed during the October 31, 2024, hearing to preserve the *status quo* as to Plaintiff for at least thirty (30) days or until the conclusion of the evidentiary hearing on the Motion for a Preliminary Injunction.  And, as the Court previously noted, Plaintiff delayed more than three (3) weeks after receiving notice of FDC's revised policies regarding treatment for gender dysphoria to seek "emergency" relief.  In light of the State's accommodation of Plaintiff pending the Preliminary Injunction hearing, and Plaintiff's obvious delay in seeking "emergency" relief, Plaintiff continues to promote frivolous, unsubstantiated arguments, which the Court previously highlighted in its original order.

For the reasons stated above, the Court denied Plaintiff's motion for an emergency TRO on October 29, 2024.  (Doc. 14).  Ignoring the Court's reasoning, Plaintiff requests another review of these allegations. The Court should deny Plaintiff's Motion for Reconsideration for any one of the following five (5) reasons:

---

[1] See Keohane v. Jones, No. 4:16-cv-511-MW-CAS (N.D. Fla.); Keohane v. Inch, No. 4:20-cv-559-WS-MAF (N.D. Fla).

    (1)    Plaintiff's request for a TRO is moot;

    (2)    Plaintiff cannot establish any legal right to class-wide injunctive relief;

    (3)    Plaintiff may not seek relief based on an "emergency" of Plaintiff's own creation;

    (4)    Plaintiff cannot demonstrate a likelihood of success on the merits; and

    (5)    Plaintiff cannot demonstrate irreparable harm.

Accordingly, the State respectfully requests that the Court deny Plaintiff's Motion for Reconsideration, as the Court properly denied Plaintiff's request for a TRO.

## <u>PROCEDURAL HISTORY</u>

Plaintiff filed the Complaint for Declaratory and Injunctive Relief (the "<u>Complaint</u>") on October 25, 2024 (Doc. 1) and filed a Motion for a Temporary Restraining Order and/or Preliminary Injunction and Incorporated Memorandum of Law (the "<u>TRO Motion</u>") the same day (Doc. 4).  On October 29, 2024, the Court denied Plaintiff's request "to the extent it seeks a temporary restraining order on an emergency basis."  (Doc. 14 at 1).  As the Court noted, "the announcement that triggered [Plaintiff]'s claim was on September 30, but [Plaintiff] waited until Friday, October 25 to initiate this action."  (<u>Id.</u> at 3).  The Court justifiably relied upon Plaintiff's failure to show "why the action could not have been filed in time to allow an orderly resolution of the request for relief."  (<u>Id.</u> at 3).  The Court further noted Plaintiff's failure to establish "irreparable harm that would occur between October

30 and the date by which the court could—after providing [the State] a reasonable opportunity to respond—resolve the preliminary injunction." (<u>Id.</u> at 3-4).

The Court did, however, generously afford Plaintiff "expedite[d] briefing on the request for a preliminary injunction" and intends to "hold an expedited hearing (to the extent a hearing is necessary and appropriate)." (<u>Id.</u> at 4). The Court then scheduled a hearing for October 31, 2024, "not to address the merits but to address procedures for resolving the motion." (<u>Id.</u>). This hearing occurred on October 31, 2024, as ordered, and the Court set a series of deadlines during the hearing, including a deadline of November 14, 2024, for the State to respond to Plaintiff's Motion for a Preliminary Injunction and a deadline of November 27, 2024, for Plaintiff to file a Reply in support of the Motion for a Preliminary Injunction. The Court set a hearing on Plaintiff's Motion for a Preliminary Injunction for 9:00 a.m. on December 9, 2024. Importantly, the State agreed during the October 31, 2024, hearing to preserve the *status quo* as to Plaintiff for at least thirty (30) days or until the conclusion of the evidentiary hearing on the Motion for a Preliminary Injunction: <u>i.e.</u>, that it would allow Plaintiff to remain on hormone therapy and would not enforce the FDC grooming and clothing policies applicable to male inmates as to Plaintiff.

Prior to the October 31, 2024, hearing, Plaintiff filed a Motion for Reconsideration challenging the Court's denial of the TRO. (Doc. 16). In response to the Court's conclusion that Plaintiff delayed in seeking relief, Plaintiff claimed an

inability to seek relief earlier because of alleged delays in legal calls and an alleged inability to procure a copy of Health Services Bulletin 15.05.23 ("HSB 15.05.23") until October 24, 2024. (Doc. 16 at 2-3; Doc. 16-1, ¶ 8). Plaintiff further claims that the Court's denial of the TRO on irreparable harm grounds "focuse[d] on hormone therapy," while Plaintiff also alleges irreparable harm stemming from the allegations regarding compliance with male grooming and clothing/canteen standards. (Doc. 16 at 2, 3-6).[2] Neither of Plaintiff's arguments warrants reconsideration of this Court's denial of an emergency TRO, as a TRO remains inappropriate (especially in light of events arising after the filing of the Motion to Reconsider).

## LEGAL STANDARD

Plaintiff failed to specify the grounds for filing the Motion to Reconsider. (See Doc. 16). In any event, Plaintiff must clear a high bar to establish entitlement to reconsideration under either Fed. R. Civ. P. 59(e) or 60(b), especially as to the "extraordinary and drastic remedy" of a TRO. Fla. v. Mayorkas, 672 F. Supp. 3d 1206, 1212 (N.D. Fla. 2023) (quoting United States v. Jefferson Cnty., 720 F.2d 1511, 1519 (11th Cir. 1983)). Indeed, reconsideration itself constitutes "an extraordinary remedy [that] is employed sparingly" in recognition of "the interests

---

[2] Apparently, Plaintiff promptly abandoned the request for a TRO related to hormone therapy within days after filing the initial injunctive request. In any event, as explained below, any such request remains premature, and Plaintiff may not seek "emergency" relief based on an "emergency" of Plaintiff's own creation.

of finality and conservation of scare judicial resources." <u>Busby v. JRHBW Realty, Inc.</u>, 642 F. Supp. 2d 1283, 1286 (N.D. Ala. 2009) (citing <u>United States v. Bailey</u>, 288 F. Supp. 2d 1261, 1267 (M.D. Fla. 2003)). Further, "as a general rule, a motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice." <u>Id.</u> (quoting <u>Summit Med. Crt. of Ala., Inc. v. Riley</u>, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003)). Plaintiff's Motion for Reconsideration reflects none of these three (3) things.

To establish an entitlement to a TRO, Plaintiff must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." <u>Viral DRM, LLC v. Unknown Counter Notificants</u>, 688 F. Supp. 3d 1271, 1275 (N.D. Ga. 2023) (quoting <u>Schiavo ex rel. Schindler v. Schiavo</u>, 403 F.3d 1223, 1225–26 (11th Cir. 2005) (per curiam)). As explained below, Plaintiff failed to establish entitlement to either of the two (2) extraordinary remedies of reconsideration or the granting of a TRO, and the Court should decline to reconsider its denial of Plaintiff's requested TRO.

# ARGUMENT

## I.    PLAINTIFF'S REQUEST FOR A TRO IS MOOT.

First, the record establishes that Plaintiff faces no imminent risk of either (i) the discontinuation of hormone therapy; or (ii) forced compliance with the FDC grooming and clothing standards applicable to male inmates.  Indeed, the State represented during the Court's October 31, 2024, hearing that it would preserve the *status quo* as to Plaintiff until the evidentiary hearing on Plaintiff's Motion for a Preliminary Injunction.[3]  The State's representation to the Court eliminates any live controversy as to Plaintiff's request for a TRO.  Keohane v. Sec'y, Fla. Dep't of Corr., 952 F.3d 1257, 1267–68 (11th Cir. 2020) ("the Supreme Court has held almost uniformly that voluntary cessation by a government defendant moots the claim") (quoting Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga., 633 F.3d 1297, 1310 (11th Cir. 2011)); Pickens v. Conway, 2018 WL 3870005, at *2 (N.D. Ga. Mar. 28, 2018), report and recommendation adopted, 2018 WL 3862503 (N.D. Ga. Aug. 14, 2018) (holding that inmate's request for a TRO to prevent his triple-bunking was moot when the sheriff represented to the court that

---

[3] By agreeing to preserve the *status quo* as to Plaintiff until the Preliminary Injunction hearing, the State in no way admits the validity of Plaintiff's Eighth Amendment claim or that it has any merit whatsoever.  The State expressly preserves all arguments as to Plaintiff's Eighth Amendment claim and further states that its healthcare, including for individuals with gender dysphoria, exceeds all constitutional standards.

the plaintiff was moved to a two-bunk cell) (citing <u>Nat'l Ass'n of Bds. of Pharm.</u>, 633 F.3d at 1310).  Thus, Plaintiff's request for a TRO is moot, and the Court properly denied it.

Because Plaintiff's claim for a TRO is moot, Plaintiff cannot seek temporary injunctive relief on behalf of the purported class as defined in the Complaint.  (Doc. 1 at 5–8, ¶¶ 6–16; Doc. 4 at 26–36; Doc. 16 at 3–6).  The Eleventh Circuit plainly requires that "a class representative must be part of the class and possess the same interest and *suffer the same injury* as the class members."  <u>Prado-Steiman ex rel. Prado v. Bush</u>, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 156 (1982)) (emphasis added); <u>see also</u> <u>id.</u> ("[I]t is not enough that the conduct of which the plaintiff complains will injure *someone*.  The complaining party must also show that [they are] within the class of persons who will be concretely affected") (quoting <u>Blum v. Yaretsky</u>, 457 U.S. 991, 999 (1982)) (emphasis added).  Because the FDC will not enforce HSB 15.05.23 or FDC's male clothing and grooming standards as to Plaintiff prior to the Preliminary Injunction hearing, Plaintiff fails to qualify as a class member for purposes of the TRO.  Thus, the Plaintiff lacks any legal or factual basis to request class-wide injunctive relief of any kind, much less an emergency restraining order.

**II.    PLAINTIFF CANNOT ESTABLISH ANY LEGAL RIGHT TO CLASS-WIDE INJUNCTIVE RELIEF.**

Even if Plaintiff could properly seek a TRO on behalf of the proposed class (Plaintiff cannot, as explained above), class-wide relief remains inappropriate. Although the State will provide a more fulsome response to Plaintiff's class allegations in its Response to Plaintiffs' Motion for a Preliminary Injunction, the face of both Plaintiff's Complaint and Motion demonstrate Plaintiff's inability to satisfy the requirements of Federal Rule of Civil Procedure 23. Specifically, Plaintiff's pleadings fail to establish that "there are questions of law or fact common to the class;" that Plaintiff's claims "are typical of the claims … of the class;" or that Plaintiff will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(2), (a)(3), (a)(4).

First, there exist no "questions of law or fact common to the class." Id. at 23(a)(2). As to HSB 15.05.23's hormone therapy provisions, Plaintiff attempts to categorize the HSB as a "blanket ban on the provision of gender-affirming care that will impact scores, if not hundreds, of transgender people incarcerated with the FDC." (Doc. 4 at 26). To the contrary, the face of the HSB establishes an *individualized* treatment plan for *each* inmate with gender dysphoria, including the provision of hormones if the inmate satisfies certain criteria. (Doc. 4-4 at 4–5, § VII; id. at 6–8, § IX). The *individualized* nature of *each* inmate's treatment (instead of a wholesale ban as argued by Plaintiff) defeats commonality.

The enforcement of FDC's grooming and clothing standards run into a similar commonality problem. Such enforcement involves an *individualized* disciplinary process, complete with a separate disciplinary hearing for each inmate who refuses to comply with grooming standards or surrender contraband items. Because the Eighth Amendment does not compel prison officials to grant inmates a blanket license to socially transition, Keohane, 952 F.3d at 1274–75, the individualized nature of the FDC's enforcement process remains critical and precludes class-wide relief.

Finally, because Plaintiff's request for a TRO is moot, Plaintiff's claims fail to qualify as "typical" of those of the class for purposes of a TRO, Fed. R. Civ. P. 23(a)(3), nor can Plaintiff "adequately protect the interests of the class" for purposes of a TRO. Id. at 23(a)(4). "Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001). No "sufficient nexus" exists between Plaintiff's legal claims and the claims of the class for purposes of a TRO, because, as explained above, the State agreed to maintain the *status quo* as to Plaintiff pending the Preliminary Injunction hearing. Prado-Steiman, 221 F.3d at 1279 ("one of the core purposes of conducting typicality review is to ensure that the named plaintiffs have incentives that align with those of

absent class members so as to assure that the absentees' interests will be fairly represented") (quoting Baby Neal for & by Kanter v. Casey, 43 F.3d 48, 57 (3d Cir. 1994)) (internal quotation marks omitted).  Thus, because Plaintiff cannot serve as a class representative for purposes of the TRO, the Court should decline to issue a class-wide TRO.

### III.    PLAINTIFF MAY NOT SEEK RELIEF BASED ON AN "EMERGENCY" OF PLAINTIFF'S OWN CREATION.

Even assuming Plaintiff could seek a TRO based on the hypothetical risk that Plaintiff may face forced hygiene or a discontinuation of hormone therapy at some point, as the Court already recognized, Plaintiff may not seek "emergency" relief based on an "emergency" of Plaintiff's own creation.  Poker Unicorns LLC v. Lively, 2024 WL 939602 (M.D. Fla. Mar. 5, 2024) (finding that plaintiff's "delay in seeking injunctive relief strongly militates against a finding of irreparable harm for the sake of entering a temporary restraining order"); Primo Broodstock, Inc. v. American Mariculture, Inc., 2017 WL 393871, at *3 (M.D. Fla. Jan. 29, 2017) (denying ex parte injunctive relief where plaintiff delayed in seeking it); Case v. Ivey, 2020 WL 13747177, at *2 (M.D. Ala. Oct. 6, 2020) ("Plaintiffs' inexplicable delay in seeking a temporary restraining order against Defendants prevents them from establishing irreparable harm, thus scuttling their motion.").  The Court correctly denied Plaintiff's TRO motion on the basis of the delay in seeking a TRO.

As the Court recognized, "the announcement that triggered [Plaintiff]'s claim was on September 30, but [Plaintiff] waited until Friday, October 25 to initiate this action." (Doc. 14 at 3). Plaintiff attempts to explain away this delay based on alleged difficulties in arranging legal visits and counsel receiving a copy of HSB 15.05.23. (Doc. 16 at 2-3). However, Plaintiff repeatedly alleged that, on September 30, 2024, Plaintiff and other inmates with gender dysphoria "were informed that FDC policy concerning the treatment of inmates with gender dysphoria had been changed, 'up to and including hormone therapy,'" and "were specifically told that they would no longer have access to clothing and grooming standards that accord with their gender identity." (Doc. 1 at 2, 5, 15, 18, 22; Doc. 4 at 4, 10, 12; Doc. 16 at 2, 3). Indeed, Plaintiff even alleged that prison staff have "been announcing the number of days" before Plaintiff and other inmates will receive discipline for failing to comply with the FDC grooming and clothing standards applicable to male inmates. (Doc. 16-2 at 16, ¶ 33). Yet, Plaintiff failed to seek an "emergency" TRO until five (5) days before the repeatedly announced deadline for compliance with the September 30 policy change. Thus, Plaintiff's excuses fail to justify the "extraordinary and drastic remedy" of either a TRO, Mayorkas, 672 F. Supp. 3d at 1212, or reconsideration, Busby, 642 F. Supp. 2d at 1286, and the Court should not reconsider its denial of Plaintiff's requested TRO.

## IV.   PLAINTIFF CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

Because Plaintiff's request for a TRO is moot, Plaintiff necessarily failed to establish a substantial likelihood of success on the merits for purposes of a TRO. Thompson v. Alabama, 293 F. Supp. 3d 1313, 1321 (M.D. Ala. 2017) (holding that mootness "is a jurisdictional flaw that precludes a merits resolution" and that because certain claims were moot, the plaintiffs "could not demonstrate a substantial likelihood of success on the merits and, thus, could not prevail on their preliminary injunction motion").  The State further maintains that Plaintiff failed to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a).  Plaintiff's failure to exhaust administrative remedies precludes a finding of a substantial likelihood of success on the merits.  Swain v. Junior, 961 F.2d 1276, 1291–92 (11th Cir. 2020) (holding that a plaintiff in a PLRA case cannot establish a substantial likelihood of success on the merits if the plaintiff failed to exhaust administrative remedies); McDaniel v. Crosby, 194 F. App'x 610, 613–14 (11th Cir. 2006) (holding that inmate failed to show substantial likelihood of success on the merits because he failed to exhaust his administrative remedies pursuant to the PLRA before filing suit).  The State expressly preserves all arguments related to Plaintiff's failure to exhaust administrative remedies, and the State will more fully present those arguments in its Response to Plaintiff's Motion for a Preliminary Injunction.  But,

should the Court address the merits of the moot claims that Plaintiff failed to bring before an administrative tribunal, they still fail.

Plaintiff claims that FDC's issuance of HSB 15.05.23 and recission of Procedure 403.012, which provided for hormone therapy and social transitioning accommodations for inmates with gender dysphoria, violate the Eighth Amendment. (Doc. 1 at 21–23, ¶¶ 69–81).  That is incorrect.  The Eighth Amendment prohibits "government officials from exhibiting deliberate indifference to the serious medical needs of prisoners."  Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)).  To establish Eighth Amendment medical-care liability against the State officials in their official capacities, Plaintiff must first "demonstrate, as a threshold matter, that [s]he suffered a deprivation that was, objectively, sufficiently serious" for constitutional purposes. Id. at 1262 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  And second, Plaintiff "must demonstrate that the [State officials] acted with subjective recklessness as used in the criminal law, and to do so [Plaintiff] must show that the [State officials were] actually, subjectively aware that [their] own conduct caused a substantial risk of serious harm" to Plaintiff.  Id. (quoting Farmer, 511 U.S. at 839, 844–45).  Assuming for the sake of argument that Plaintiff's (and the proposed class members') gender dysphoria qualifies as a "serious medical need" for Eighth Amendment purposes, Plaintiff cannot establish a substantial likelihood of success

on the claim that the State officials exhibited deliberate indifference to that medical need.

The Eighth Amendment requires the State to provide only "minimally adequate medical care to those whom [it is] punishing by incarceration." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991)). The Eighth Amendment lacks any requirement that "minimally adequate" medical care qualify as "perfect, the best obtainable, or even very good." Keohane v. Sec'y, Fla. Dep't of Corr., 952 F.3d 1257, 1266 (11th Cir. 2020) (quoting Harris, 941 F.2d at 1510). Importantly, as the Eleventh Circuit held in Plaintiff's prior case, in a "situation where medical professionals disagree as to the proper course of treatment for" an inmate's gender dysphoria, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment cannot support a claim of cruel and unusual punishment." Id. at 1274 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Plaintiff cannot establish an Eighth Amendment violation as to either (i) HSB 15.05.23's limitation on hormone therapy; or (ii) the enforcement of FDC's grooming and clothing standards applicable to male inmates against inmates with gender dysphoria.

First, Plaintiff incorrectly asserts that HSB 15.05.23 constitutes a "blanket ban" on hormone therapy. (Doc. 4 at 26). It does not, as explained above; it

establishes an *individualized* treatment plan for *each* inmate with gender dysphoria, including the provision of hormones if the inmate satisfies certain criteria. (Doc. 4-4 at 4–5, § VII; id. at 6–8, § IX). HSB 15.05.23 also provides for the provision of psychotherapy and psychotropic drugs, if indicated. (Id. at 4–5, § VII). HSB 15.05.23 thus constitutes a far cry from the "conscious[] disregard[]" of a "risk of serious harm" necessary to establish an Eighth Amendment claim. Keohane, 952 F.3d at 1277. Instead, it constitutes "a[n individualized,] meaningful course of treatment" to address each inmate's gender dysphoria. Id. That the courses of treatment eventually prescribed to inmates with gender dysphoria pursuant to HSB 15.05.23 may be "different from (and less than) what" those inmates prefer remains insufficient to establish Eighth Amendment liability. Id. In short, "[f]or better or worse, prisoners aren't constitutionally entitled to their preferred treatment plan or to medical care that is great, or even very good." Id. (quoting Harris, 941 F.2d at 1510). Thus, Plaintiff cannot establish a likelihood of success on the merits—on Plaintiff's own behalf or on behalf of a putative class—for purposes of a TRO. Plaintiff provided no reason for the Court to depart from its denial of the TRO.

Second, although Plaintiff claims that the State's denial of the ability to socially transition—i.e., to wear long hair and to purchase and wear makeup, women's underwear, and other feminine products—constitutes a constitutional violation, the Eleventh Circuit **already rejected** the very argument Plaintiff makes

again here.  Keohane, 952 F.3d at 1272–78.  Particularly, the Eleventh Circuit analyzed Plaintiff's request to "socially transition" in light of the State's provision of other treatment for Plaintiff's gender dysphoria, including hormone therapy (which, as explained above, Plaintiff faces no imminent risk of losing access to).  Keohane, 952 F.3d at 1272–78.  The Eleventh Circuit specifically found that the State's denial of Plaintiff's request to socially transition failed to qualify as the "conscious[] disregard[]" of a substantial risk of harm necessary to establish the State officials' deliberate indifference.  Id.

Again, HSB 15.05.23 establishes a course of treatment for gender dysphoria, which prison medical staff will prescribe on an individualized basis depending on each inmate's medical need.  Plaintiff and other inmates with gender dysphoria may disagree with those courses of treatment, or may not get every kind of treatment they want, but Plaintiff cannot establish that, by enacting HSB 15.05.23 and rescinding former Procedure 403.012, the State officials possessed "actual[], subjective[] awareness that [their] own conduct caused a substantial risk of serious harm."  Wade, 106 F.4th at 1262.  Plaintiff, therefore, cannot establish a substantial likelihood of success on the merits as to the Eighth Amendment claim, either on an individual basis or on behalf of the proposed class.  As such, Plaintiff's request that the Court reconsider its denial of the Motion for a TRO should be denied.

## V.     PLAINTIFF FAILED TO DEMONSTRATE IRREPARABLE HARM.

As set forth above, the State agreed on the record to maintain the *status quo* as to Plaintiff until the Preliminary Injunction hearing. Accordingly, Plaintiff faces no imminent threat of any harm, irreparable or otherwise, before the Court can hear the motion for a preliminary injunction. See Mango's Tropical Cafe, Inc. v. Mango Martini Restaurant & Lounge, Inc., 844 F. Supp. 2d 1246, 1251 (S.D. Fla. 2011) ("A temporary restraining order is an appropriate remedy in a situation where a party is facing immediate irreparable harm that will likely occur before a hearing for preliminary injunction."). Even if Plaintiff could seek a TRO on behalf of a class to which Plaintiff does not belong, Plaintiff failed to establish irreparable harm on behalf of any alleged class member. The Court therefore properly denied Plaintiff's request for a TRO.

"A showing of irreparable harm is 'the *sine qua non* of injunctive relief.'" Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1285 (11th Cir. 1990) (quoting Frejlach v. Butler, 573 F.2d 1026, 1027 (8th Cir. 1978)). Further, "[t]he injury must be 'neither remote nor speculative, but actual and imminent.'" Id. (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir. 1989)). Plaintiff failed to demonstrate an actual, imminent risk of harm to Plaintiff or to any class member, even in the Motion for Reconsideration.

Plaintiff made little effort to establish irreparable harm stemming from FDC's policy regarding hormone treatment, because Plaintiff cannot do so. As set forth above, no inmate faces the immediate withdrawal of hormone treatment. Instead, HSB 15.05.23 provides for an individual evaluation of each inmate diagnosed with gender dysphoria, including "[a] complete psychodiagnostics and psychiatric assessment." (Doc. 4-4 at 3, § VI.A). Additionally, "[e]very inmate who receives cross-sex hormones specifically for Gender Dysphoria will be evaluated by the MDST to determine if the diagnosis is still warranted." (Id. at 8, § IX.D). Finally, "[f]or those inmates whose diagnosis is no longer warranted, titration and discontinuation of cross-sex hormone therapy should be initiated over a period of nine weeks." (Id.). The Complaint contains no allegations that the State told Plaintiff, or any other putative class member, that their "diagnosis is no longer warranted," much less that the State discontinued hormone treatment for any inmate currently receiving it. Accordingly, neither Plaintiff nor any other inmate faces a risk of imminent, irreparable harm regarding access to hormone treatment.

Plaintiff also failed to establish a risk of imminent irreparable harm to any inmate from a requirement to abide by male grooming standards or denial of alternate clothing or canteen items. The Eleventh Circuit already held that denying Plaintiff's request to socially transition (i.e., female grooming and clothing standards) failed to constitute deliberate indifference to a serious medical need.

<u>Keohane</u>, 952 F.3d at 1274.    The Court noted expert testimony "that social-transitioning, while not strictly medically necessary, would be 'psychologically pleasing' to" Plaintiff.  <u>Id.</u>  Additionally, even assuming inmates other than Plaintiff faced a forced haircut or denial of alternate clothing or canteen items (again, the State agreed to maintain the *status quo* as to Plaintiff), any risk of harm would be personal to that inmate and that inmate's particular psychological condition.  For example, during the previous litigation, Plaintiff's "medical-treatment team further concluded that requiring Keohane to comply with the FDC's policies regarding hair and grooming standards doesn't put [Plaintiff] at a substantial risk of self-harm or severe psychological pain."  <u>Id.</u>  The same may well be true as to other inmates.  In any event, any risk of psychological harm would require an individual evaluation of each inmate – an impossibility as to absent putative class members at the TRO stage.  Accordingly, even if Plaintiff could seek a TRO on behalf of a class to which Plaintiff does not belong, Plaintiff failed to establish the irreparable harm necessary to obtain one.

## **CONCLUSION**

For the reasons set forth above, the Court properly denied Plaintiff's request for a TRO and should deny Plaintiff's Motion for Reconsideration.

Dated: November 4, 2024.

*/s/ Kenneth S. Steely*
Kenneth S. Steely

*One of the Attorneys for the State*

Kenneth S. Steely
William J. Cranford III*
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
kenneth.steely@butlersnow.com
will.cranford@butlersnow.com
*Pro Hac Vice admission pending*

Daniel A. Johnson (Florida Bar No. 91175)
**FLORIDA DEPARTMENT OF CORRECTIONS**
501 South Calhoun Street
Tallahassee, FL 32399-2500
Telephone: (850) 717-3605
dan.johnson@fdc.myflorida.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 4th day of November, 2024:

Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl (Admitted in Washington only)*
Leslie Cooper
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org
*Pro Hac Vice admission pending*

*Attorneys for Plaintiffs*

/s/ Kenneth S. Steely
*Of Counsel*