# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | |
|---|---|
| **REIYN KEOHANE,** | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| **v.** | )  **Case No. 4:24-cv-00434-AW-MAF** |
| | ) |
| **RICKY D. DIXON,** *et al.*, | ) |
| | ) |
| *Defendants*. | ) |

## THE FDC OFFICIALS' BRIEF IN SUPPORT OF THE MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

Introduction ...................................................................................................1

Factual and Procedural History ....................................................................2

    I.    Plaintiff's Prior Litigation and the Then-Effective FDC Policies. .......2

    II.   FDC Policies Now in Effect. ................................................................3

    III.  Plaintiff's New Allegations. ..................................................................4

Legal Standard ..............................................................................................5

Argument .......................................................................................................7

    I.    Plaintiff Failed to Exhaust the Administrative Process Provided by the FDC As Required by the PLRA. ................................................7

        A.    FDC's Grievance Process ...........................................................9

        B.    Plaintiff filed the Complaint before completion of the appeal process. ........................................................................9

        C.    Plaintiff improperly submitted the grievance directly to the Secretary .................................................................................12

    II.   Plaintiff Lacks Standing to Raise Allegations Regarding the Cessation of Hormone Therapy .........................................................14

    III.  Issue Preclusion Bars Plaintiff From Relitigating The Issue of Provision of Grooming and Clothing Accommodations .....................16

        A.    The issue of provision of female grooming and clothing standards in the Complaint is identical to an issue raised in Keohane I. ................................................................................17

        B.    Plaintiff fully litigated the provision of female grooming and clothing standards in Keohane I. ........................................19

        C.    Resolution of Plaintiff's access to female grooming and clothing standards allegations served as a critical and necessary issue to the Eleventh Circuit's opinion. ..................20

    IV.  Plaintiff's Eighth Amendment Claim Fails on the Merits. .................22

    V.   This Court Should Dismiss the Class Allegations. .............................25

        A.    Plaintiff lacks standing to serve as the class representative as to the hormone therapy claim. .............................................27

        B.    The Complaint fails to plausibly allege commonality within the putative class. ........................................................28

      C.     The Complaint fails to plausibly allege adequacy and typicality.......................................................................31

Conclusion .......................................................................31

Certificate of Service .............................................................32

Certificate of Compliance with Word Limit...........................................34

## TABLE OF AUTHORITIES

Page(s)

**Cases**

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .................................................................................. 5, 24, 25

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) .................................................................................. 6, 26, 30

Bohannan v. Innovak Int'l,
  318 F.R.D. 525 (M.D. Ala. 2016) ........................................................................26

Bryant v. Rich,
  530 F.3d 1368 (11th Cir. 2008) ............................................................................7

Chandler v. Crosby,
  379 F.3d 1278 (11th Cir. 2004) ..........................................................................28

Christo v. Padgett,
  223 F.3d 1324 (11th Cir. 2000) ..................................................... 17, 19, 20, 22

Church v. City of Huntsville,
  30 F.3d 1332 (11th Cir. 1994) ............................................................................15

Eknes-Tucker v. Governor of Alabama,
  80 F.4th 1205 (11th Cir. 2023) ...........................................................................25

Focus on the Family v. Pinellas Suncoast Transit Auth.,
  344 F.3d 1263 (11th Cir. 2003) ..........................................................................15

Frank v. Gaos,
  586 U.S. 485 (2019) ............................................................................................15

Franklin v Nicholson,
  No. 3:22-cv-528-MMH-JBT (M.D. Fla. July 5, 2023) .......................................11

Franklin v. Curry,
  738 F.3d 1246 (11th Cir. 2013) ............................................................................6

General Telephone Co. of Southwest v. Falcon,
  457 U.S. 147 (1982) ............................................................................................27

Griffin v. Dugger,
  823 F.2d 1476 (11th Cir. 1987) ..........................................................................27

Hamze v Warner,
    No. 3:21-cv-565-MMH-JBT (M. D. Fla. Jan. 10, 2024) .....................................11

Johnson v. Meadows,
    418 F. 3d 1152 (11th Cir. 2005)............................................................... 8, 12, 13

Jones v. Bock,
    549 U.S. 199 (2007) .................................................................................. 8, 12, 13

Keohane v. Fla. Dep't of Corr. Sec'y ("Keohane I"),
    952 F.3d 1257  (11th Cir. 2020) ................................................................... passim

Keohane v. Inch, ("Keohane II"),
    No. 4:20-CV-00559 (N.D. Fla) ..............................................................................3

King v. UA Loc. 91,
    No. 2:19-CV-01115-KOB (N.D. Ala. July 15, 2020)........................................26

Lewis v. Casey,
    518 U.S. 343 (1996) ...........................................................................................16

Lujan v. Defs. of Wildlife,
    504 U.S. 555 (1992) ...........................................................................................14

McKinnon v. Blue Cross & Blue Shield of Ala.,
    935 F.2d 1187 (11th Cir. 1991)...........................................................................16

Murray v. Auslander,
    244 F.3d 807 (11th Cir. 2001)...........................................................................29

Pavao v Sims,
    679 Fed. App'x 819 (11th Cir. 2017) ................................................................11

Piazza v. Ebsco Indus., Inc.,
    273 F.3d 1341 (11th Cir. 2001)..........................................................................31

Porter v. Nussle,
    534 U.S. 516 (2002) .............................................................................................7

Prado-Steiman ex rel. Prado v. Bush,
    221 F.3d 1266 (11th Cir. 2000)........................................................ 16, 27, 28, 31

Ross v. Blake,
    578 U.S. 632 (2016) ...........................................................................................11

Sierra v. City of Hallandale Beach, Fla.,
    996 F.3d 1110 (11th Cir. 2021)..........................................................................14

Sims v. Sec'y, Fla. Dep't of Corr.,
    75 F.4th 1224 (11th Cir. 2023)............................................................................7

Smith v. Terry,
    491 F. App'x 81 (11th Cir. 2012) .........................................................................11

Turner v. Burnside,
    541 F.3d 1077 (11th Cir. 2008) .............................................................................8

Valley Drug Co. v. Geneva Pharm. Inc.,
    350 F.3d 1181 (11th Cir. 2003) ...........................................................................31

Wade v. McDade,
    106 F.4th 1251 (11th Cir. 2024) ................................................................... 23, 24

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S.  (2011) ................................................................................. 6, 29, 30

Warth v. Seldin,
    422 U.S. 490 (1975) ............................................................................................16

Wooden v. Bd. Regents of Univ. Sys. of Ga.,
    247 F.3d 1262 (11th Cir. 2001) ...........................................................................14

Woodford v. Ngo,
    548 U.S. 81 (2006) ..............................................................................................13

**Statutes**

42 U.S.C. § 1997e(a) ...............................................................................................6, 7

**Rules**

Fed. R. Civ. P. 12 ........................................................................................................1

Fed. R. Civ. P. 23 ......................................................................................................26

**Regulations**

Fla. Admin. Code r. 33-103.005 ................................................................................9

Fla. Admin. Code r. 33-103.006 ................................................................................9

Fla. Admin. Code r. 33-103.007 .........................................................................9, 12

Fla. Admin. Code r. 33-103.011 ..............................................................................10

Fla. Admin. Code r. 33-601.307 ..............................................................................30

Pursuant to Rule 12(b) of the <u>Federal Rules of Civil Procedure</u>, Defendants Ricky D. Dixon ("<u>Dixon</u>"), in his official capacity as Secretary of the Florida Department of Corrections ("<u>FDC</u>"), Clayton Weiss, in his official capacity as Health Services Director of the Florida Department of Corrections ("<u>Weiss</u>"), and Gary Hewett, in his official capacity as Warden of Wakulla Correctional Institution ("<u>Hewett</u>" and, together with Dixon and Weiss, the "<u>FDC Officials</u>"), hereby submit this Memorandum of Law in Support of the Motion to Dismiss the Complaint (Doc. No. 1, the "<u>Complaint</u>" or "<u>Complt.</u>") filed by Plaintiff Reiyn Keohane ("<u>Plaintiff</u>").

## INTRODUCTION

From the four corners of the Complaint, the Court can easily conclude that no actionable claim exists here.  The FDC Officials continue to provide Plaintiff with hormone therapy, eliminating any such claim on that basis.  The remaining claims rely on unabashed speculation.  As such, the Court should dismiss the Complaint for any of the following five (5) reasons:

(1)    Plaintiff failed to exhaust administrative remedies, as required by the Prison Litigation Reform Act;

(2)    Plaintiff lacks standing to assert claims regarding hormone treatment;

(3)    Issue preclusion bars Plaintiff from relitigating the clothing and grooming standards issue;

(4)    Plaintiff's Complaint fails to state an Eighth Amendment claim; and

(5)    Plaintiff fails to allege facts to support the class allegations.

As further discussed below, these deficiencies eliminate any entitlement by Plaintiff to consume any further resources of the Court.

## FACTUAL AND PROCEDURAL HISTORY

## I.    PLAINTIFF'S PRIOR LITIGATION AND THE THEN-EFFECTIVE FDC POLICIES.

Plaintiff entered the State's custody in 2014.  Two years later, Plaintiff sued the FDC Officials, challenging the FDC Officials' decision to treat Plaintiff's gender dysphoria through treatment modalities other than hormone therapy and access to female clothing and grooming standards.  Keohane v. Fla. Dep't of Corr. Sec'y ("Keohane I"), 952 F.3d 1257, 1261-63 (11th Cir. 2020).  Shortly before Plaintiff filed the complaint in Keohane I, FDC "referred [Plaintiff] to an outside endocrinologist[,]" who prescribed hormone therapy.  Id. at 1263.  Additionally, FDC repealed its former policy addressing treatment of inmates with gender dysphoria and promulgated a policy that utilized individualized assessments and treatment plans.  Id.  At trial, the medical professionals disagreed as to whether providing Plaintiff with access to female grooming and clothing standards was medically necessary for the treatment of gender dysphoria.  Id. at 1264.  The United States District Court for the Northern District of Florida entered judgement in Plaintiff's favor, which the Eleventh Circuit reversed.  Id. at 1279.  The Eleventh Circuit held that FDC's provision of hormone therapy mooted Plaintiff's claims and

that FDC's decision to prohibit access to female grooming and clothing standards did not constitute deliberate indifference to a serious medical need.  Id. at 1262.[1]

## II.    FDC POLICIES NOW IN EFFECT.

FDC reassessed its policies to conform to the mandates reflected in Keohane I and the changes in Florida law.  (Doc. 4-4 at 1).  On September 30, 2024, Health Services Bulletin ("HSB") No. 15.05.23 became effective.  (Id.).  FDC promulgated HSB 15.05.23 "[t]o ensure inmates diagnosed with Gender Dysphoria receive timely, appropriate mental health services and *individualized treatment programming* as clinically indicated."  (Id.).  (emphasis added).  HSB 15.05.23 also provides, "[t]reatment interventions shall target psychological distress/dysphoria, as well as any co-occurring mental health disorders, and be *tailored to the unique needs of the inmate*."  (Id.) (emphasis added).  The HSB specifically mandates that "[a]ll inmates diagnosed with gender dysphoria will be individually evaluated."  (Id. at 3, § VI(B)).  The policy provides for the development of an Individualized Service Plan, form DC4-643A, for each inmate diagnosed with gender dysphoria.  (Id. at 2, §§ III(E), IV(D)).

---

[1] In 2020, Plaintiff filed a *pro se* complaint against FDC, demanding placement in a female facility and seeking gender reassignment surgery.  Keohane v. Inch, ("Keohane II"), No. 4:20-CV-00559 (N.D. Fla) (Doc. 1 at 32).  In this second complaint, Plaintiff admitted that FDC provided access to hormone therapy and female grooming and clothing standards.  (Keohane II, Doc. 1 at 4, ¶ 28).  After Plaintiff failed to prosecute the case, the District Court dismissed it without prejudice.  (Keohane II, Doc. 18).

Under Section IX of HSB 15.05.23, inmates diagnosed with gender dysphoria may seek a variance for the provision of cross-sex hormone therapy.  (Id. at 6-8, § IX).  Section IX(B) notes that Florida law prohibits the State from "expending any state funds to purchase cross-sex hormones for the treatment of Gender Dysphoria." (Id. at 7, § IX(B)).  FDC Officials must comply with Florida law, "unless compliance with the U.S. Constitution or a court decision requires otherwise." (Id. at 7, § IX(B)). However, when medical professionals determine that a particular inmate requires hormone therapy as a matter of medical necessity, "a variance may be approved to permit the use of cross-sex hormones to treat an inmate's Gender Dysphoria."  (Id. at 7, § IX(C)).  An inmate seeking a variance must obtain unanimous approval for the treatment "after a review by a team consisting of the Chief of Medical Services, the Chief of Mental Health Services, and the Chief Clinical Advisor." (Id. at 7, § IX(C)).  Additionally, an inmate seeking a variance must "satisfy[] all preceding provisions of this policy" and the variance must be "necessary to comply with the U.S. Constitution or a court decision."  (Id. at 7, § IX(C)).

## III.   PLAINTIFF'S NEW ALLEGATIONS.[2]

Plaintiff now, for a second time, seeks injunctive and declaratory relief from the Court, both individually and on behalf of a putative class.  (Complt. at ¶¶ 69-81).

---

[2] By setting out Plaintiff's allegations, the FDC Officials do not admit the truth of any statement contained in the Complaint.

Despite HSB 15.05.23's provisions providing for individualized assessment and treatment, Plaintiff broadly claims that HSB 15.05.23 constitutes a "blanket denial" of treatment to inmates diagnosed with gender dysphoria. (Id. at 3-4, ¶ 55). Plaintiff further alleges that Plaintiff, together with putative class members, seeks "an injunction preventing enforcement of this blanket ban on medical treatment and grooming and clothing accommodations for individuals with gender dysphoria in FDC custody." (Id. at ¶ 12).

The Complaint alleges that Plaintiff and putative class members will "suffer irreparable physical and psychological harm" from a denial of hormone therapy and from a denial of access to female clothing and grooming standards. (Id. at ¶¶ 70-71). As set forth below, Plaintiff may not bring claims regarding hormone treatment; previous litigation precludes Plaintiff's claims regarding access to female clothing and grooming standards; Plaintiff failed to exhaust administrative remedies before filing the Complaint; and Plaintiff failed to provide facts supporting class action treatment. Additionally, Plaintiff's Complaint failed to state an Eighth Amendment claim. Accordingly, the Court should dismiss the Complaint in its entirety.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted) (internal quotations

omitted)).  "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted) (internal quotation marks omitted)).  In evaluating a motion to dismiss, the Eleventh Circuit cautioned courts to "first separat[e] out the complaint's conclusory legal allegations and then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief[.]'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 679).  And, a class action complaint must contain facts sufficient to support class treatment.  See Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 388, 350-51 (2011) (citing General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982)).

In addition to complying with procedural pleading requirements, the Prison Litigation Reform Act ("PLRA") requires inmates to fully exhaust any available administrative remedies before filing suit.  42 U.S.C. § 1997e(a).  As set out below, the Complaint fails to plausibly allege constitutional violations both in Plaintiff's individual capacity and as to the putative class; moreover, Plaintiff failed to exhaust administrate remedies for PLRA purposes.

<u>**ARGUMENT**</u>

**I.    PLAINTIFF FAILED TO EXHAUST THE ADMINISTRATIVE PROCESS PROVIDED BY THE FDC AS REQUIRED BY THE PLRA.**

The PLRA makes the exhaustion requirement clear, providing in relevant part: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  The Supreme Court found that "[a]ll 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" <u>Porter v. Nussle</u>, 534 U.S. 516, 524 (2002) (quoting <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001)).  Further, "exhaustion of administrative remedies is a matter in abatement" that "'should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.'" <u>Bryant v. Rich</u>, 530 F.3d 1368, 1374-75 (11th Cir. 2008) (quoting <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 368-69 (9th Cir. 1988)), *cert. denied* 555 U.S. 1074.  The Court may consider facts outside the pleadings in ruling on a motion to dismiss raising the plaintiff's failure to exhaust administrative remedies.  <u>Bryant</u>, 530 F.3d at 1374.  Finally, courts "look to the requirements of the applicable prison grievance system to determine the boundaries of proper exhaustion." <u>Sims v. Sec'y, Fla. Dep't of Corr.</u>, 75 F.4th 1224, 1230 (11th Cir. 2023) (internal citations omitted).

In determining whether an inmate plaintiff exhausted administrative remedies, the Eleventh Circuit utilizes the following test: first, the court must "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). If that review establishes the plaintiff's failure to exhaust, then the court must dismiss the complaint. Id. (citing Bryant, 530 F.3d at 1373-74). However, "[i]f the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Id. (citing Bryant, 530 F.3d at 1373-74, 1376). Completion of the exhaustion requirement means properly completing each step of FDC's grievance procedures. See Jones v. Bock, 549 U.S. 199, 219 (2007); see also Johnson v. Meadows, 418 F. 3d 1152, 1158 (11th Cir. 2005). Here, Plaintiff's Complaint establishes Plaintiff's failure to exhaust.

Plaintiff's Complaint initially claims that Plaintiff "fully exhausted [Plaintiff's] administrative remedies to the extent required by the Prison Litigation Reform Act." (Complt. at ¶ 63). However, the Complaint itself reveals the falsity of this allegation. The Complaint admits that, as of October 23, 2024, Plaintiff "had not received a response to the grievance addressed directly to the Secretary or any

appeal from the institutional-level response." (Complt. at ¶ 68). These allegations establish that Plaintiff failed to exhaust remedies before filing the Complaint.

### A.    FDC's Grievance Process

To exhaust administrative remedies, an inmate in FDC custody must engage in several steps. First, an inmate must submit an "informal" grievance to a designated staff member at the inmate's institution. See Fla. Admin. Code r. 33-103.005. If the designated staff member fails to resolve the inmate's grievance, the inmate must submit a "formal" grievance to the warden or assistant warden at the inmate's institution. See Fla. Admin. Code r. 33-103.006. If an informal and formal grievance fail to resolve the inmate's claim, the inmate must file an appeal with the FDC Secretary. See Fla. Admin. Code r. 33-103.007. Alternatively, depending on the nature of the grievance, the inmate can bypass the informal grievance process and proceed directly to submitting a formal grievance or submitting a grievance directly to the Secretary. See Fla. Admin. Code r. 33-103.005(1); 33-103.006(3); 33-103.007(3). Plaintiff failed to complete the appeal process, and, as such, failed to exhaust the grievance process.

### B.    Plaintiff filed the Complaint before completion of the appeal process.

Plaintiff failed to satisfy the PLRA's exhaustion requirement because Plaintiff failed to complete the appeal process before filing the Complaint on October 25, 2024. Plaintiff filed formal grievance number 2410-118-045 on October 3, 2024,

asserting the unconstitutionality of HSB 15.05.23. (See Declaration of Alan McManus, attached hereto as **Exhibit 1**, at ¶ 5 (hereinafter the "McManus Decl.")). The Grievance Coordinator for Wakulla Annex, the facility in which FDC houses Plaintiff, timely responded to Plaintiff's formal grievance and noted that HSB 15.05.23 "exist[s] to ensure the continued appropriate assessment, therapy, and monitoring of your physical and mental health needs." (Id., ¶ 7). The response further states, "[a]s appropriate services are being provided to you, your grievance/appeal is denied." (Id., ¶ 7).

Plaintiff appealed the institutional-level response to the formal grievance on October 21, 2024. (Id., ¶ 10). Plaintiff filed the Complaint on October 25, 2024. (Doc. 1). The Bureau of Policy Management and Inmate Appeals received Plaintiff's appeal on October 28, 2024. (McManus Decl., ¶ 10). Pursuant to Fla. Admin. Code r. 33-103.011, the Bureau of Policy Management and Inmate Appeals must respond to an appeal of a formal grievance within thirty (30) calendar days "from the date of the receipt of the grievance." Even though the grievance policy allowed FDC until November 27, 2024, to respond, FDC quickly addressed Plaintiff's concerns. On November 7, 2024, Clayton Weiss, Health Services Director, timely denied Plaintiff's appeal from the resolution of the formal grievance, noting that the institutional-level response "appropriately addressed" the issue that Inmate Keohane grieved. (Id., ¶ 12). Thus, FDC responded to Plaintiff's

appeal from Plaintiff's formal grievance thirteen (13) days *after* Plaintiff filed the Complaint.

Plaintiff's failure to exhaust available administrative remedies proves fatal to Plaintiff's claims. Section 1997e(a) requires a plaintiff to exhaust *all* available administrative remedy *before* filing suit. Ross v. Blake, 578 U.S. 632, 638-39 (2016); Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."). Further, "efforts to exhaust after filing [the] complaint are not relevant to the question of whether [a plaintiff] exhausted" because the "time the statute sets for determining whether exhaustion of administrative remedies has occurred is when the legal action is brought, because it is then that the exhaustion bar is to be applied." Pavao v Sims, 679 Fed. App'x 819, 825 (11th Cir. 2017) (internal citations omitted). Florida district courts consistently apply this principle. See Hamze v Warner, No. 3:21-cv-565-MMH-JBT, 2024 WL 111923 (M. D. Fla. Jan. 10, 2024); Franklin v Nicholson, No. 3:22-cv-528-MMH-JBT, 2023 WL 4352447, *6 (M.D. Fla. July 5, 2023) (any grievances filed after the filing of the original complaint "are not pertinent to the Court's determination" of exhaustion). Because Plaintiff filed the Complaint before completing the appeal process, Plaintiff failed to comply with the PLRA's mandatory exhaustion requirement, and the Court should dismiss Plaintiff's claims.

**C.    Plaintiff improperly submitted the grievance directly to the Secretary.**

Additionally, Plaintiff failed to comply with the PLRA's pre-suit exhaustion requirement by failing to properly submit a grievance directly to the Office of the Secretary.  To submit a grievance directly to the Office of the Secretary, an inmate must "state at the beginning of Part A of Form DC1-303 that the grievance concerns either an emergency or is a grievance of a reprisal."  Fla. Admin. Code r. 33-103.007(3)(a)(1).  Additionally, the inmate "must clearly state the reason for not initially bringing the complaint to the attention of institutional staff and by-passing the informal and formal grievance steps of the institution or facility[.]"  Id. at § –(3)(a)(2).  As noted above, completion of the exhaustion requirement means *properly* completing each step of FDC's grievance procedures.  See Jones, 549 U.S. at 219; see also Johnson, 418 F. 3d at 1158.  Plaintiff failed to follow these steps.

On October 3, 2024, Plaintiff submitted a grievance directly to the Office of the Secretary asserting the unconstitutionality of HSB 15.05.23.  (McManus Decl., ¶ 6).  On October 16, 2024, the Office of the Secretary responded to Plaintiff's direct grievance and noted that Plaintiff failed to comply with Fla. Admin. Code r. 33-103.006.  (Id., ¶ 8).  Specifically, Plaintiff's direct grievance failed to provide a basis for submitting the grievance directly to the Office of the Secretary.  (Id., ¶ 8).  Further, because Plaintiff failed to provide a sufficient basis for bypassing the informal and formal grievance processes, Plaintiff could not pursue a direct

grievance. Therefore, Plaintiff should have completed the formal grievance process and then appealed the institution's response to the formal grievance to the Office of the Secretary, attaching a copy of the formal grievance and response. (Id., ¶ 8). As of October 25, 2024, Plaintiff failed to submit a grievance directly to the Office of the Secretary that complied with statute. (Id., ¶ 9).

To satisfy the PLRA's exhaustion requirement, Plaintiff must comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Here, Plaintiff failed to comply with FDC's procedural rule, Fla. Admin. Code r. 33-103.007(3)(a), because the direct grievance provided no basis for submitting the grievance directly to the Office of the Secretary. And, because Plaintiff failed to properly complete that step of the grievance process, see Jones, 549 U.S. at 219; see also Johnson, 418 F. 3d at 1158, Plaintiff failed to properly exhaust the available remedy of submitting a grievance directly to the Secretary.

In sum, Plaintiff failed to fully exhaust all available administrative remedies before filing the Complaint. Plaintiff failed to complete the appeal process with respect to Plaintiff's formal grievance, and Plaintiff failed to set out a reason for bypassing the informal and formal grievance processes when Plaintiff submitted the grievance directly to the Office of the Secretary. Because the PLRA mandates pre-

suit exhaustion of administrative remedies, this Court should conclude that Plaintiff

failed to comply with the exhaustion requirement and dismiss Plaintiff's claims.

## II.    PLAINTIFF LACKS STANDING TO RAISE ALLEGATIONS REGARDING THE CESSATION OF HORMONE THERAPY.

The Complaint contains allegations on behalf of Plaintiff individually as well

as the putative class.  (Complt. at ¶ 68).  But Plaintiff failed to establish standing to

allege that deprivation of hormone therapy violates the Eighth Amendment.  "Article

III of the Constitution establishes that federal courts only have jurisdiction over

'Cases' and 'Controversies,'" and the "[s]tanding doctrine falls within this

constitutional requirement."  Sierra v. City of Hallandale Beach, Fla., 996 F.3d 1110,

1112 (11th Cir. 2021) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61

(1992)).  To establish standing, Plaintiff must demonstrate that (1) Plaintiff "suffered

an 'injury in fact'" that is "concrete and particularized" and "actual and imminent";

2) there exists a "causal connection between the injury and the conduct complained

of"; and 3) the injury will be "redressed by a favorable decision."  Lujan, 504 U.S.

at 560-61.  Plaintiff must establish "a real and immediate—as opposed to a merely

conjectural or hypothetical—threat of future injury."  Wooden v. Bd. Regents of

Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001) (quoting City of Los

Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  Moreover, "[b]ecause injunctions

regulate future conduct, a party has standing to seek injunctive relief only if the party

alleges, and ultimately proves, a real and immediate—as opposed to a merely

14

conjectural or hypothetical—threat of *future* injury." <u>Church v. City of Huntsville</u>, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing <u>Lyons</u>, 461 U.S. at 102) (emphasis in original). Plaintiff failed to plausibly allege any non-speculative injury as to the purported denial of hormone therapy and thus failed to establish standing to seek injunctive relief.

The Complaint lacks any allegation that FDC stopped providing—or even *intends* to stop providing at some future date—hormone treatment to Plaintiff. Because Plaintiff failed to establish injury in fact or even threatened injury, Plaintiff lacks standing to assert any allegations as to hormone therapy. <u>See Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1275 (11th Cir. 2003) (a plaintiff must establish standing as of the date of filing of the complaint) (citations omitted). In fact, Plaintiff's Complaint, on its face, establishes that HSB 15.05.23 contains a process for obtaining a variance to receive hormone therapy, but Plaintiff fails to allege any denial of a variance or even an attempt to seek the variance. (Complt. at ¶¶ 49-52). As Plaintiff failed to plausibly allege any injury in fact or threatened injury as of October 25, 2024, Plaintiff lacks standing to bring any claim regarding hormone therapy, and this Court lacks jurisdiction over Plaintiff's claim. <u>See Frank v. Gaos</u>, 586 U.S. 485, 492 (2019).

Plaintiff cannot remedy a lack of standing by filing the action on behalf of a purported class. "[The] individual injury requirement is not met by alleging 'that

injury has been suffered by other, unidentified members of the class to which [the plaintiff] belong[s] and which [the plaintiff] purport[s] to represent.'"   Warth v. Seldin, 422 U.S. 490, 502 (1975).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."   Lewis v. Casey, 518 U.S. 343, 357, (1996) (quotation marks and citation omitted)); see also Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000).  As Plaintiff failed to plausibly allege any injury in fact or threatened injury regarding current or future access to hormone therapy Plaintiff lacks standing to pursue any claims regarding hormone therapy.

## III.  ISSUE PRECLUSION BARS PLAINTIFF FROM RELITIGATING THE ISSUE OF PROVISION OF GROOMING AND CLOTHING ACCOMMODATIONS.

In the Complaint, Plaintiff seeks to relitigate the issue of access to female grooming and clothing standards, ignoring the doctrine of issue preclusion.  Because Plaintiff previously received a final adjudication on the merits of this issue, this Court should dismiss Plaintiff's allegations as to the provision of female grooming and clothing standards.

The doctrine of issue preclusion "bars relitigation of an issue of fact or law that has been litigated and decided in a prior suit."   McKinnon v. Blue Cross & Blue

Shield of Ala., 935 F.2d 1187, 1192 (11th Cir. 1991). The Eleventh Circuit recognizes four prerequisites to the application of the doctrine of issue preclusion:

> 1. "the issue at stake is identical to the one involved in the prior proceeding";
>
> 2. "the issue was actually litigated in the prior proceeding";
>
> 3. "the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action"; and
>
> 4. "the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding."

Christo v. Padgett, 223 F.3d 1324, 1339 (11th Cir. 2000) (quoting Pleming v. Universal-Rundle Corp., 142 F.3d 1354, 1359 (11th Cir. 1998)). Plaintiff's allegations as to the provision of access to female grooming and clothing standards meet all four prerequisites.

### A. The issue of provision of female grooming and clothing standards in the Complaint is identical to an issue raised in Keohane I.

Plaintiff asserts that "[i]t is medically necessary for Plaintiff Keohane . . . to receive . . . access to clothing and grooming standards that accord with [Plaintiff's] gender identity." (Complt. at ¶ 71). Further, Plaintiff alleges that "[w]ithout necessary treatment, Plaintiff Keohane . . . will suffer irreparable physical and psychological harm." (Id. at ¶ 70). Plaintiff additionally argues that the FDC Officials are aware of Plaintiff's gender dysphoria and that Plaintiff "require[s] . . .

[the] clothing and grooming accommodations" that the FDC Officials previously provided and that subsequent denial of the previously provided clothing and grooming standards would cause Plaintiff serious harm.  (Id. at ¶ 72).

In Keohane v. Fla. Dep't of Corr. Sec'y ("Keohane I"), No. 4:16-CV-00511 (N.D. Fla.), Plaintiff also asserted that "[i]t was medically necessary for Plaintiff to live as female . . . and to receive all other treatment for Gender Dysphoria deemed medically necessary by a qualified provider."  (Keohane I Doc. 1, ¶ 90).  Further, Plaintiff asserted that FDC officials "refused . . . to recommend that [Plaintiff] be permitted access to female clothing and grooming standards."  (Keohane I Doc. 1, ¶ 91).  Lastly, Plaintiff claimed that "[a]s a result of being denied access to female clothing and grooming standards[,]" Plaintiff "suffered severe psychological distress and physical harm[.]"  (Keohane I Doc. 1, ¶ 92).

In both Keohane I and the current case, Plaintiff alleged that the deprivation of access to female grooming and clothing standards violates the Eighth Amendment.  (Keohane I Doc. 1, ¶ 94); (Complt. at ¶ 78).  In both cases, Plaintiff asserted the alleged medical necessity of access to female grooming and clothing standards and that FDC currently deprived or would deprive Plaintiff of access. Lastly, in both cases, Plaintiff alleged that the deprivation of access to female grooming and clothing standards caused or would cause harm to Plaintiff.  Thus, Keohane I and the current case involve the same issue: access to female grooming

and clothing standards for Plaintiff.  See Christo, 223 F.3d at 1339.  The clothing and grooming allegations in Plaintiff's Complaint clearly satisfy the first prerequisite of the issue preclusion doctrine.

**B.   Plaintiff fully litigated the provision of female grooming and clothing standards in Keohane I.**

Plaintiff received ample opportunities to litigate the constitutionality of access to female grooming and clothing standards in Keohane I for purposes of the second and fourth prerequisites of the issue preclusion doctrine.  Not only did Plaintiff raise the issue in the complaint (Keohane I Doc. 1, ¶ 94), but Plaintiff raised the issue in a Motion for Preliminary Injunction, (Keohane I Doc. 3), which the court denied after a hearing, at which witnesses testified and counsel for Plaintiff presented argument.  (Keohane I Doc. 51).  Plaintiff also addressed access to female grooming and clothing standards in the Response in Opposition to FDC's Motion for Summary Judgment.  (Keohane I Doc. 128).  Ultimately, the district court summarily denied FDC's Motion for Summary Judgment, (Keohane I Doc. 138), and the case proceeded to trial, where Plaintiff presented testimony.

After trial, the district court entered an order on the merits, ordering FDC to "permit [Plaintiff] access to [FDC's] female clothing and grooming standards[.]" (Keohane I Doc. 171).  FDC appealed, and the Eleventh Circuit reversed the district court's injunction.  Keohane v. Fla. Dep't of Corr. Sec'y ("Keohane I"), 952 F.3d 1257, 1279 (11th Cir. 2020).  The Eleventh Circuit held that denial of female

grooming and clothing standards did not violate the Eighth Amendment.  Id.  Thus, not only was the issue of access to female grooming and clothing standards "actually litigated in the prior proceeding[,]" but Plaintiff "had a full and fair opportunity to litigate the issue in the prior proceeding."  See Christo, 223 F.3d at 1339.  The clothing and grooming allegations in Plaintiff's Complaint thus satisfy the second and fourth prerequisite of the issue preclusion doctrine.

###### C.   Resolution of Plaintiff's access to female grooming and clothing standards allegations served as a critical and necessary issue to the Eleventh Circuit's opinion.

Plaintiff's allegations as to the cessation of Plaintiff's access to female grooming and clothing standards also meets the final prerequisite of the doctrine of issue preclusion: that "the determination of the issue in the prior litigation must have been 'a critical and necessary part' of the judgment in the first action[.]"  See Christo, 223 F.3d at 1339.  In Keohane I, the Eleventh Circuit fully addressed Plaintiff's allegations as to female grooming and clothing standards.  Keohane I, 952 F.3d at 1272-1278.  The Eleventh Circuit concluded that FDC's decision not to provide female grooming and clothing standards to Plaintiff did not constitute deliberate indifference to a serious medical need.  Id. at 1274.  To reach this conclusion, the Eleventh Circuit noted that the medical professionals who testified at trial remained "divided over whether social transitioning is medically necessary to [Plaintiff's] gender-dysphoria treatment."  Id.  The Eleventh Circuit noted that the strongest

testimony established that female grooming and clothing standards may be "psychologically pleasing" to Plaintiff, but FDC's Chief Clinical Officer, FDC's retained expert, FDC's contract psychiatrist, and Plaintiff's "medical-treatment team" concluded that FDC's policy of requiring Plaintiff to comply with male hair and grooming standards did not put Plaintiff "at a substantial risk of self-harm or severe psychological pain." Id.  As the Eleventh Circuit noted, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment." Id. (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).

Further, the Eleventh Circuit noted that courts must give significant weight to a correctional facility's security concerns about medical care.  Id. at 1275 (citing Kolisek v. Spencer, 774 F.3d 63, 83 (1st Cir. 2014)).  The Eleventh Circuit found the Kolisek case instructive, as FDC provided Plaintiff with some, but not all, of Plaintiff's requested treatments for gender dysphoria.  Id. at 1276-77.  The Eleventh Circuit found that FDC "struck that balance" both because Plaintiff's treatment providers determined that the provided treatments sufficiently treated Plaintiff's gender dysphoria and because FDC "rationally concluded" that access to female grooming and clothing standards "would present significant security concerns in an all-male prison." Id. at 1277.  Thus, the Eleventh Circuit concluded that FDC "chose a meaningful course of treatment to address Keohane's gender-dysphoria

symptoms—treatment that, while perhaps different from (and less than) what Keohane preferred, is sufficient to clear the low deliberate-indifference bar" and held that FDC's decision not to provide female grooming and clothing standards to Plaintiff did not violate the Eighth Amendment. Id. at 1277-79. Based on this extensive analysis of Plaintiff's female grooming and clothing standards allegations, the Eleventh Circuit's conclusions and holding as to the female grooming and clothing standards issue was "a critical and necessary part" of the Eleventh Circuit's judgment. See Christo, 223 F.3d at 1339. The allegations in Plaintiff's Complaint thus satisfy the final prerequisite of the issue preclusion doctrine.

In sum, because Plaintiff asserted the female grooming and clothing standards issue in both the current case and Keohane I, because Plaintiff fully and fairly litigated the female grooming and clothing standards allegations in Keohane I, and because the Eleventh Circuit extensively analyzed the merits of Plaintiff's female grooming and clothing standards issue, this Court should bar Plaintiff from relitigating the issue, see Christo, 223 F.3d at 1339, and should dismiss Plaintiff's Eighth Amendment claim to the extent it challenges a purported denial of access to female clothing and grooming standards.

## IV.   PLAINTIFF'S EIGHTH AMENDMENT CLAIM FAILS ON THE MERITS.

Even if this Court concludes that issue preclusion does not bar Plaintiff's claim regarding access to female grooming and clothing standards, Plaintiff's claim

fails on the merits.  As set out above, the Eleventh Circuit extensively analyzed Plaintiff's allegation that cessation of access to female grooming and clothing standards constituted deliberate indifference to a serious medical need.  The Eleventh Circuit concluded that FDC "chose a meaningful course of treatment to address Keohane's gender-dysphoria symptoms—treatment that, while perhaps different from (and less than) what Keohane preferred, is sufficient to clear the low deliberate-indifference bar" and held that FDC's decision not to provide female grooming and clothing standards to Plaintiff did not violate the Eighth Amendment. Keohane I, 952 F.3d at 1277-79.  The Eleventh Circuit's ruling fatally undermines the class allegations involving grooming and clothing standards.

The Eleventh Circuit's precedent remains clear—when presented with competing medical opinions, the FDC Officials' deference to security concerns while still providing adequate medical treatment cannot violate the Eighth Amendment, regardless of the desire of inmates for different treatment.  See Keohane I, 952 F.3d at 1277-79.  Further, as the Eleventh Circuit recently clarified in Wade v. McDade, Plaintiff must establish that the FDC Officials "acted with 'subjective recklessness as used in the criminal law,'" by showing that the FDC Officials "[were] actually, subjectively aware that [Plaintiff's] own conduct caused a substantial risk of serious harm to the [P]laintiff[.]"  106 F.4th 1251, 1262 (11th Cir. 2024) (quoting Farmer v. Brennan, 511 U.S. 825, 839, 844-45 (1994)).  As the

Eleventh Circuit defers to the FDC Officials' reasonable decision to offer alternative treatment modalities, see Keohane I, 952 F.3d at 1274, Plaintiff cannot establish that the FDC Officials' decision not to provide access to female grooming and clothing standards rises to the level of "subjective recklessness as used in the criminal law[.]" See Wade, 106 F.4th at 1262 (quoting Farmer, 511 U.S. at 839). Based on Keohane I and Wade, the Complaint fails to provide "factual content that allows the court to draw the reasonable inference" that the FDC Officials' denial of access to female grooming and clothing standards constitutes deliberate indifference to a serious medical need. See Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). Because the Complaint's allegations regarding grooming and clothing standards fail to meet the plausibility pleading standard, this Court should dismiss those allegations.

Similarly, Plaintiff's claim that HSB 15.05.23's provisions on hormone therapy violate the Eighth Amendment also fails. HSB 15.05.23 "ensure[s] [that] inmates diagnosed with Gender Dysphoria receive timely, appropriate mental health services and *individualized treatment programming* as clinically indicated." (Doc. 4-4 at 1) (emphasis added). Additionally, HSB 15.05.23 provides that "[t]reatment interventions shall target psychological distress/dysphoria, as well as any co-occurring mental health disorders, and be *tailored to the unique needs of the inmate*." (Id. at 1) (emphasis added). The policy further provides that "[a]ll inmates diagnosed

24

with gender dysphoria will be individually evaluated." (Id. at 3, § VI(B)). The policy provides for the development of an Individualized Service Plan, form DC4-643A, for each inmate diagnosed with gender dysphoria. (Id. at 2, §§ III(E), IV(D)). HSB 15.05.23 allows treatment providers to carefully balance the evidence for and against hormone therapy, including the risks of treatment, in order to make an individualized determination for each person. See Eknes-Tucker v. Governor of Alabama, 80 F.4th 1205, 1225 (11th Cir. 2023) (Court recognized the difference in medical opinions regarding hormone therapy and the risks associated it). Because HSB 15.05.23 serves as a measured policy that provides for individualized courses of treatment, Plaintiff failed to plausibly allege that the policy constitutes deliberate indifference.

## V.    THIS COURT SHOULD DISMISS THE CLASS ALLEGATIONS.

Plaintiff's class allegations fail to satisfy Rule 8's plausibility pleading standard. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id., (citing Twombly, 550 U.S. at 556). Accordingly, "labels and conclusions, and a formulaic recitation of the elements of

a cause of action" fail to sufficiently plead a claim.  Twombly, 550 U.S. at 555.

Further, where "a complaint facially fails to plausibly allege the necessary elements

of class certification, pursuing class-related discovery is unnecessary."  King v. UA

Loc. 91, No. 2:19-CV-01115-KOB, 2020 WL 4003019, at *6 (N.D. Ala. July 15,

2020) (internal citations omitted).  "[N]othing in Rule 23 precludes the consideration

of class certification issues in the context of a motion to dismiss."  Bohannan v.

Innovak Int'l, 318 F.R.D. 525, 529 (M.D. Ala. 2016).  "The relevant inquiry here is

whether the allegations are sufficient to plausibly support the existence of an

ascertainable class."  Id. (citing Iqbal, 556 U.S. at 678).

Rule 23 of the Federal Rules of Civil Procedure requires that a named plaintiff

may represent all putative class members only if: (1) "the class is so numerous that

joinder of all members is impracticable"; (2) "there are questions of law or fact

common to the class"; (3) "the claims or defenses of the representative parties are

typical of the claims or defenses of the class"; and (4) "the representative parties will

fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

Additionally, to comply with Rule 23, a class action is appropriate when "the party

opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate

respecting the class as a whole[.]"  Id. at 23(b)(2).  Here, the Complaint fails to plead

facts supporting Rule 23's requirements.

**A.** **Plaintiff lacks standing to serve as the class representative as to the hormone therapy claim.**

As set out in Section II above, Plaintiff lacks standing to allege that future cessation of hormone therapy constitutes a constitutional violation. "[I]t is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim." Prado, 221 F.3d at 1279. As the United States Supreme Court repeatedly held, "a class representative must be part of the class and possess the same interest and *suffer the same injury* as the class members." General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982) (internal citations omitted) (emphasis added). "A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone – not for himself, and not for any other member of the class." Griffin v. Dugger, 823 F.2d 1476, 1483 (11th Cir. 1987) (citing O'Shea v. Littleton, 414 U.S. 488, 494 (1974)).

Again, the Complaint lacks any allegation that the FDC Officials stopped Plaintiff's hormone therapy or even intend to do so. Plaintiff therefore failed to establish that Plaintiff "possess[es] the same interest and [will] *suffer the same injury* as the class members." Falcon, 457 U.S. at 156 (emphasis added). Because Plaintiff lacks standing to bring the hormone therapy allegation individually, Plaintiff also

cannot serve as class representative on this allegation. And, without "least one named class representative [that] has Article III standing to raise each class subclaim[,]" Prado, 221 F.3d at 1279, this Court should dismiss the hormone therapy allegations as to Plaintiff as well as the putative class.[3]

### B.  The Complaint fails to plausibly allege commonality within the putative class.

The Complaint alleges that the putative class will purportedly experience the common harm of "the denial of medical treatment and/or accommodations for their diagnosed gender dysphoria, regardless of their medical need for such treatment or accommodations." (Complt. at ¶ 12). The Complaint also asserts that the putative class members seek common relief— "an injunction preventing enforcement of this blanket ban on medical treatment and grooming and clothing accommodations for individuals with gender dysphoria in FDC custody." (Id.). Finally, the Complaint alleges one purported common question of law, "whether Defendants' actions violate the Eighth Amendment's protections against cruel and unusual punishment." (Id.). But these allegations fail to plausibly allege commonality among the putative class members as well as between Plaintiff Keohane and the putative class members.

---

[3] Moreover, because Plaintiff lacks standing to assert an allegation as to hormone therapy, Plaintiff cannot establish full exhaustion of administrative remedies based on hormone therapy. As Plaintiff is the only Named Plaintiff listed in the Complaint and the Complaint is silent regarding exhaustion of class members, the Complaint fails on its face to satisfy the exhaustion requirement through "vicarious exhaustion." See Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004).

Commonality "does not mean merely that [putative class members] have all suffered a violation of the same provision of law." <u>Dukes</u>, 564 U.S. at 350. Instead, the claims "must depend upon a common contention" that "is capable of classwide resolution[.]" <u>Id.</u> "'What matters to class certification . . . is not the raising of common questions – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" <u>Id.</u> (quoting Nagareda, Class Certification in the Age of Aggregate Proof," 84 N.Y.U. L. Rev. 97, 131-32 (2009)). "Under the Rule 23(a)(2) commonality requirement, a class action must involve issues that are susceptible to class-wide proof." <u>Murray v. Auslander</u>, 244 F.3d 807, 811 (11th Cir. 2001).

The Complaint fails to plausibly allege any "common contention" that is "capable of classwide resolution[.]" <u>See</u> <u>Dukes</u>, 564 U.S. at 350. Instead, HSB 15.05.23 directly contradicts the Complaint's allegations of commonality within the putative class. (Doc. 4-4). As HSB 15.05.23 notes, individuals diagnosed with gender dysphoria experience "a diverse array of conditions, with widely differing pathways and characteristics[.]" (<u>Id.</u> at 3, § VI(A)). The policy also states that "[a]ll inmates diagnosed with gender dysphoria will be *individually evaluated*." (<u>Id.</u> at 3, § VI(B)) (emphasis added). Further, HSB 15.05.23 provides for an individualized

treatment plan for each inmate diagnosed with gender dysphoria. (Id. at 4–5, § VII; 6–8, § IX). HSB 15.05.23 also provides for the provision of psychotherapy and psychotropic drugs, if indicated. (Id. at 4–5, § VII). Thus, the Complaint's allegation that the putative class will potentially experience "the denial of medical treatment and/or accommodations for their diagnosed gender dysphoria, regardless of their medical need for such treatment or accommodations[,]" (Complt. at ¶ 12), constitutes merely an unsupported conclusion that fails to rise to the standard of plausibility pleading. See Twombly, 550 U.S. at 555.

Even putative class members who may face the same alleged injury with respect to denial of access to female grooming and clothing standards cannot establish commonality. Any putative class members who refuse to comply with the FDC Officials' grooming and clothing standards will receive access to an individualized disciplinary process. See Fla. Admin. Code r. 33-601.307. Each putative class member will have a separate disciplinary hearing at which the putative class member may call witnesses or present evidence. See id. at 33-601.307(1)(g). Such individualized procedure will impede the progress of class-wide resolution of allegations. See Dukes, 564 U.S. at 350. The lack of commonality among the putative class members defeats the class allegations, which this Court should dismiss.

**C.    The Complaint fails to plausibly allege adequacy and typicality.**

In addition to the above defects in the class allegations, the Complaint fails to present sufficient facts to plausibly allege adequacy and typicality.  Typicality "focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001). "[T]here cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class."  Prado, 221 F.3d at 1279.  Because Plaintiff lacks standing to allege claims as to HSB 15.05.23's provision of hormone therapy, Plaintiff cannot serve as class representative, and therefore, the Complaint fails to allege facts supporting adequate typicality to raise this claim.  For the same reason, lack of standing, Plaintiff cannot adequately protect the interests of the putative class.  See Valley Drug Co. v. Geneva Pharm. Inc., 350 F.3d 1181, 1189 (11th Cir. 2003) (quoting Phillips v. Klassen, 502 F.2d 362, 365 (D.C. Cir. 1974)).  This Court should dismiss the class allegations.

**CONCLUSION**

For the reasons discussed above, the Court should dismiss Plaintiff's Complaint in its entirety.

Dated: November 12, 2024

*/s/    Kenneth S. Steely*
_____

31

Kenneth S. Steely
*One of the Attorneys for the FDC Officials*

William R. Lunsford
Kenneth S. Steely
William J. Cranford III (*pro hac vice*)
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com
will.cranford@butlersnow.com

Daniel A. Johnson (Florida Bar No. 91175)
**FLORIDA DEPARTMENT OF CORRECTIONS**
501 South Calhoun Street
Tallahassee, FL 32399-2500
Telephone: (850) 717-3605
dan.johnson@fdc.myflorida.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 12th day of November, 2024:

Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714

32

dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl (Admitted in
Washington only)*
Leslie Cooper
**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org
*Pro Hac Vice admission granted*

*Attorneys for Plaintiffs*


/s/    *Kenneth S. Steely*
*Of Counsel*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I hereby certify that the Motion filed in conjunction with this brief contains 579 words and that the Supporting Memoranda required by N.D. Fla. Loc. R. 7.1(E) contains 7,288 words, totaling **7,867** words and not exceeding 8,000 total words as required by N.D. Fla. Loc. R. 7.1(F).


/s/    *Kenneth S. Steely*
*Of Counsel*

34