IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| REIYN KEOHANE, | : |
| *Plaintiff*, | : |
| v. | : Case No. 4:24-cv-00434-AW-MAF |
| RICKY D. DIXON, et al., | : |
| *Defendants*. | : |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY**

For years, transgender inmates with gender dysphoria in the custody of the Florida Department of Corrections ("FDC") have been receiving hormone therapy when deemed medically necessary by prison medical personnel. They have also been provided access to clothing and grooming standards consistent with their gender identity to help manage their gender dysphoria, a serious medical condition. This treatment was provided in accordance with FDC policy 403.012.

On September 30, 2024, FDC rescinded policy 403.012 and in its place, put into effect Health Services Bulletin 15.05.23, which prohibits hormone therapy and no longer permits access to clothing and grooming standards that accord with transgender inmates' gender identity. The new policy references the possibility of obtaining a "variance" from the hormone therapy ban but it imposes requirements that would likely deny treatment to inmates with a medical need for such

1

treatment. The policy provides no possibility of exceptions with respect to clothing and grooming standards. Across the state, FDC officials informed inmates with gender dysphoria that non-compliance with their facilities' gendered clothing and grooming standards by October 30, 2024, would result in disciplinary action. Just four days later, Plaintiff filed two grievances: (1) a formal grievance at the institutional level and (2) a grievance directly to the Office of the Secretary.

On October 25, 2024, Plaintiff filed the present case on behalf of a class of similarly situated inmates in FDC custody, as well as a motion for a temporary restraining order and preliminary injunction on behalf of the class. This Court denied the motion for a temporary restraining order, and a motion to reconsider remains pending. On October 31, 2024, this Court held a telephonic hearing to discuss procedures for resolving the motion for a preliminary injunction. A briefing schedule was agreed upon: Defendants would submit their response to the motion for a preliminary injunction no later than November 14, 2024; Plaintiffs would have seven days to depose any expert witnesses of Defendants; the parties may depose non-expert witnesses before the hearing, if agreed upon; and Plaintiffs would have until November 27, 2024, to submit a reply. *See* Dkt. 22, Order Regarding Schedule. A hearing on the motion for a preliminary injunction was scheduled for December 9, 2024. *Id*.

At no point during the October 31 telephonic hearing or in the court ordered conferral with Plaintiff's counsel prior did Defendants raise the possibility of a motion to stay the preliminary injunction proceedings pending a motion to dismiss. Defendants waited twelve days—and until two days before their response to the motion for a preliminary injunction was due—to request such a stay. *See* Dkt. 30, Mot. to Stay. Now, Defendants seek to postpone discovery, the briefing schedule, and the hearing on the preliminary injunction indefinitely until a resolution of their motion to dismiss.

## I.   Putative Class Members Will Be Prejudiced by a Stay

Defendants seek to justify a stay of the preliminary injunction proceedings by alleging that no prejudice will result from such a stay. This is patently false. Plaintiff seeks to enjoin FDC's policy on behalf of a class of transgender individuals with gender dysphoria, not just on her own behalf. Defendants focus only on Plaintiff and continuously fail to acknowledge the actual and imminent harm to the putative class members that a stay will impose. Upon information and belief, there are at least 80 people with gender dysphoria in FDC custody who are being harmed, or will imminently be harmed, by Defendants' new policy. The new policy makes no exceptions for grooming and clothing standards and, as alleged in the Complaint, FDC officials announced that non-compliance by October 30, 2024, would be met with discipline. *See* Dkt. 1, Complaint at 2. The new policy also

provides that, in accordance with state law, hormone therapy will not be provided to inmates with gender dysphoria. While the policy references the possibility of a "variance" from the hormone therapy ban, as discussed in Plaintiff's motion for a preliminary injunction, the requirements for a variance create an insurmountable barrier to treatment. At minimum, the standard for a variance—which requires much more than a showing of medical necessity for an inmate, as was the standard under the rescinded policy—would deny care to inmates with gender dysphoria who have been deemed to have a medical need for this care. *See* Dkt. 4, Plaintiff's Mot. for a Temporary Restraining Order and/or Preliminary Injunction at 10-12 ("PI Motion").

Plaintiff's motion for a preliminary injunction details the harmful impact of denying hormone therapy and clothing and grooming accommodations to individuals with gender dysphoria who need them. The harms of discontinuing medically necessary care for gender dysphoria can include increased risk of suicidality, self-harm, anxiety and depression. *See* Dkt. 4, PI Motion at 23-24. It is to prevent these current or imminent harms that Plaintiff, on behalf of the putative class, has sought preliminary injunctive relief. Staying proceedings on the preliminary injunction motion will cause the putative class members further harm.

## II. Any Harm to Defendants Is Minimal and Avoidable

Defendants argue that they will be harmed absent a stay because they will be forced "to expend time and resources" responding to discovery requests and the motion for a preliminary injunction. *See* Dkt. 30, Mot. to Stay at 3. As an initial matter, Defendants could choose to avoid this alleged prejudice by agreeing to pause enforcement of the Health Services Bulletin 15.05.23 and maintain the pre-September 30, 2024, status quo as to all class members, rather than just the named Plaintiff, as Plaintiff has repeatedly offered to agree to a stay in those circumstances.[1]

Defendants argue that they will be harmed by "the litany of burdens and expenses" of discovery prior to the motion to dismiss being decided. Dkt. 30, Mot. to Stay at 5. The very narrow discovery that has been permitted by this Court for purposes of the preliminary injunction and class certification is a far cry from a "litany of burdens and expenses" or the expansive discovery contemplated in the cases Defendants cite.[2] As discussed during a hearing on October 31, 2024, and

---

[1] Absent such an agreement, Plaintiff would not be adequately representing the interests of the class by agreeing to a stay that benefits her only.

[2] For example, Defendants rely on *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). There, the Court characterized the discovery disputes as excessively broad and vague requests, where "the plaintiffs asked for almost every tangible piece of information or property possessed by defendants." *Id.* at 1357. More specifically, the first interrogatories and requests for production included 121 numbered requests for production and 635 interrogatories. *Id.*

thereafter ordered, "The parties may engage in limited and targeted written discovery before the hearing." Dkt. 22, Order Regarding Schedule. On November 4, 2024, Plaintiff's counsel sent Defendants a brief composite written discovery request totaling 7 interrogatories, 5 requests for production of documents, and 3 requests for admission. At no point since November 4, 2024, have Defendants indicated to Plaintiff's counsel that any request submitted was too burdensome or beyond the narrow scope of what was discussed at the October 31 hearing. Any discovery burden on Defendants is minimal and for the narrow purpose of litigating the preliminary injunction on behalf of the class and does not justify staying the preliminary injunction proceedings.

Furthermore, parties regularly raise arguments of exhaustion and standing in response to motions for a preliminary injunction—a stay while a separate motion to dismiss is decided is unnecessary. For example, in another matter, FDC's response to the plaintiff's motion for a preliminary injunction raised the issue of exhaustion. FDC filed a motion to dismiss the same day that also raised the issue, but did not seek a stay. This Court addressed the exhaustion issue in its decision on the preliminary injunction. *See e.g.*, *T.H. v. Fla. Dep't of Corr.*, 696 F. Supp. 3d 1117 (N.D. Fla. 2023).

### III. Conclusion

The preliminary injunction process exists to provide plaintiffs with a mechanism to be heard quickly to prevent imminent, irreparable harm. Allowing a Defendant to stay the preliminary injunction process and delay review by a court by simply filing a motion to dismiss would undermine the very purpose of a preliminary injunction.

Not only is a stay antithetical to the preliminary injunction process, but it is also unwarranted here and will harm the putative class members. Plaintiff respectfully requests that the motion for a stay be denied and that Defendants' motion to dismiss be considered concurrently with the preliminary injunction.

Dated: November 14, 2024

/s/ Samantha J. Past
Samantha J. Past (Florida Bar No. 1054519)
Daniel B. Tilley (Florida Bar No. 102882)
**American Civil Liberties Union Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl (Admitted in Washington only)
Leslie Cooper
**American Civil Liberties Union Foundation**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584

lnowlin-sohl@aclu.org
lcooper@aclu.org

*Counsel for Plaintiff*