## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | | |
|---|---|---|
| **REIYN KEOHANE,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **Case No. 4:24-cv-00434-AW-MAF** |
| | ) | |
| **RICKY DIXON,** *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

## THE FDC OFFICIALS' MEMORANDUM IN OPPOSITION TO <u>PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. ii

INTRODUCTION ..............................................................................1

BACKGROUND ................................................................................2

    I.     Factual Background.................................................................2

          A.    Plaintiff's litigation history. .........................................2

          B.    History of HSB 15.05.23 ...............................................3

    II.    Procedural Background ......................................................12

LEGAL STANDARD.......................................................................13

ARGUMENT ...................................................................................15

    I.     Plaintiff Lacks Standing to Pursue an Eighth Amendment Claim as to HSB 15.05.23's Hormone Therapy Provisions. ..........................15

    II.    Plaintiff Failed to Establish a Substantial Likelihood of Success on the Merits.................................................................16

          A.    Plaintiff failed to exhaust the grievance process prior to filing the Complaint. .................................................16

          B.    Plaintiff cannot relitigate prior litigated claims related to clothing and grooming. .............................................18

          C.    FDC's Health Services Bulletin provides for constitutionally adequate mental health and medical care for gender dysphoria. ...............................................19

    III.    Plaintiff Cannot Demonstrate Irreparable Harm. ...............25

    IV.    The Balance of the Equities and the Public Interest Favor the State. ..........................................................................27

    V.    Plaintiff Cannot Demonstrate the Propriety of Class-Wide Preliminary Injunctive Relief.............................................29

    VI.    The PLRA Bars the Preliminary Injunctive Relief Plaintiff Seeks..........................................................................33

CONCLUSION ................................................................................35

CERTIFICATE OF SERVICE .........................................................36

CERTIFICATE OF COMPLIANCE WITH WORD LIMIT................37

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Ahlman v. Barnes*,
    20 F.4th 489 (9th Cir. 2021) ......................................................... 15, 34

*Alabama v. U.S. Army Corps of Eng'rs*,
    424 F.3d 1117 (11th Cir. 2005) .........................................................14

*All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*,
    887 F.2d 1535 (11th Cir. 1989) .........................................................13

*Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd.*,
    2012 WL 4077238 (M.D. Fla. Sept. 17, 2012).....................................19

*Blum v. Yaretsky*,
    457 U.S. 991 (1982)........................................................................ 26, 32

*Chandler v. Crosby*,
    379 F.3d 1278 (11th Cir. 2004) .........................................................17

*Christo v. Padgett*,
    223 F.3d 1324 (11th Cir. 2000) .........................................................19

*Church v. City of Huntsville*,
    30 F.3d 1332 (11th Cir. 1994) .........................................................15

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................15

*Colomar v. Mercy Hosp., Inc.*,
    242 F.R.D. 671 (S.D. Fla. 2007).........................................................33

*De La Fuente v. Kemp*,
    679 F. App'x 932 (11th Cir. 2017) ................................................. 14, 25

*Diaz v. Hillsborough Cnt'y Hosp. Auth.*,
    165 F.R.D. 689 (M.D. Fla. 1996).........................................................32

*Eknes-Tucker v. Governor of Ala.*,
    80 F.4th 1205 (11th Cir. 2023) ..................................................... 24, 28

*Estelle v. Gamble*,
    429 U.S. 97 (1976)..........................................................................20

*Farmer v. Brennan*,
    511 U.S. 825 (1994).........................................................................20

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................. 26, 32

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
   546 U.S. 418 (2006) .......................................................................18

*Gonzalez v. Governor of Georgia*,
   978 F.3d 1266 (11th Cir. 2020) ................................................ 13, 27

*Harris v. Thigpen*,
   941 F.2d 1495 (11th Cir. 1991) ................................................ 20, 21

*Harriss v. Pan Am. World Airways, Inc.*,
   74 F.R.D. 24 (N.D. Cal. 1977) .......................................................32

*Hoffer v. Sec'y, Fla. Dep't of Corr.*,
   973 F.3d 1263 (11th Cir. 2020) ....................................... 20, 21, 24, 25

*Howe v. Hughes*,
   74 F.4th 849 (7th Cir. 2023) ..........................................................34

*Jones 'El v. Berge*,
   172 F. Supp. 2d 1128 (W.D. Wis. 2001) ........................................17

*Keohane v. Fla. Dep't of Corr. Sec'y*,
   ("<u>Keohane I</u>"), 952 F.3d 1257 (11th Cir. 2020)........................... passim

*Kosilek v. Spencer*,
   774 F.3d 63 (1st Cir. 2014) ...................................................... 21, 24

*Pesci v. Budz*,
   935 F.3d 1159 (11th Cir. 2019) .....................................................28

*Piazza v. Ebsco Indus., Inc.*,
   273 F.3d 1341 (11th Cir. 2001) .....................................................32

*Prado-Steiman ex rel. Prado v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ................................................ 26, 32

*Procunier v. Martinez*,
   416 U.S. 396 (1974) .......................................................................28

*Rogers v. Evans*,
   792 F.2d 1052 (11th Cir. 1986) .....................................................21

*Ross v. Bank South, N.A.*,
   837 F.2d 980 ..................................................................................33

*Ross v. Blake*,
   578 U.S. 632 (2016) .......................................................................17

*Schiavo ex rel. Schindler v. Schiavo*,
    403 F.3d 1223 (11th Cir. 2005) ..........................................................13

*Siegel v. LePore*,
    234 F.3d 1163 (11th Cir. 2000) ................................................. 13, 26

*Smith v. Terry*,
    491 F. App'x 81 (11th Cir. 2012) ......................................................17

*Swain v. Junior*,
    961 F.3d 1276 (11th Cir. 2020) ...................................... 13, 18, 27, 28

*T.H. v. Fla. Dep't of Corr.*,
    696 F. Supp. 3d 1117 (N.D. Fla. 2023).............................................18

*Texas v. Seatrain Int'l, S.A.*,
    518 F.2d 175 (5th Cir. 1975)..............................................................14

*Turner v. Safley*,
    482 U.S. 78 (1987).............................................................................28

*U. S. v. Lambert*,
    695 F.2d 536 (11th Cir. 1983) ...........................................................14

*United States v. Jones*,
    837 F. Supp. 1145 (S.D. Ala. 1993)...................................................19

*Valentine v. Collier*,
    956 F.3d 797 (5th Cir. 2020)..............................................................34

*Wade v. McDade*,
    106 F.4th 1251 (11th Cir. 2024) ................................................ 20, 24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S.  (2011)......................................................................... 30, 31

*Warth v. Seldin*,
    422 U.S. 490 (1975)...........................................................................16

*Westefer v. Neal*,
    682 F.3d 679 (7th Cir. 2012)..............................................................34

*Woodford v. Ngo*,
    548 U.S. 81 (2006).............................................................................17

**Statutes**

18 U.S.C. § 1997e(a)...............................................................................16

18 U.S.C. § 3626(a)(1)(B)......................................................................34

18 U.S.C. § 3626(a)(2)................................................................ 14, 33, 34

**Rules**

Fed. R. Civ. P. 23(a)....................................................................32

Fed. R. Civ. P. 23(a)(2)................................................................29

Fed. R. Civ. P. 23(a)(3)............................................................ 29, 32

Fed. R. Civ. P. 23(a)(4)................................................................29

Fed. R. Civ. P. 23(b)(2)................................................................32

**Regulations**

Fla. Admin. Code r. 33-601.307 ....................................................31

Fla. Admin. Code r. 33-601.307(1)(g) ..........................................31

Defendants Ricky D. Dixon ("Dixon"), in his official capacity as Secretary of the Florida Department of Corrections ("FDC"), Clayton Weiss, in his official capacity as FDC's Health Services Director ("Weiss"), and Gary Hewett, in his official Capacity as Warden of Wakulla Correctional Institution ("Hewett," and, together with Dixon and Weiss, the "FDC Officials"), hereby submit this Opposition to Plaintiff's Motion for a Preliminary Injunction (Doc. 4, the "Motion").

## INTRODUCTION

Plaintiff—an inmate diagnosed with gender dysphoria who continues to receive hormone therapy—improperly seeks a preliminary injunction on behalf of a purported class. The Court should deny Plaintiff's Motion for any of the following six (6) reasons:

(1)    Plaintiff lacks standing to pursue an Eighth Amendment claim as to hormone therapy;

(2)    Plaintiff cannot establish a substantial likelihood of success on the merits;

(3)    Plaintiff cannot establish irreparable harm;

(4)    The balance of the equities and the public interest favor the FDC Officials;

(5)    Plaintiff cannot demonstrate the propriety of class-wide preliminary injunctive relief; and

(6)    The PLRA bars the preliminary injunctive relief plaintiff seeks.

The Court should therefore deny Plaintiff's Motion.

## BACKGROUND

### I.    FACTUAL BACKGROUND.

### A.    Plaintiff's litigation history.

This case began years before Plaintiff filed the instant Complaint and Motion. In fact, Plaintiff *already litigated* the issues Plaintiff raises here: access to hormone therapy and gender-specific items for social transitioning. Keohane v. Fla. Dep't of Corr. Sec'y ("Keohane I"), 952 F.3d 1257 (11th Cir. 2020). The Eleventh Circuit made two determinations in Keohane I: that Plaintiff's Eighth Amendment claim related to hormone therapy was moot, as the FDC provided Plaintiff with hormone therapy and represented that it would continue to do the same as long as not medically contraindicated; and that the Eighth Amendment lacks any requirement that FDC allow Plaintiff to "socially transition." Keohane I, 952 F.3d at 1270, 1277-78.

In Keohane I, Plaintiff challenged FDC's prior "freeze-frame" policy, pursuant to which FDC provided only the treatment that inmates with gender dysphoria were receiving at the time of their incarceration. 952 F.3d at 1263. During the pendency of Keohane I, FDC repealed the "freeze-frame" policy, replaced it with Procedure 403.012, and began providing Plaintiff with hormone therapy. (Doc. 1, ¶¶ 43–47; id., ¶¶ 40–42; Doc. 4-2, 4-3). Plaintiff now challenges the recission of Procedure 403.012 and its replacement with Health Services Bulletin ("HSB") 15.05.23. Despite the policy's repeated statements regarding individualized

reviews, Plaintiff characterizes the policy as a "blanket policy determination that, in effect, categorically prohibits hormone therapy, regardless of medical need." (Doc. 1, ¶ 55, ¶ 12).

Importantly, as the FDC Officials previously represented to the Court, the FDC Officials will continue to provide Plaintiff with hormones and continue to allow Plaintiff to follow female clothing and hygiene standards pending resolution of the Motion to Dismiss and until the evidentiary hearing on the Motion for a Preliminary Injunction. (Doc. 30, ¶ 8). Moreover, FDC's Multidisciplinary Services Team ("MDST") evaluated Plaintiff pursuant to HSB 15.05.23 and preliminarily determined that Plaintiff will continue to receive hormone therapy. (Declaration of Dr. Danny Martinez, attached hereto as **Exhibit A**, ¶ 23 ("Martinez Decl.")). Thus, Plaintiff faces no imminent risk of losing access to hormone therapy.

### B. History of HSB 15.05.23.

Plaintiff filed the Complaint and Motion to challenge, on Eighth Amendment grounds, HSB 15.05.23 and the recision of former Procedure 403.012. (See Doc. 1). Former Procedure 403.012 provided that "[g]ender-affirming hormonal medication will be prescribed as clinically indicated;" specifically, Procedure 403.012 provided that an inmate could begin receiving hormone therapy while in FDC custody if the FDC's Gender Dysphoria Review Team ("GDRT") determined "that the hormones are medically necessary and not contraindicated for any reason."

(Martinez Decl., ¶¶ 4–5; Ex. A to Martinez Decl., 5).  Procedure 403.012 also required that each inmate diagnosed with gender dysphoria receive access to necessary mental health treatment, including weekly clinical group therapy, bi-weekly psychoeducational group interventions, and monthly individual psychotherapy.  (Id., ¶ 5).  Plaintiff alleges that HSB 15.05.23, unlike former Procedure 403.012, constitutes a "blanket ban" on hormone therapy for inmates diagnosed with gender dysphoria.  (Doc. 1, ¶ 55; see also id., ¶ 12).  As explained below, HSB 15.05.23 contains no "blanket ban" on any kind of treatment.  Instead, HSB 15.05.23 constitutes a carefully crafted policy that creates an individualized course of treatment for each inmate based on scientific evidence and clinical judgment.

Dr. Danny Martinez, FDC's Chief of Medical Services, helped oversee the development and issuance of HSB 15.05.25, which establishes the guidelines for the mental health evaluation and treatment of inmates in FDC custody who meet the diagnostic criteria for gender dysphoria.[1]  (Martinez Decl., ¶ 14; Ex. C to Martinez Decl.,1, § I).  After Dr. Martinez began working with FDC in 2020, he, along with

---

[1] In addition to Dr. Martinez, Dr. Suzonne Klein, FDC's Chief of Mental Health, and Clayton Weiss, FDC's Director of Health Services, also possess personal knowledge of the circumstances surrounding the recission of former Procedure 403.012 and the development and issuance of HSB 15.05.23.  Declarations from Dr. Klein and Mr. Weiss are attached hereto as **Exhibit B** and **Exhibit C**, respectively.

FDC's medical and mental health leadership, reviewed treatment outcomes for inmates receiving hormone therapy. (Id., ¶ 6). This review led Dr. Martinez and FDC's medical and mental health leadership to develop several concerns regarding Procedure 403.012. (Id.). First, medical and mental health staff learned that at least one third of inmates receiving hormone therapy failed to comply with the mental-health portions of their treatment plans, and Procedure 403.012 provided no mechanism to ensure compliance. (Id.). Notably, Dr. Martinez observed no decrease—and instead observed an *increase*—in the number of grievances to the medical and mental health staff lodged by inmates receiving hormone therapy. (Id.). The increase in grievances indicated to Dr. Martinez that a treatment regimen based solely on hormone therapy (and without additional mental health treatment) produced limited success. (Id.). Relatedly, Procedure 403.012 provided no points of assessment or re-evaluation to determine whether the individual's treatment effectively addressed and reduced negative symptoms or produced negative side effects. (Id., ¶ 7). Finally, Procedure 403.012 provided no mechanism for removing an inmate from hormone treatment either upon the inmate's request, or where the GDRT determined that the hormone therapy no longer qualified as medically necessary or was contraindicated. (Id.).

Thus, Dr. Martinez, along with the medical and mental health leadership, determined that FDC's ability to provide individualized, holistic treatment for

inmates with gender dysphoria (and the ability to assess the efficacy of that treatment) required the revision of former Procedure 403.012.  (Id., ¶ 6).  Informed by the flaws with Procedure 403.012, Dr. Martinez conducted extensive research into the medical and mental health treatments for gender dysphoria and, in May 2023, began working with the medical and mental health teams to update[2] FDC's procedures for treating inmates with gender dysphoria.  (Id., ¶¶ 7–8).  The process for updating FDC's procedures for treating inmates with gender dysphoria took approximately seven months and included hundreds of hours of research and development.  (Id., ¶ 8).

This research included a review and consideration of a 2022 Report issued by the Division of Florida Medicaid under the direction of the Florida Agency for Health Care Administration ("AHCA").  (Martinez Decl., ¶ 9).  The Report, entitled *Accepted Professional Medical Standards Determination on the Treatment of Gender Dysphoria*, examined the current medical literature regarding treatment of gender dysphoria.  (Id., ¶ 9; Ex. B to Martinez Decl. (the "AHCA Report")).[3]  The AHCA Report concluded that

---

[2] The medical and mental health leadership of FDC review all Office of Health Services ("OHS") HSBs on an annual basis.  (Martinez Decl., ¶ 8).

[3] *Accepted Professional Medical Standards Determination on the Treatment of Gender Dysphoria*, Florida Agency for Healthcare Administration (June 2022).

> [M]edical literature provides insufficient evidence that sex reassignment through medical intervention is a safe and effective treatment for gender dysphoria. Studies presenting the benefits to mental health, including those claiming that the services prevent suicide, are either low or very low quality and rely on unreliable methods such as surveys and retrospective analyses, both of which are cross-sectional and highly biased. Rather, the available evidence demonstrates that these treatments cause irreversible physical changes and side effects that can affect long-term health.

(<u>Id.</u>, ¶ 9; Ex. B, 2). The AHCA Report first demonstrated the questionable efficacy of cross-sex hormones in alleviating the psychological distress associated with gender dysphoria. (<u>Id.</u>, ¶ 12; Ex. B, 19). Particularly, the Report found that a majority of individuals receiving hormone therapy reported experiencing *other* mental health issues prior to beginning hormone therapy, such as depression and suicidal ideation, and that the efficacy of hormone therapy to alleviate these symptoms remains low. (<u>Id.</u>, ¶ 10; Ex. B, 19). In addition to finding a lack of evidence supporting the efficacy of hormone therapy for treatment of mental distress associated with gender dysphoria, the AHCA Report also identified long-term health risks associated with cross-sex hormone treatment. (<u>Id.</u>, ¶ 12; Ex. B, 21). These risks include a reduction in life expectancy, increased risk of cardiovascular disease, increased risk of blood clots, increased levels of hypertension, high cholesterol, obesity, and heart attacks. (<u>Id.</u>, ¶ 12, Ex. B, 21). In sum, the AHCA Report

concluded that "the evidence for cross-sex hormones as treatment for gender dysphoria is weak and insufficient." (Id.).

The AHCA Report also identified contradictions in the World Professional Association for Transgender Health's ("WPATH") recommendations to clinicians in the treatment for gender dysphoria. (Martinez Decl., ¶ 9; Ex. B, 7). For example, according to the AHCA Report, "WPATH does assert that clinicians do need to treat any other underlying mental health issues secondary or co-occurring with gender dysphoria;" yet, WPATH also advises practitioners to "prescribe cross-sex hormones on demand," despite the lack of evidence supporting their efficacy in alleviating mental-health symptoms. (Id., ¶ 9; Ex. B, 7). Similarly, WPATH's guidance on administering cross-sex hormones to individuals diagnosed with gender dysphoria acknowledges that hormone treatment should only be administered with a confirmed diagnosis of gender dysphoria and following a full psychosocial assessment. (Id., ¶ 11; Ex. B, 17).

In December 2023, FDC's medical and mental health leadership incorporated their updated research into the revised procedures, with the aim of developing a policy that provides individualized, comprehensive care and treatment to inmates diagnosed with gender dysphoria. (Martinez Decl., ¶ 13). Ultimately, FDC's medical and mental health leadership developed HSB 15.05.23, which the FDC Officials finalized on September 30, 2024. (Id., ¶ 14). Importantly, the purpose of

HSB 15.05.23 remains "[t]o ensure inmates diagnosed with gender dysphoria receive timely, appropriate mental health services and individualized treatment programming as clinically indicated." (Id., ¶ 14). HSB 15.05.23 requires a mental health clinician to complete a clinical assessment within fourteen (14) days of an inmate's intake to the reception center or transfer to another institution. (Id., ¶ 15; Ex. C, 3, § V.A.). If the inmate reports or presents a documented history of gender dysphoria before incarceration, the inmate will complete form DC4-711B, "Consent and Authorization for Use and Disclosure, Inspection, and Release of Confidential Information," to allow FDC to obtain the inmate's prior mental health records. (Martinez Decl., ¶ 15; Ex. B, 3, § V.B.).

HSB 15.05.23 further provides that a psychologist makes all diagnoses of gender dysphoria. (Martinez Decl., ¶ 15; Ex. B, 3, § V.C.). Once a psychologist diagnoses an inmate with gender dysphoria, the MDST—which consists of leadership from the medical, mental health, and security teams—reviews the inmate's medical and mental health records. (Martinez Decl., ¶ 15). The MDST must unanimously approve of the diagnosis. (Id.). Because the term "gender dysphoria" describes an array of differing conditions—which require individualized assessment and treatment—HSB 15.05.23 provides that "[a]ll inmates diagnosed with gender dysphoria will be individually evaluated[, and] a complete

psychodiagnostics and psychiatric assessment should be performed."  (Id., ¶ 16; Ex. C, 3, § VI.A).

HSB 15.05.23 provides that inmates currently receiving hormone therapy, like Plaintiff, "will be evaluated by" FDC's MDST "to determine if the diagnosis is still warranted.  For those inmates whose diagnosis is no longer warranted, titration and discontinuation of cross-sex hormone therapy should be initiated over a period of nine weeks." (Martinez Decl., ¶ 19; Ex. C, 8, § IX.D.).  Additionally, HSB 15.05.23 provides for the continuation of hormone therapy after review and unanimous approval "by a team consisting of the Chief of Medical Services, the Chief of Mental Health Services, and the Chief Clinical Advisor."  (Id., ¶ 17; Ex. B, 7, § IX.C.).  Such continuation "shall only be sought (1) after satisfying all preceding provisions of this policy and (2) if necessary to comply with the U.S. Constitution or a court decision." (Id.).  In short, neither Plaintiff—nor any other inmate—immediately or imminently risks losing access to hormone therapy, for several reasons.  (Martinez Decl., ¶ 20).

First, the MDST may determine that the diagnosis of gender dysphoria remains warranted (id.; Ex. C, 8, § IX.D), in which case the inmate's case will proceed under the treatment process established by Section IX.C. of HSB 15.05.23. (Martinez Decl., ¶ 20; Ex. C, 7, § IX.C.).  The team consisting of the Chief of Medical Services, the Chief of Mental Health Services, and the Chief Clinical Advisor (the "Variance Team") will determine whether to grant the inmate a

10

variance to allow continued cross-sex hormone treatment.  Importantly, the inmate will remain on hormone therapy during this reevaluation process.  (Martinez Decl., ¶ 20).  The process of discontinuation (if warranted) of hormone therapy will require, at minimum: (i) an initial review by the MDST to determine whether the inmate's gender dysphoria diagnosis remains warranted; (ii) if the diagnosis is still warranted, a review by the Variance Team to determine whether to grant the inmate a variance; and, if the diagnosis is no longer warranted or if Variance Team denies the variance; (iii) titration off hormones over a 90-day period.  (Id., ¶ 21; Ex. C, 8, § IX.D.; 7, § IX.C.).

The initial review by the MDST and the review by the Variance Team will take place over a matter of weeks.  Then, if medically determined, the titration off hormones will take place over a period of ninety (90) days.  Thus, the total discontinuation of hormone therapy for any inmates currently receiving it will not take place for at least three (3) months from October 31, 2024.  (Id., ¶ 22).  Plaintiff received an individual assessment and evaluation by the MDST on November 7, 2024.  (Id., ¶ 23).  The MDST relied upon a clinical interview, a mental status examination, a review of Plaintiff's medical and mental health records, a review of Plaintiff's classification records, and discussion with staff at Wakulla Correctional Institution ("Wakulla").  The MDST preliminarily determined that Plaintiff should continue to receive hormone therapy. (Id., ¶ 23).  The Variance Team will review

the MDST's recommendation, and, if the Variance Team approves the recommendation, Plaintiff will continue receiving hormone therapy. (Id., ¶ 24).

## II.    PROCEDURAL BACKGROUND.

Plaintiff filed the Complaint, along with the "emergency" Motion for a Preliminary Injunction, on October 25, 2024. (Docs. 1, 4). On October 29, 2024, the Court denied Plaintiff's Motion "to the extent it seeks a temporary restraining order on an emergency basis." (Doc. 14). Plaintiff then filed a Motion to Reconsider the Court's denial of the Motion for a Temporary Restraining Order (Doc. 16) on October 30, 2024, to which the FDC Officials responded on November 4, 2024. (Doc. 26). On November 12, 2024, the FDC Officials filed a Motion to Dismiss and a Motion to Stay pending the Court's decision on the Motion to Dismiss (Docs. 28, 29, 30). The FDC Officials' Motion to Dismiss raises several issues that also bear direct relevance to this Opposition, including that (i) Plaintiff lacks standing to raise allegations regarding hormone therapy; (ii) Plaintiff failed to exhaust administrative remedies; (iii) issue preclusion bars Plaintiff from relitigating the clothing and grooming issue; (iv) Plaintiff failed to state an Eighth Amendment claim on the merits; and (v) Plaintiff failed to plausibly plead class action allegations. (Doc. 29). Plaintiff's Complaint remains subject to dismissal; at a minimum, preliminary injunctive relief remains inappropriate.

## **LEGAL STANDARD**

"A district court may grant a preliminary injunction only if the moving party establishes that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer an irreparable injury unless the injunction is granted; (3) the harm from the threatened injury outweighs the harm the injunction would cause the opposing party; and (4) the injunction would not be adverse to the public interest."  Gonzalez v. Governor of Georgia, 978 F.3d 1266, 1270–71 (11th Cir. 2020) (citing Swain v. Junior, 961 F.3d 1276, 1284-85 (11th Cir. 2020)).  Of the four factors, likelihood of success on the merits "is generally the most important."  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1232 (11th Cir. 2005).  Additionally, "[t]he third and fourth factors 'merge' when, as here, the government is the" non-moving party.  Gonzalez, 978 F.3d at 1271 (quoting Swain, 961 F.3d at 1293) (internal alterations omitted).

A "preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites."  Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989)) (internal quotation marks omitted).  Thus, the grant of a preliminary injunction "is the exception rather than the rule."  U. S. v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983) (citing Texas v. Seatrain Int'l, S.A., 518 F.2d 175,

179 (5th Cir. 1975)).  Moreover, "[a] district court should not issue a preliminary injunction unless it concludes that the movant will suffer immediate harm if relief is delayed until the case is finally resolved on the merits," as "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."  De La Fuente v. Kemp, 679 F. App'x 932, 934 (11th Cir. 2017) (quoting Alabama v. U.S. Army Corps of Eng'rs, 424 F.3d 1117, 1133–34 (11th Cir. 2005)).

The Prison Litigation Reform Act ("PLRA") further limits preliminary injunctive relief "in any civil action with respect to prison conditions."  18 U.S.C. § 3626(a)(2).  Before entering preliminary injunctive relief in a PLRA case, the court must find that the relief is "narrowly drawn, extends no further than necessary to correct the harm the court finds requires preliminary relief, and [is] the least intrusive means necessary to correct that harm."  Id.  The court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief."  Id.  Finally, preliminary injunctive relief in PLRA cases terminates by operation of law ninety (90) days after its entry unless the court "makes the order final before the expiration of the 90-day period."  18 U.S.C. § 3626(a)(2).  If the court provisionally certifies a class and orders class-wide preliminary injunctive relief, the class expires along with the preliminary injunction after ninety (90) days.  Ahlman v. Barnes, 20 F.4th 489, 495 (9th Cir. 2021).

As discussed further below, Plaintiff cannot establish an entitlement to a preliminary injunction, and the PLRA bars the entry of a preliminary injunction. The Court should therefore deny Plaintiff's Motion.

## **ARGUMENT**

## I. **PLAINTIFF LACKS STANDING TO PURSUE AN EIGHTH AMENDMENT CLAIM AS TO HSB 15.05.23'S HORMONE THERAPY PROVISIONS.**

The Court should conduct no further analysis of Plaintiff's claim regarding hormone therapy, because Plaintiff lacks standing to mount such a challenge: Plaintiff continues to receive hormone therapy and faces no risk of its discontinuation. (Doc. 30, ¶ 8; Martinez Decl., ¶ 20). As the State argued in its Motion to Dismiss, Plaintiff's lack of standing means Plaintiff cannot maintain the Eighth Amendment claim vis-à-vis hormone therapy on either Plaintiff's own behalf or on behalf of a purported class. (Doc. 29, 20–22). See, e.g., Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) ("Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury.") (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)) (emphasis in original); Warth v. Seldin, 422 U.S. 490, 502 (1975) ("Unless [the plaintiffs] can … demonstrate the requisite case or controversy between themselves personally and [defendants], none may seek relief on behalf of himself or any other member of the class.") (internal quotation marks omitted).

Plaintiff's lack of standing on the hormone claim means Plaintiff cannot establish an entitlement to a preliminary injunction on Plaintiff's behalf or on behalf of the purported class.

## II. PLAINTIFF FAILED TO ESTABLISH A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

Plaintiff failed to establish a substantial likelihood of success on the merits because: (i) Plaintiff failed to exhaust administrative remedies; (ii) issue preclusion bars Plaintiff from pursuing a claim related to clothing and grooming; and (iii) Plaintiff cannot otherwise demonstrate a substantial likelihood of success on the Eighth Amendment claim. The Court may (and should) refuse to enter a preliminary injunction on any of these grounds.

### A. Plaintiff failed to exhaust the grievance process prior to filing the Complaint.

As discussed in the Motion to Dismiss, Plaintiff failed to exhaust the FDC's grievance process as required by the PLRA. (Doc. 29, 13–20); 18 U.S.C. § 1997e(a). Plaintiff's failure to exhaust administrative remedies constitutes a fatal flaw that demands both that the Court dismiss the Complaint and that the Court deny Plaintiff's Motion. (Compare Doc. 1 (Complaint filed on October 25, 2024) with Doc. 29-1, ¶ 12 (McManus Decl.) appeal exhausted on November 7, 2024). Because "[t]he only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original

complaint," Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012), Plaintiff's failure to exhaust prior to filing the Complaint dooms Plaintiff's claim. See also Ross v. Blake, 578 U.S. 632, 638 (2016) (holding that the PLRA's exhaustion language "is mandatory: An inmate shall bring no action (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.") (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)) (internal quotation marks omitted). Because Plaintiff failed to allege that any other purported class member exhausted administrative remedies, the class claims also fail for failure to exhaust. (Doc. 1 at 19–20, ¶¶ 63–68); Chandler v. Crosby, 379 F.3d 1278, 1287 (11th Cir. 2004) (holding that "a class of prisoner-plaintiffs certified under Rule 23(b)(2) satisfies the PLRA's administrative exhaustion requirement through 'vicarious exhaustion;' i.e., when 'one or more class members has exhausted his administrative remedies with respect to each claim raised by the class.'") (quoting Jones 'El v. Berge, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001)) (internal alterations omitted).

Plaintiff's failure to exhaust also means that Plaintiff cannot establish a substantial likelihood of success on the merits. A plaintiff in a PLRA case can "show a substantial likelihood of success on the merits *only if* the defendants [are] unlikely to demonstrate a lack of PLRA exhaustion." Swain v. Junior, 961 F.3d 1276, 1291 (11th Cir. 2020) (citing Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, 546 U.S. 418, 429 (2006)) (emphasis added). See also T.H. v. Fla. Dep't

of Corr., 696 F. Supp. 3d 1117, 1122 (N.D. Fla. 2023) (Winsor, J.) (holding that prisoner-plaintiff failed to demonstrate a "substantial likelihood of success on the merits because he" failed to show "that he can avoid the Prison Litigation Reform Act's strict administrative exhaustion requirement") (citing Swain, 961 F.3d at 1291–92).  Because Plaintiff failed to exhaust administrative remedies before filing the Complaint, Plaintiff cannot establish a substantial likelihood of success on the merits on Plaintiff's behalf or on behalf of the purported class, and the Court should deny the Motion.

> **B.    Plaintiff cannot relitigate prior litigated claims related to clothing and grooming.**

Plaintiff likewise cannot demonstrate a substantial likelihood of success on the merits of the Eighth Amendment challenge regarding clothing and grooming standards because issue preclusion bars Plaintiff from relitigating the issue.  (Doc. 29, 22–28); Keohane I, 952 F.3d at 1272–79.  As the FDC Officials argued in their Motion to Dismiss, the Eleventh Circuit previously determined that the Eighth Amendment contains no requirement that the FDC Officials allow Plaintiff to "socially transition." Keohane I, 952 F.3d at 1272–79.  Plaintiff raises that identical issue again here, although Plaintiff possessed a full and fair opportunity to litigate it in Keohane I; Plaintiff actually litigated the issue in Keohane I; and the Eleventh Circuit's determination of the issue represented a "critical and necessary part" of its judgment in Keohane I.  952 F.3d at 1272–79; Christo v. Padgett, 223 F.3d 1324,

1339 (11th Cir. 2000); (Doc. 29, 22–28).  The FDC Officials therefore possess a viable issue preclusion defense as to Plaintiff's clothing-and-grooming Eighth Amendment challenge.

The issue preclusion defense prevents Plaintiff from demonstrating a substantial likelihood of success on the merits as to that claim.  Axiom Worldwide, Inc. v. HTRD Grp. Hong Kong Ltd., 2012 WL 4077238, at *6 (M.D. Fla. Sept. 17, 2012) (plaintiff failed to demonstrate a substantial likelihood of success on the merits, warranting denial of preliminary injunction, where the defendant had a "viable" defense "based on the doctrine of issue preclusion"); United States v. Jones, 837 F. Supp. 1145, 1147–48 (S.D. Ala. 1993) (same).  Because issue preclusion bars Plaintiff from relitigating the clothing-and-grooming challenge, Plaintiff cannot demonstrate a substantial likelihood of success on the merits of that challenge, and the Court should deny the Motion.

### C.    FDC's Health Services Bulletin provides for constitutionally adequate mental health and medical care for gender dysphoria.

Plaintiff cannot demonstrate a substantial likelihood of success on the merits. Plaintiff claims that HSB 15.05.23 and the recission of Procedure 403.012 violate the Eighth Amendment.  (Doc. 1, ¶¶ 69–81).  The Eighth Amendment prohibits "government officials from exhibiting deliberate indifference to the serious medical needs of prisoners."  Wade v. McDade, 106 F.4th 1251, 1255 (11th Cir. 2024) (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)).  To establish Eighth

Amendment medical-care liability, Plaintiff must first "demonstrate, as threshold matter, that [Plaintiff] suffered a deprivation that was, objectively, sufficiently serious" for constitutional purposes.  Id. at 1262 (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Second, Plaintiff "must demonstrate that the [State officials] acted with subjective recklessness as used in the criminal law;" in other words, Plaintiff "must show that the [FDC Officials were] actually, subjectively aware that [their] own conduct caused a substantial risk of serious harm" to Plaintiff.  Id. (quoting Farmer, 511 U.S. at 839, 844–45).  Assuming that Plaintiff's (and the proposed class members') gender dysphoria qualifies as a "serious medical need," Plaintiff cannot establish a substantial likelihood of success on the claim that the FDC Officials exhibited deliberate indifference to that medical need.

The Eighth Amendment requires the State to provide only "minimally adequate medical care to those whom [it is] punishing by incarceration." Hoffer v. Sec'y, Fla. Dep't of Corr., 973 F.3d 1263, 1270 (11th Cir. 2020) (quoting Harris v. Thigpen, 941 F.2d 1495, 1504 (11th Cir. 1991)).  The Eighth Amendment lacks any requirement that medical care qualify as "perfect, the best obtainable, or even very good." Keohane v. Sec'y, Fla. Dep't of Corr., 952 F.3d 1257, 1266 (11th Cir. 2020) (quoting Harris, 941 F.2d at 1510).  "So long as the care provided isn't 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness,' then the Eighth Amendment is satisfied." Id. at 1277–78

20

(quoting <u>Rogers v. Evans</u>, 792 F.2d 1052, 1058 (11th Cir. 1986)).  At most, Plaintiff disagrees with an anticipated choice of treatment the FDC Officials established through HSB 15.05.23.

Importantly, however, as the Eleventh Circuit held in <u>Keohane I</u>, in a "situation where medical professionals disagree as to the proper course of treatment for" an inmate's gender dysphoria, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment cannot support a claim of cruel and unusual punishment."  <u>Id.</u> at 1274 (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th Cir. 1991)).  <u>See also</u> <u>Kosilek v. Spencer</u>, 774 F.3d 63, 91 (1st Cir. 2014) (holding, in the context of whether the Eighth Amendment requires prison officials to provide sex-reassignment surgery, that "[t]he choice of a medical option that, although disfavored by some in the field, is presented by competent professionals does not exhibit a level of inattention or callousness to a prisoner's needs rising to a constitutional violation"); <u>Hoffer</u>, 973 F.3d at 1273 ("Because the plaintiffs here are receiving medical care—and because the adequacy of that care is the subject of genuine, good-faith disagreement between healthcare professionals—we are hard-pressed to find that the Secretary has acted in so reckless and conscience-shocking a manner as to have violated the Constitution.").  Thus, Plaintiff cannot establish an Eighth Amendment violation as to either HSB 15.05.23's provisions regarding hormone therapy or the enforcement

of FDC's male inmate grooming and clothing standards against inmates with gender dysphoria.

Plaintiff alleges that the FDC Officials exhibited deliberate indifference to the serious medical needs of Plaintiff and the purported class members because HSB 15.05.23 constitutes a "blanket ban against the provision of medical care to treat gender dysphoria in state carceral settings, without exception or regard for medical need." (Doc. 4, 20). This statement is demonstrably false. HSB 15.05.23 in no way constitutes a "blanket ban" on the provision of *any* medical care to treat gender dysphoria. (Id.). Instead, the primary purpose of HSB 15.05.23 remains "[t]o ensure inmates diagnosed with gender dysphoria receive timely, appropriate mental health services and individualized treatment programming as clinically indicated." (Martinez Decl., ¶ 14). Indeed, Plaintiff's own case demonstrates the falsity of this allegation: the MDST *already preliminarily recommended* that Plaintiff continue receiving hormones. (Id., ¶ 23). Plaintiff's Eighth Amendment claim attacks an imaginary version of HSB 15.05.23, not the real thing.

Plaintiff's argument as to the purported "difficulty" of receiving hormones pursuant to HSB 15.05.23 suffers from a deeper flaw. (Doc. 4, 20). In short, there remains a debate in the medical community as to the efficacy of cross-sex hormones

as a treatment for gender dysphoria.[4]  (See Martinez Decl., ¶¶ 9–13).  Although the efficacy of hormone therapy to alleviate the negative mental health symptoms occurring secondary to gender dysphoria remains low, hormone therapy carries a host of long-term health risks.  (Id., ¶¶ 10, 12).  Indeed, the number of grievances to medical and mental health staff lodged by inmates with gender dysphoria *increased* after the issuance of Procedure 403.012, confirming the inadequacy of a treatment regimen based solely on hormone therapy.  (Id., ¶ 6).

Moreover, as explained above, HSB 15.05.23 *still provides* an avenue for treatment with cross-sex hormones.  (Martinez Decl., ¶¶ 15–23).  But, unlike former Procedure 403.012, HSB 15.05.23 also ensures that inmates with gender dysphoria receive necessary mental-health treatment.  (Id., ¶¶ 15–16).  HSB 15.05.23 also provides for assessment and re-evaluation to determine whether the individual's treatment effectively addressed and reduced negative symptoms or produced negative side effects.  (Id.).  Instead of constituting deliberate indifference, the FDC Officials' issuance of HSB 15.05.23 resulted from a careful and measured weighing of the risks and benefits, pursuant to which they developed a policy that provides for

---

[4] Plaintiff alleges that WPATH establishes "the standards of care for the treatment of gender dysphoria" (Doc. 4, 3); however, Dr. Martinez personally completed WPATH's Foundations of Gender Dysphoria course and considered the criticisms of WPATH during the research undergirding HSB 15.05.23.  (Martinez Decl., ¶¶ 8, 10, 11).

comprehensive and individualized courses of treatment for inmates with gender dysphoria. (Id., ¶ 6). Plaintiff therefore cannot establish that the FDC Officials acted with "subjective recklessness as used in the criminal law" in that the FDC Officials were "actually subjective aware that [their] own conduct caused a substantial risk of serious harm to" Plaintiff or the purported class members. Wade, 106 F.4th at 1262.

Moreover, this Court need not make any determination as to *what in fact* constitutes the "standard of care" for the treatment of gender dysphoria; the mere fact that a good-faith debate exists defeats Eighth Amendment liability. Hoffer, 973 F.3d at 1273; Kosilek, 774 F.3d at 91. As the Eleventh Circuit recently recognized, issues surrounding state-sanctioned treatment for gender dysphoria "are quintessentially the sort that our system of government reserves to legislative, not judicial, action." Eknes-Tucker v. Governor of Ala., 80 F.4th 1205, 1231 (11th Cir. 2023). For all these reasons, Plaintiff cannot establish a substantial likelihood of success on the merits of the Eighth Amendment claim to the extent that claim challenges the hormone-therapy provisions of HSB 15.05.23.

Finally, Plaintiff makes only a passing attempt to defend the Eighth Amendment claim as it relates to clothing and grooming standards. (Doc. 4, 22–23). Plaintiff argues that "for years, FDC has understood that hormone therapy and clothing, grooming, and canteen standards consistent with one's gender identify *are beneficial* for some inmates with gender dysphoria." (Doc. 4, 22). The Eleventh

Circuit already rejected that claim. <u>Keohane I</u>, 952 F.3d at 1272.  The standard remains not what may qualify as "beneficial" (<u>id.</u>), but what qualifies as "minimally adequate."    <u>Hoffer</u>, 973 F.3d at 1270.   FDC's removal of blanket access to "psychologically pleasing" items for Plaintiff or to other class members cannot mean that the FDC Officials violated the Eighth Amendment.  <u>Keohane I</u>, 952 F.3d at 1274.  Because Plaintiff cannot establish a substantial likelihood of success on the merits, the Court should deny Plaintiff's Motion.

## III.    PLAINTIFF CANNOT DEMONSTRATE IRREPARABLE HARM.

The MDST *already preliminarily determined* that Plaintiff will stay on hormones. (Martinez Decl., ¶ 23).  Accordingly, Plaintiff faces no imminent threat of any harm, irreparable or otherwise. <u>De La Fuente</u>, 679 F. App'x at 934.  Even if Plaintiff could seek a preliminary injunction on behalf of the purported class (Plaintiff cannot, as discussed below), Plaintiff cannot establish irreparable harm on behalf of any alleged class member.

As set forth above, no inmate faces the immediate withdrawal of hormone treatment.  Even if the MDST determines that any inmate should stop receiving hormone therapy, the process of discontinuation hardly qualifies as immediate.  The total discontinuation of hormone treatment will take at least three (3) months from October 31, 2024.   (Martinez Decl., ¶ 22).   Moreover, the MDST already preliminarily approved Plaintiff's continued hormone therapy.  (Martinez Decl., ¶

23).”  Thus, even if some absent class members face a risk of harm pursuant to HSB 15.505.23 (they do not), Plaintiff cannot properly seek preliminary injunctive relief on behalf of the purported class.  Prado-Steiman ex rel. Prado v. Bush, 221 F.3d 1266, 1279 (11th Cir. 2000) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982)); see also id. (“[I]t is not enough that the conduct of which the plaintiff complains will injure someone.  The complaining party must also show that [s]he is within the class of persons who will be concretely affected”) (quoting Blum v. Yaretsky, 457 U.S. 991, 999 (1982)).  Plaintiff therefore cannot establish irreparable harm vis-à-vis HSB 15.05.23’s hormone-therapy provisions.

Nor can Plaintiff establish a risk of irreparable harm to any inmate from a requirement to abide by male grooming and clothing standards.  Again, the Eleventh Circuit already held that denying Plaintiff’s request to socially transition failed to constitute an Eighth Amendment violation.  Keohane I, 952 F.3d at 1274.  Instead, the Court noted expert testimony “that social-transitioning, while not strictly medically necessary, would be ‘psychologically pleasing’ to” Plaintiff.  Id.  The law of this Circuit explicitly provides that even a violation of constitutional rights *does not* always constitute irreparable harm for preliminary-injunction purposes.  Siegel, 234 F.3d at 1177 (collecting cases).  Thus, here, where Plaintiff cannot allege a constitutional violation, Plaintiff necessarily cannot establish irreparable harm.

Even assuming inmates other than Plaintiff faced a forced haircut or denial of alternate clothing or canteen items, any risk of harm would remain individual to that inmate and that inmate's particular psychological condition. For example, during the previous litigation, Plaintiff's "medical-treatment team further concluded that requiring Keohane to comply with the FDC's policies regarding hair and grooming standards doesn't put her at a substantial risk of self-harm or severe psychological pain." Keohane I, 952 F.3d at 1274. The same may well be true as to other inmates. Accordingly, even if Plaintiff could seek a preliminary injunction on behalf of a class to which Plaintiff does not belong, Plaintiff cannot establish the irreparable harm necessary to obtain one. The Court should therefore deny Plaintiff's Motion.

## IV. THE BALANCE OF THE EQUITIES AND THE PUBLIC INTEREST FAVOR THE STATE.

Both the balance of the equities and the public interest favor the FDC Officials. Where, as here, the government opposes a preliminary injunction, these factors merge. Gonzalez, 978 F.3d at 1271 (quoting Swain, 961 F.3d at 1293). the FDC Officials maintain a strong interest in the operation of the state prison system without judicial interference. As the United States Supreme Court recognizes, "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." Turner v. Safley, 482 U.S. 78, 84–85 (1987) (citing Procunier v. Martinez, 416 U.S. 396, 404–405

(1974)).  "Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint.  Where a state penal system is involved, federal courts have … additional reason to accord deference to the appropriate prison authorities." Id.  In other words, "courts do not sit as super-wardens," and "prison officials, rather than judges," should "make the difficult judgment concerning institutional operations." Pesci v. Budz, 935 F.3d 1159, 1166 (11th Cir. 2019).  This principle especially applies in light of the nebulous and rapidly-evolving standards for treatment of gender dysphoria.  See Swain, 961 F.3d at 1293 ("Perhaps especially in the prison context, government officials have a keen interest in maintaining the necessary flexibility to react quickly in response to new information…").  The Court thus possesses good reason to find that the balance of the equities and the public interest favor the FDC Officials.

Likewise, the State of Florida maintains a strong interest in establishing the limits of state-sanctioned treatment for gender dysphoria absent federal judicial interference, as "these types of issues are quintessentially the sort that our system of government reserves to legislative, not judicial, action." Eknes-Tucker, 80 F.4th at 1231.  Thus, the balance of the equities favors the FDC Officials.

**V.    PLAINTIFF CANNOT DEMONSTRATE THE PROPRIETY OF CLASS-WIDE PRELIMINARY INJUNCTIVE RELIEF.**

Plaintiff seeks preliminary injunctive relief on behalf of a purported class of "all incarcerated persons in custody of the FDC who: i) are or will be diagnosed by FDC medical or mental health personnel with gender dysphoria, *and* ii) are currently being provided—or, absent" HSB 15.05.23—"would be considered for hormone therapy and/or access to clothing and grooming standards that accord with their gender identity."  (Doc. 1, ¶ 7).  As the FDC Officials explained in both their Response to Plaintiff's Motion to Reconsider (Doc. 26, 9–11) and in their Motion to Dismiss (Doc. 29, 31–37), Plaintiff failed to properly allege a class claim.  Plaintiff's pleadings fail to provide facts indicating that "there are questions of law or fact common to the class;" that Plaintiff's claim is "typical of the claim[] … of the class;" or that Plaintiff will "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(2), (a)(3), (a)(4).  Likewise, Plaintiff cannot demonstrate the FDC Officials have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief … is appropriate respecting the class as a whole[.]"  Id. at 23(b)(2).  The Court, therefore, should decline to issue class-wide preliminary injunctive relief.

First, there exist no "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Plaintiff attempts to categorize the HSB as a "blanket ban on the provision of gender-affirming care that will impact scores, if not hundreds, of

transgender people incarcerated with the FDC." (Doc. 4, 26). However, as discussed above, HSB 15.05.23 establishes an *individualized* treatment plan for each inmate with gender dysphoria, including the provision of hormones if the inmate satisfies certain criteria. (Martinez Decl., ¶¶ 6, 13, 14, 16, 17–22; Ex. B, 4–5, § VII; id., 6–8, § IX). The individualized nature of each inmate's treatment defeats commonality. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 388, 350-51 (2011) (quoting Nagareda, Class Certification in the Age of Aggregate Proof," 84 N.Y.U. L. Rev. 97, 131–32 (2009)). Perhaps no case could present more dissimilarities between purported class members than one dealing with individualized treatment of gender dysphoria.

Moreover, Plaintiff's proposed class definition includes "all incarcerated persons in the custody of the FDC who," among other things, "*would be considered* for hormone therapy" under FDC's previous policy. (Doc. 1, ¶ 7) (emphasis added). However, hormone therapy is not clinically indicated for all inmates with gender dysphoria even under the previous FDC policy, Procedure 403.012. (Martinez Decl., ¶ 5; Ex. A to Martinez Decl., 5) (establishing that inmates may receive hormone

therapy only if health care staff or the GDRT determine the "hormones are medically necessary and not contraindicated for any reason")).  Thus, even if HSB 15.05.23 constituted a blanket ban on hormone therapy (it does not), not all inmates who "would be considered" for hormone therapy under Procedure 403.012 would necessarily *receive* it.  (Id.).  HSB 15.05.23 therefore works no injury on those inmates, which defeats commonality.  Dukes, 564 U.S. at 350 (holding that the "common contention … must be … capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke").  Similarly, the enforcement of FDC's grooming and clothing standards involves an *individualized* disciplinary process, including a disciplinary hearing for any inmate who refuses to comply with grooming standards or surrender contraband items.  Fla. Admin. Code r. 33-601.307. Each putative class member will have a separate disciplinary hearing at which the putative class member may call witnesses or present evidence.  See id. at 33-601.307(1)(g).  Such individualized procedures will impede the progress of class-wide resolution of allegations.  See Dukes, 564 U.S. at 350.  Because no commonality exists among the proposed class members, the Court should deny a class-wide preliminary injunction.[5]

_____

[5] Plaintiff likewise cannot demonstrate the propriety of class-wide preliminary injunctive relief pursuant to Fed. R. Civ. P. 23(b)(2), as "[t]he requirement that the defendant act on grounds generally applicable to the 23(b)(2) class is encompassed

Finally, Plaintiff's claim fails to qualify as "typical" of that of the class.  Fed. R. Civ. P. 23(a)(3).  "Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification."  Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001). Because Plaintiff lacks standing to challenge HSB 15.05.23's hormone-therapy provisions, Plaintiff's Eighth Amendment claim lacks "typicality" with that of the purported class.  The Eleventh Circuit plainly requires that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  Prado, 221 F.3d at 1279 (11th Cir. 2000) (quoting Falcon, 457 U.S. at 156); see also id. ("[I]t is not enough that the conduct of which the plaintiff complains will injure someone.  The complaining party must also show that [s]he is within the class of persons who will be concretely affected") (quoting Blum, 457 U.S. at 999).  Plaintiff's lack of standing to assert the hormone-therapy challenge defeats typicality.

Additionally, Plaintiff remains subject to at least two (2) unique defenses, including (i) failure to comply with the PLRA's administrative exhaustion

---

in the commonality requirement of Rule 23(a)."  Diaz v. Hillsborough Cnt'y Hosp. Auth., 165 F.R.D. 689, 695 (M.D. Fla. 1996) (citing Harriss v. Pan Am. World Airways, Inc., 74 F.R.D. 24, 45–46 (N.D. Cal. 1977)).

requirements; and (ii) issue preclusion based on the Eleventh Circuit's decision in Keohane I. "[T]ypicality may be destroyed by the existence of unique defenses that would preoccupy the defendant to the detriment of the interests of absent class members." Colomar v. Mercy Hosp., Inc., 242 F.R.D. 671, 678 (S.D. Fla. 2007) (citing Ross v. Bank South, N.A., 837 F.2d 980, 990–91, vacated on other grounds, 848 F.2d 1132, 1133 (11th Cir.1988)). Defenses unique to Plaintiff have thus far proved the focus of this nascent litigation, as the FDC Officials filed a Motion to Dismiss and a Motion to Stay based largely on standing and administrative-exhaustion grounds. (See Docs. 29, 30). Because Plaintiff's claim fails to qualify as "typical" of that of the purported class, the Court should decline to issue class-wide preliminary injunctive relief.

## VI.    THE PLRA BARS THE PRELIMINARY INJUNCTIVE RELIEF PLAINTIFF SEEKS.

Finally, Plaintiff cannot overcome the PLRA's requirement that preliminary injunctive relief be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Moreover, courts must not grant preliminary injunctive relief that "that requires or permits a government official to exceed his or her authority under State or local law or otherwise violates State or local law" unless the court makes the findings required by the PLRA as to that relief. Id.; 18 U.S.C. § 3626(a)(1)(B). Any preliminary injunctive relief the

Court issues will expire by operation of law after ninety (90) days from its entry, along with any class the Court provisionally certifies. Ahlman, 20 F.4th at 495.

A core dimension of the PLRA's limit on prospective relief "is that such relief may not be too prescriptive. At bottom, federal courts must ensure that 'substantial discretion and flexibility' remain 'in the hands of the prison administrators.'" Howe v. Hughes, 74 F.4th 849, 857 (7th Cir. 2023) (quoting Westefer v. Neal, 682 F.3d 679, 685 (7th Cir. 2012)). See also Valentine v. Collier, 956 F.3d 797, 806 (5th Cir. 2020) (finding that a class-wide preliminary injunction in an Americans with Disabilities Act challenge to the Texas prison system's COVID-19 practices that "applie[d] to all inmates—disabled and non-disabled alike" violated the PLRA). Plaintiff, however, seeks far too prescriptive relief. Plaintiff seeks a *total bar* on the FDC Officials' enforcement of HSB 15.05.23, even though the purported class consists, by Plaintiff's definition, of inmates who "would be *considered* for hormone therapy" pursuant to the former Procedure 403.012. (Doc. 1, ¶ 7). But not all inmates who "would be considered for hormone therapy" pursuant to Procedure 403.012 would necessarily receive it, which means that the enforcement of HSB 15.05.23 makes no difference to those purported class members. (See Doc. 4-3, 5, §§ 4.b.3, 4.c.2; Martinez Decl., ¶ 5; Ex. A to Martinez Decl., 5) (Procedure 403.012 provided for hormone treatment only if health care staff or the GDRT determined the "hormones are medically necessary and not contraindicated for any reason").

Plaintiff's proposed preliminary injunction, however, would prohibit the FDC Officials from enforcing HSB 15.05.23 as to inmates who would possess no entitlement to hormone therapy, in violation of the PLRA.

## <u>CONCLUSION</u>

For the reasons discussed above, the Court should deny Plaintiff's Motion for a Preliminary Injunction.

Dated: November 15, 2024.

*/s/ Kenneth S. Steely*
Kenneth S. Steely
*One of the Attorneys for the FDC Officials*

William R. Lunsford
Kenneth S. Steely
William J. Cranford III (*pro hac vice*)
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com
will.cranford@butlersnow.com

Daniel A. Johnson (Florida Bar No. 91175)
**FLORIDA DEPARTMENT OF CORRECTIONS**
501 South Calhoun Street
Tallahassee, FL 32399-2500
Telephone: (850) 717-3605
dan.johnson@fdc.myflorida.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 15th day of November 2024:

Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl (Admitted in Washington only)*
Leslie Cooper
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org
*Pro Hac Vice admission granted*

*Attorneys for Plaintiffs*

/s/    Kenneth S. Steely
*Of Counsel*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD LIMIT</u>

  I hereby certify that this Memorandum required by N.D. Fla. Loc. R. 7.1(E) contains 7,978 words, not exceeding 8,000 total words as required by N.D. Fla. Loc. R. 7.1(F).

<i>/s/ Kenneth S. Steely</i>
<i>Of Counsel</i>