# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

REIYN KEOHANE,            :

                           :

       *Plaintiff*,         :

                           :

v.                       :     Case No. 4:24-cv-00434-AW-MAF

                           :

RICKY D. DIXON, et al.,     :

                           :

       *Defendants*.     :

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

LEGAL STANDARD ...........................................................................................4

ARGUMENT .......................................................................................................5

   1.   PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES. ............................5

   2.   PLAINTIFF HAS STANDING TO ASSERT CLAIMS REGARDING HORMONE
       TREATMENT...............................................................................................8

   3.   PLAINTIFF IS NOT PRECLUDED FROM CHALLENGING THE NEW POLICY'S DENIAL
       OF ACCESS TO CLOTHING AND GROOMING ACCOMMODATIONS........................15

   4.   PLAINTIFF'S COMPLAINT STATES AN EIGHTH AMENDMENT CLAIM. ...............19

       *a. Clothing and grooming accommodations*...................................*19*

       *b. Hormone therapy* ......................................................................*20*

   5.   PLAINTIFF ADEQUATELY ALLEGES FACTS TO SUPPORT CLASS ALLEGATIONS.....21

       *a.*   *Plaintiff Has Standing to Serve as the Class Representative.* ...............*22*

       *b.*   *Plaintiff has adequately pleaded the requirements for class certification.*
          *22*

CONCLUSION ...................................................................................................27

<u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................4

*Baughcum v. Jackson*, 92 F.4th 1024 (11th Cir. 2024) .............................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).......................................4

*Blevins v. FCI Hazelton Warden*, 819 F. App'x 853 (11th Cir. 2020) ......................7

*Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S 147 (1982) ..........................23

*Keohane v. Fla. Dep't of Corrections*, 952 F.3d 1257 (11th Cir. 2020).. 9, 16, 17, 20

*Keohane v. Jones*, No. 4:16-cv-511-MW-CAS (N.D. Fla July 19, 2017) ..............16

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)..................................9

*Montana v. United States*, 440 U.S. 147 (1979) ........................................17

*Murray v. Auslander*, 244 F.3d 807 (11th Cir. 2001) ......................... 23, 24

*N. Georgia Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429 (11th Cir. 1993)......................................................17

*Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341 (11th Cir. 2001) ..................26

*Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241 (11th Cir. 2016).......................4

*Ross v. Blake*, 578 U.S. 632 (2016)......................................................7, 8

*Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371 (11th Cir. 2010) ............................................4

*Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181 (11th Cir. 2003) ..............26

*Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256 (11th Cir. 2009)...................................23

*Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338 (2011)....................... 23, 24

**Statutes**

Section 286.311, Florida Statutes .................................................. passim

**Rules**

Fed. R. Civ. P. 23...............................................................................22

**Regulations**

Fla. Admin. Code r. 33-103.007.................................................................5

# INTRODUCTION

In her Complaint, Plaintiff Reiyn Keohane challenges the Florida Department of Corrections' ("FDC") new policy regarding the treatment of inmates with gender dysphoria, which categorically prohibits hormone therapy and clothing and grooming accommodations it previously provided to Plaintiff and other inmates with a medical need for such treatment and accommodations. The Complaint specifically alleges that under the prior FDC policy—Procedure 403.012—Plaintiff and members of the proposed class were provided hormone therapy if and when FDC medical staff deemed it medically necessary, in addition to access to female clothing and grooming standards to address their gender dysphoria. Compl. ¶¶ 43–47. It further alleges that on September 30, 2024, FDC rescinded Procedure 403.012 and replaced it with a new policy—Health Services Bulletin 15.05.23 (the "Health Bulletin")—which does not permit any of these treatments or accommodations, and specifically notes that the purchase of hormone therapy with state funds for individuals in state custody is prohibited by state law. *Id.* ¶¶ 48–57. While, despite the statutory prohibition, the Health Bulletin makes reference to the possibility of a "variance" to make an exception to provide hormone therapy in "rare instances," as discussed below, the requirements to obtain a variance are unattainable and, at a minimum, impose requirements that put Plaintiff and members of the proposed class at imminent risk of losing treatment

for which FDC medical staff recognize they have a medical need. *Id.* ¶¶ 51–53, n. 2. The Health Bulletin does not even purport to provide any possibility of an exception to permit access to female clothing and grooming standards. *Id.* ¶ 56.

Moreover, the Complaint alleges that FDC staff informed transgender women with gender dysphoria in Florida state prisons that the new policy was being enforced and that they had until October 30, 2024, to comply with male clothing and grooming standards or they would have their heads forcibly shaved, have their female undergarments and grooming items confiscated, and be subject to discipline. *Id.* ¶ 60.

Plaintiff brought this action seeking injunctive relief to prevent FDC from enforcing the new policy, which threatens Plaintiff and members of the proposed class with being stripped of medical care and accommodations that have been vital to their health and well-being.

None of Defendants' arguments in their motion to dismiss have merit. They first assert that Plaintiff failed to exhaust administrative remedies, although Plaintiff was diligent in grieving the new policy; given that Defendants have 30 days to respond to appeals of denials of grievances, the opportunity to exhaust her administrative remedies prior to the October 30 deadline for compliance with the policy was unavailable.

Defendants' argument that Plaintiff lacks standing to assert claims regarding hormone therapy turns on their unwillingness to accept the allegations in the Complaint as true, as they must on a motion to dismiss. They argue that the risk of FDC discontinuing her hormone therapy is "speculative," but this disregards the allegations in the Complaint that the new policy prohibits such treatment pursuant to a statutory prohibition, and the policy's provision for "variances" to allow such treatment in "rare instances" is an unattainable standard or, at best, one that puts Plaintiff and other gender dysphoric inmates at imminent risk of having their treatment discontinued for reasons unrelated to medical need. For these same reasons, Defendants' arguments asserting failure to state a claim with respect to hormone therapy and inadequacy of class allegations also fail.

To try to dispose of Plaintiff's claim with respect to the ban on access to clothing and grooming accommodations, Defendants argue that issue preclusion bars the claim, appearing take the position that because a court found that such accommodations were not medically necessary for her because of determinations made more than seven years ago, they cannot be medically necessary for her now, despite FDC subsequently permitting her to groom and dress in accordance with female standards for the past six years and her allegation that having these accommodations taken away now would cause serious psychological harm. *Id.* Defendants' assertion that Plaintiff fails to state a claim with respect to clothing

and grooming standards turns on their misreading of the court's decision in Plaintiff's prior case as establishing that such accommodations can never be constitutionally required regardless of medical need. It held nothing of the kind.

Plaintiff alleges facts that plausibly state a claim for a violation of the Eighth Amendment. None of Defendants' arguments for dismissal at this stage have merit and their motion to dismiss should be denied.

## LEGAL STANDARD

To overcome a Rule 12(b)(6) motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The complaint "need not contain 'detailed factual allegations'"; the allegations need only "'raise a right to relief above the speculative level.'" *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1244 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "In ruling on a 12(b)(6) motion, the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

<u>ARGUMENT</u>

**1. PLAINTIFF EXHAUSTED HER ADMINISTRATIVE REMEDIES.**

As alleged in the Complaint, on September 30, 2024, Plaintiff learned from FDC officials that Defendants were rescinding Procedure 403.012 and implementing a new policy for the treatment of gender dysphoria that would affect everything "up to and including hormones." Compl. at 2. She and other transgender women in FDC custody were told that they had 30 days to be in compliance with male grooming and clothing standards and that if they were not, their hair would be forcibly cut, their female clothing and grooming items would be confiscated, and they would be subjected to disciplinary action. *Id*.

In response, Plaintiff quickly grieved the change in policy. On October 3, 2024, she filed an emergency grievance directly to the Office of the Secretary, as permitted by Fla. Admin. Code r. 33-103.007.[1] McManus Decl. ¶ 6. She also filed formal grievance number 2410-118-045 on October 3, 2024. McManus Decl. ¶ 5. Defendants do not allege that this grievance was improperly submitted, and a response was mailed to Plaintiff on October 14, 2024, which she received on October 18, 2024. ECF 29 (Brief in Support of Motion to Dismiss) at 9–10

---

[1] The response to the grievance stated that "[y]ou did not provide this office with a copy of the formal grievance at the institutional level as required by rule or the reason you provided for by-passing that level of the grievance procedure is not acceptable," and the "appeal [was] returned without action." The response is dated October 16, 2024. McManus Decl. Ex. B.

("Motion"); ECF 29-1 (Declaration of Alan McManus) ("McManus Decl."), Ex. A.
Plaintiff quickly appealed the response to her formal grievance on October 21,
2024, which the Bureau of Policy Management and Inmate Appeals (the "Bureau")
received on October 28, 2024. Motion at 10. The Bureau has 30 days from the date
of receipt to respond to an appeal of a formal grievance, McManus Decl. ¶ 11,
allowing them until November 27, 2024, to respond.

Plaintiff availed herself of all available remedies to her. Defendants do not
dispute that Plaintiff has fully grieved the new policy and exhausted her
administrative remedies, but instead they argue that her appeal of her grievance
was not complete until after she filed her Complaint. Motion at 10–11. But
Defendants had made it clear that on October 30, 2024, transgender women who
were not in compliance with the male grooming and clothing standards would have
their heads forcibly shaved, their female clothing and commissary items
confiscated, and face disciplinary action. Defendants also made clear that their
hormone therapy could be discontinued at any time. Waiting for her appeal to be
exhausted was not an option that was available to Plaintiff, because the irreparable
harm to her and the proposed class would occur before the Bureau was required to
provide her with a response.[2]

---

[2] Though the Bureau responded on November 7, 2024—after FDC's October 30,
2024 implementation date—Plaintiff did not know when they would respond at the

The U.S. Supreme Court has noted an important exception to the administrative exhaustion requirement: an "inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016). An inmate "need not exhaust unavailable ones." *Id*. at 642. The *Ross* Court explained that "the ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Id*. (internal citations omitted). While the *Ross* Court offered three scenarios that would render an administrative remedy unavailable, it did not limit unavailability to those three. *See id.* at 643–44; *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856 (11th Cir. 2020) (describing *Ross* as having "explained that *at least* three scenarios meet that criteria") (emphasis added).

It was not possible for Plaintiff to complete the formal grievance process in advance of FDC's October 30th enforcement date, making it incapable of use for the accomplishment of its intended purpose. Plaintiff filed her case on October 25, 2024, in an attempt to obtain emergency injunctive relief prior to the October 30 enforcement date. Despite her quickly appealing the denial of her formal grievance, the Bureau had yet to even receive her appeal, let alone respond, Motion

---

time of filing her complaint. Indeed, we are *still* in the time period that the Bureau has to respond to her appeal, and therefore in the time period where, Defendants argue, she would not yet be eligible to file her complaint had the Bureau not responded early.

at 10, and she could not have waited until the grievance process was complete—potentially as late as November 27, 2024—as that would have subjected her to the unconstitutional harm her lawsuit seeks to avoid. Therefore, despite Plaintiff's diligence in grieving the newly announced policy, the opportunity to exhaust her administrative remedies prior to October 30 was unavailable.

Further, because Florida Statutes Section 286.311 and the Health Bulletin are blanket bans on care that are binding on FDC, no grievance process is "available" to challenge their imposition because the procedure is a "dead end—with officers unable … to provide any relief." *Ross*, 578 U.S. at 633. Because the administrative remedy is unavailable, Plaintiff has satisfied the exhaustion requirements of the PLRA.[3]

## 2. PLAINTIFF HAS STANDING TO ASSERT CLAIMS REGARDING HORMONE TREATMENT.

Defendants assert that Plaintiff lacks standing to challenge the new policy with respect to hormone therapy.[4] To establish standing, a plaintiff must show an

---

[3] Should the Court determine that Plaintiff failed to exhaust all available administrative remedies prior to filing her complaint, there is no question that Plaintiff has now exhausted her administrative remedies, and Plaintiff will refile her complaint as quickly as possible. In that instance, given the urgency, Plaintiff would ask the Court to hold the December 9, 2024, preliminary injunction hearing date and order expedited re-briefing on the motion for a preliminary injunction.

[4] Notably, Defendants do not dispute Plaintiff's standing to challenge the blanket policy denying all inmates with gender dysphoria access to clothing and grooming standards that accord with their gender identity. They apparently concede that there

actual or imminent injury in fact, "a causal connection between the injury and the conduct complained of," and "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). (internal citation and quotations omitted). The Complaint is replete with well-pleaded allegations that easily meet this test.

First, the Complaint alleges that "[p]rior FDC policy, dating back to 2017, recognized that . . . hormone therapy . . . can be medically necessary for those diagnosed with gender dysphoria"; that "[u]nder the former policy, FDC medical staff determined that hormone therapy was medically necessary for Keohane"[5]; that "[plaintiff] and many other inmates with gender dysphoria have long been provided hormone therapy"; and that "[f]or Keohane and others, access to this medical care . . . has been critical to alleviating the distress of gender dysphoria." Compl. at 3; *see also* Compl. ¶ 45 (prior policy "provided for hormone therapy to be provided to inmates with gender dysphoria when health care staff determines it is medically necessary and not contraindicated."); *id.* ¶ 47 ("For over six years, the

---

is no possibility for an exception that would permit Plaintiff or any other inmate with gender dysphoria to access these accommodations, regardless of medical need.

[5] *See also Keohane v. Fla. Dep't of Corrections*, 952 F.3d 1257, 1263-64 (11th Cir. 2020) (FDC stipulated that Plaintiff's "gender dysphoria constitutes a 'serious medical need' for deliberate-indifference purposes and that hormone therapy is medically necessary to treat that need").

Wakulla Annex—and, upon information and belief, FDC more generally—has been following this [prior] policy"); *id*. ¶ 42 ("The hormone therapy . . .has . . . alleviated the painful distress of gender dysphoria.").

Next, the Complaint alleges that the Health Bulletin "provides that 'State law prohibits the Department from expending any state funds to purchase cross-sex hormones for the treatment of gender dysphoria'" (citing Section 286.311, Florida Statutes), and that "'[t]he Department shall comply with this statutory requirement unless compliance with the U.S. Constitution or a court decision requires otherwise.'" Compl. at 2–3; *id*. ¶ 50 (quoting Health Bulletin).

The Complaint further alleges that this new policy—although not Section 286.311—"purports to provide an avenue for possible exceptions to the prohibition on hormone therapy," Compl. ¶ 51, but it "establishes an impossible standard and is nothing more than a mirage." *Id*. ¶ 53. For example, the Complaint states, the new policy provides that "variances 'shall only be sought' 'if necessary to comply with the U.S. Constitution or a court decision,'" without saying how that is determined and who makes that determination,[6] *id*. ¶ 51 (quoting Health Bulletin), and inmates cannot even be assessed for hormone therapy unless the treating

---

[6] It is not clear how a state agency can decide to create a "variance" that permits it to violate state law. Section 286.311 contains no exceptions. Therefore, either (1) FDC grants a variance and violates state law by providing hormone therapy as part of its state-funded medical care to people in its custody; or (2) FDC abides by Section 286.311 and never grants a variance.

physician can provide scientific literature about the effects of hormone therapy that the Health Bulletin has pre-determined does not exist. *Id.* ¶ 52.[7] *See also id.* ¶ 55 ("Under this new policy, medical treatment for inmates with gender dysphoria is determined not by their current medical needs and individual medical determinations, but rather based on a blanket policy determination that, in effect, categorically prohibits hormone therapy, regardless of medical need.").

At minimum, the allegations in the Complaint make clear that i) FDC no longer makes determinations about the provision of hormone therapy for the treatment of gender dysphoria based solely on the individual's medical needs as it used to, adding additional requirements unrelated to individual medical need, and ii) FDC contemplates that exceptions to permit hormone therapy would be

---

[7] Paragraph 52 of the Complaint says:

> In discussing the requirements for a variance, the Health Bulletin states that "[a]n inmate may be assessed for cross-sex hormone therapy" only if "the treating physician can demonstrate with documented evidence that such treatment may improve clinical outcomes by treating the etiological basis of the pathology. Such evidence must be based on sound scientific methods and research that were subject to the formal peer review process." HSB 15.05.23 § IX.C.1. This has nothing to do with the individual inmate's medical circumstances; it is a demand for certain scientific evidence. And the demand is for evidence showing that hormone therapy will treat the root cause of gender dysphoria; it is not enough to show that treatment alleviates the distress of the condition, which is the purpose of hormone therapy. Additionally, the Health Bulletin has predetermined that the evidence it demands for a variance does not exist, characterizing studies on the benefits of hormone therapy as relying on "unreliable methods." HSB 15.05.23 § IX.A.

provided only in "rare instances." Compl. ¶ 51. This is sufficient to establish an

imminent risk to Plaintiff and the proposed class of hormone therapy being

discontinued.

The Complaint goes on to allege how being stripped of hormone therapy is

causing or will imminently cause irreparable harm to Plaintiff and members of the

proposed class. Specifically, it alleges that Plaintiff and members of the proposed

class who are currently receiving hormone therapy to treat their gender dysphoria

are receiving such treatment because it was deemed medically necessary for them

by FDC medical staff. Compl. at 3. It also alleges that gender dysphoria is a serious

condition which, if left untreated, can impair one's ability to function in everyday

life, and lead to debilitating depression, substance abuse, self-harm, suicidal

ideation, and suicide, Compl. ¶¶ 21–22, and that the widely accepted standards for

treating gender dysphoria include hormone therapy. *Id.* ¶¶ 23–24. Additionally,

discussing a period when Plaintiff was denied access to such treatment and

accommodations for her gender dysphoria, the Complaint states that "[t]he harm it

caused Keohane to be without hormone therapy and access to female clothing and

grooming standards was significant and resulted in an attempted self-castration and

attempts to end her life." Compl. ¶ 37.

These allegations are more than sufficient to establish a risk of loss of

treatment establishing an actual or imminent injury in fact, a causal connection

between the injury and Defendants' challenged policy, and that the injury will be redressed by a decision enjoining the new policy.

Defendants argue that Plaintiff lacks standing to challenge the new policy with respect to hormone therapy because, they claim, "[t]he Complaint lacks any allegation that FDC stopped providing—or even intends to stop providing at some future date—hormone treatment to Plaintiff." Motion at 15. But the Complaint alleges a change in policy that prohibits hormone therapy for inmates with gender dysphoria based on a state statute prohibiting such treatment. Compl. at 2–3; *id.* ¶ 50. The establishment of a policy prohibiting treatment is sufficient to establish an imminent risk of treatment being cut off. It would cause irreparable harm if Plaintiff had to wait until care is discontinued to bring an action.

Defendants point to the provision for "variances" in the new policy and argue that "Plaintiff fails to allege any denial of a variance or even an attempt to seek the variance." Motion at 15. Even if the new policy permits inmates to request a variance (which is not apparent from the text), given the announcement on September 30 that the new policy was effective as of that date, with the imminent risk of hormone therapy being cut off at any moment, Plaintiff could not wait to

pursue a variance before commencing this action. *See* Compl. ¶¶ 51–52; *id*. at 17, n. 2.[8]

Additionally, the Complaint alleges that the policy creates an impossible standard for variances that cannot be met, particularly given the requirement that a treating physician provide peer-reviewed literature regarding hormone therapy that the Health Bulletin has predetermined does not exist. *See* Compl. ¶¶ 51–53. Requesting a variance would be a "futile gesture." *See, e.g.*, *Baughcum v. Jackson*, 92 F.4th 1024, 1035 (11th Cir. 2024) (failure to apply for a license when it would be a "futile" gesture did not deprive plaintiff of standing).

At minimum, the Complaint alleges facts showing that the policy establishes a standard that departs from the prior policy of providing hormone therapy when deemed medically necessary for an inmate and, instead, piles on additional requirements unrelated to medical need, and contemplates exceptions being "rare," putting her[9] and all class members at imminent risk of losing their care regardless of their medical need for that care.

---

[8] Additionally, the Health Bulletin provides that variances may only be granted if they are approved by the Chief of Medical Services, the Chief of Mental Health Services, and the Chief Clinical Advisor, and only after satisfying all preceding provisions in the policy, which include participation in psychotherapy for one year. Health Bulletin §§ IX(C)(1) and VII (A)(5).

[9] Contrary to Defendants' argument, Plaintiff's standing does not derive from the injuries of the class members. She herself faces the same risk of being stripped of the hormone therapy that FDC officials deemed medically necessary for her.

It would be premature to dismiss the Complaint as it relates to hormone therapy based on Defendants' assertions regarding the availability of "variances." Discovery will be necessary to obtain information about the "variance" process and whether the requirements are achievable for individuals with a medical need for such treatment and comport with constitutional standards. For example, Plaintiff will need discovery regarding how it is determined that making an exception for hormone therapy is "constitutionally required" such that a request for a variance may be made, and who makes that determination; whether any peer-reviewed research regarding the impacts of hormone therapy on the etiological basis of gender dysphoria could meet the requirements of the policy, *see* Compl. ¶¶ 51–52; and whether inmates currently receiving hormone therapy based on a determination of medical need are being granted or denied variances and on what bases.

### 3. PLAINTIFF IS NOT PRECLUDED FROM CHALLENGING THE NEW POLICY'S DENIAL OF ACCESS TO CLOTHING AND GROOMING ACCOMMODATIONS.

Defendants argue that the doctrine of issue preclusion requires dismissal of Plaintiff's Complaint with respect to clothing and grooming accommodations. They mistakenly claim that a decision from a prior case several years ago denying Plaintiff's Eighth Amendment challenge to FDC's refusal to provide her with access to female clothing and grooming standards at that time precludes her from challenging FDC's new blanket policy, which takes away access to female clothing

and grooming standards that FDC has been providing to Plaintiff and other inmates with gender dysphoria since at least 2018, regardless of her current medical need for these accommodations.

In Plaintiff's prior case (*Keohane I*), filed in 2016, she claimed that denying her access to female clothing and grooming standards to address her gender dysphoria constituted deliberate indifference to her serious medical need. The trial began in July 2017. *See Keohane v. Jones*, No. 4:16-cv-511-MW-CAS (N.D. Fla July 19, 2017), ECF 140. While the district court ruled for Plaintiff, the Eleventh Circuit reversed after concluding that the record showed Plaintiff's medical providers determined that other treatments adequately addressed her gender dysphoria and, thus, access to female clothing and grooming standards was not medically necessary. *Keohane v. Fla. Dep't of Corr.*, 952 F.3d 1257, 1264 (11th Cir. 2020); *id*. at 1274.

Defendants appear to suggest that the Eleventh Circuit ruled as a matter of law that denial of access to female clothing and grooming standards for inmates with gender dysphoria can never violate the Eighth Amendment, regardless of the inmate's medical need. *See* Motion at 19–20. It did not—despite FDC's request that it do so. ECF 4-6 at 31, 39, 40 (FDC Appellant Brief). The *Keohane I* court recognized that a blanket policy precluding treatment without "even consider[ing] whether a particular course of treatment is appropriate is the very definition of

16

'deliberate indifference,'" and went on to say that "[u]nsurprisingly to us, other courts considering similar policies erecting blanket bans on gender-dysphoria treatments—without exception for medical necessity—have held that they evince deliberate indifference to prisoners' medical needs in violation of the Eighth Amendment." *Keohane*, 952 F.3d at 1266–67. The *Keohane I* court found no Eighth Amendment violation with regard to the denial of female clothing and grooming standards for Plaintiff based on its determination that the denial of these accommodations was based on the medical judgment of her medical providers at the time, as opposed to a blanket policy that was imposed regardless of her medical needs, as well as security concerns.[10]

Plaintiff and FDC's circumstances have dramatically changed since the trial in *Keohane I*. "[C]hanges in facts essential to a judgment" are sufficient to defeat issue preclusion. *N. Georgia Elec. Membership Corp. v. City of Calhoun*, 989 F.2d 429, 436 (11th Cir. 1993) (quoting *Montana v. United States*, 440 U.S. 147, 159 (1979)). The Complaint alleges that in July 2017, FDC enacted Procedure 403.012, Compl. ¶ 43, section 5 of which—entitled "Accommodations for Inmates with a

---

[10] The Eleventh Circuit did not suggest that security concerns alone could justify the denial of these accommodations if the accommodations were found to be medically necessary for an individual. The court noted that FDC witnesses testified that allowing Plaintiff to access female clothing and grooming standards would pose a security risk, but that "if [those] requests are deemed medically necessary, they will be fulfilled," and FDC would "take additional security measures as needed." *Keohane*, 952 F.3d at 1264.

Diagnosis of Gender Dysphoria"—stated that "[t]o assist in transitioning," designated facilities will issue inmates opposite gender uniforms and undergarments, allow inmates to wear make-up inside the housing unit, allow them to grow and style their hair in accordance with the female hair standards, and provide alternate canteen menus. *Id*. ¶ 46.

The Complaint further alleges that since the adoption of Procedure 403.012, FDC has been providing Plaintiff—as well as other inmates with gender dysphoria—access to female clothing and grooming standards, *Id*. ¶¶ 41, 47, and that for Plaintiff, hormone therapy and the ability to follow female clothing and grooming standards has "alleviated the painful distress of gender dysphoria." *Id*. ¶ 42. Moreover, the Complaint alleges, it is medically necessary for Plaintiff and other members of the proposed class to continue to access clothing and grooming standards that accord with their gender identity. *Id*. ¶ 71.

As stated in the Complaint, on September 30, 2024, FDC rescinded Procedure 403.012 and replaced it with Health Bulletin. *Id.*¶ 48. The new policy does not provide any possibility for inmates with gender dysphoria to access clothing and grooming standards that accord with their gender identity. *Id.*¶ 56; *see also id.* ¶ 60. The Health Bulletin is a blanket policy that denies inmates with gender dysphoria access to these accommodations regardless of medical need.

Because *Keohane I* turned on a medical assessment of Plaintiff's medical needs more than seven years ago; she has alleged that being able to access female grooming and clothing standards the past six years has alleviated the painful distress of gender dysphoria and losing these accommodations would cause severe psychological distress and harm; and the new policy is a blanket policy that takes these accommodations away regardless of an inmate's medical need, she is not subject to issue preclusion and it would be improper to dismiss Plaintiff's complaint with respect to clothing and grooming accommodations on a motion to dismiss.

4. **PLAINTIFF'S COMPLAINT STATES AN EIGHTH AMENDMENT CLAIM.**

   *a. Clothing and grooming accommodations*

Defendants' argument that Plaintiff's claim concerning grooming and clothing accommodations fails to state a claim is without merit for the same reason their issue preclusion argument fails. They argue that "[t]he Eleventh Circuit's precedent remains clear—when presented with competing medical opinions, the FDC Officials' deference to security concerns while still providing adequate medical treatment cannot violate the Eighth Amendment, regardless of the desire of inmates for different treatment," and that the court "defers to the FDC Officials' reasonable decision to offer alternative treatment modalities." Motion at 23–24. But as discussed above, *Keohane I* turned on the court's determination that, at the

relevant time—over seven years ago—Keohane's medical providers made the medical determination that she did not have a medical need for access to female clothing and grooming standards. At the same time, the *Keohane I* court recognized that blanket policies that do not consider an inmate's medical needs are the "very definition of 'deliberate indifference.'" *Keohane*, 952 F.3d at 1266–67. The Complaint alleges that for the past six years, Keohane has received access to female clothing and grooming standards and that it has alleviated the painful distress of gender dysphoria, Compl. ¶¶ 41–42, that it is medically necessary for her and members of the proposed class to continue to have access to these medical accommodations, *id.* ¶ 71, that Defendants are aware that denying Plaintiff and members of the proposed class access to female clothing and grooming standards would cause them serious harm, *id.* ¶ 72, and that the decision to rescind these accommodations was made based on a blanket policy rather than an assessment of Plaintiff and the proposed class members' medical needs, *id.* ¶ 74. Plaintiff has stated a claim for a violation of the Eighth Amendment with respect to the blanket denial of access to clothing and grooming accommodations.

*b. Hormone therapy*

Defendants' argument that Plaintiff's claim concerning hormone therapy fails to state a claim is without merit for the same reason their standing argument regarding this treatment fails. Their argument turns on characterizing the new

policy as one that provides for individualized assessments of each inmate's medical needs, allowing for hormone therapy when deemed medically necessary for an inmate. They skip past the fact that the policy provides that hormone therapy is prohibited under state statute and that the FDC will comply with that prohibition unless the Constitution or a court decision requires otherwise. *See* Compl. ¶¶ 50–51. And as discussed above, the Complaint alleges that the policy's provision for "variances" to permit hormone therapy establishes an impossible standard, and, at minimum, a standard that imposes requirements beyond medical need and one that contemplates exceptions to permit treatment only in "rare instances." Compl. ¶¶ 51–52. This puts Plaintiff and members of the proposed class at risk of losing care for which they have a medical need, *id*. ¶ 71, and Defendants are aware that denying Plaintiff and members of the class access to this care would cause them serious harm, *id*. ¶ 72.

These facts state a claim for deliberate indifference to a serious medical need. Plaintiff's well-pleaded allegations must be accepted as true for purposes of a motion to dismiss.

### 5. PLAINTIFF ADEQUATELY ALLEGES FACTS TO SUPPORT CLASS ALLEGATIONS.

Defendants argue that Plaintiff lacks standing to serve as a class representative with respect to challenging the hormone policy. They also argue that

she fails to plead all of the factors necessary to certify a class. Both arguments are without merit.

### a. Plaintiff Has Standing to Serve as the Class Representative.

As discussed above, Plaintiff has standing, *supra*, Section II; she therefore has standing to serve as a class representative. The Complaint alleges that FDC's new policy says that state law prohibits state funds to be used for hormone therapy and that it will comply with that prohibition unless the Constitution or a court decision requires otherwise. The Complaint further alleges that the policy's provision for "variances" creates an impossible standard and, at minimum, a standard that turns on requirements beyond medical necessity and contemplates exceptions being made only in "rare instances." *See* Compl. ¶¶ 51–53.

### b. Plaintiff has adequately pleaded the requirements for class certification.

Under Rule 23(a) a Plaintiff serving as a representative for a proposed class seeking relief must meet four factors: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). A class action is appropriate when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole[.]" *Id.* at 23(b)(2). Plaintiff sufficiently satisfies these requirements.[11]

### i. Commonality and Typicality

Under the commonality prong, plaintiffs seeking class certification must establish that their claims "depend upon a common contention" that "is capable of classwide resolution." *Wal-Mart Stores, Inc. v Dukes*, 564 U.S. 338, 350 (2011); *see also Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). For typicality, a court must determine whether the class representative's interest is aligned with the proposed class members. *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1275 (11th Cir. 2009). "The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S 147, 157 n.13 (1982).

The proposed class is defined as "all incarcerated persons in custody of the FDC who: i) are or will be diagnosed by FDC medical or mental health personnel with gender dysphoria, and ii) are currently being provided—or, absent the new policy announced on September 30, 2024—would be considered for hormone therapy and/or access to clothing and grooming standards that accord with their gender identity." Compl. ¶ 7. Plaintiff—a transgender woman diagnosed with gender dysphoria in FDC custody and having been provided hormone therapy and

---

[11] Defendants do not contest in their Motion to Dismiss that Plaintiff meets the numerosity requirement needed for class certification. Therefore, this factor need not be addressed here.

access to female clothing and grooming standards by FDC—shares common

contentions with members of the proposed class that are "capable of classwide

resolution." *See e.g.*, *Wal-Mart*, 564 U.S. at 350; *Murray*, 244 F.3d at 811. Most

relevant for this court, these commonalities stem from a serious medical condition

that they share and corresponding medical necessity for some or all of the medical

treatment and accommodations that are threatened by the rescission of Procedure

403.012 and the enactment of the Health Bulletin, as well as Section 286.311,

which collectively establish i) a blanket ban on access to clothing and grooming

accommodations for inmates with gender dysphoria regardless of medical need,

and ii) a blanket ban on hormone therapy with a provision for purported exceptions

that imposes a standard that is impossible to meet, or, at minimum, imposes

requirements beyond medical necessity and contemplates exceptions being granted

only in "rare instances." A ruling invalidating the change in policy would remove

this blanket policy that creates a barrier to treatment and accommodations for those

who have a medical need for them. That inmates with gender dysphoria do not all

have the same treatment and accommodation needs does not change the fact that

all members of the proposed class are harmed by the blanket policy and they would

all benefit from the blanket policy being enjoined so that they can be treated in

accordance with their medical needs.

24

Plaintiff's claims are typical of the class, and there are questions of law or fact common to the class. Common questions of law include whether the Health Bulletin and Section 286.311 violate the Eighth Amendment. A common question of fact is how the Health Bulletin will be implemented. Defendants say that their policy is one that provides for individual evaluations for inmates diagnosed with gender dysphoria and individualized treatment plans. *See* Motion at 29–30. That there is a degree of individualized treatment does not defeat commonality when certain treatments are banned.[12] The Complaint cites the policy, which prohibits state funds for hormone therapy pursuant to Florida statute unless the Constitution or court decision requires it, and alleges that the provision for "variances" imposes a standard that is unattainable and, at minimum, one that leaves inmates at risk of being denied hormone therapy despite being deemed to have a medical need for such treatment.[13]

---

[12] Similarly, a class of inmates with diabetes challenging a ban on insulin would have a common contention capable of classwide resolution, even if the FDC offered them individualized treatment with diet and exercise. The ban would deny all class members a key treatment option, and one that is medically necessary for some class members.

[13] Defendants allege class members are unable to establish commonality with regards to denial of access to female and clothing grooming standards because of "individualized disciplinary process[es]" for those who fail to comply with FDC standards. *See* Motion at 30. Disciplinary processes are not at issue here, but rather the appropriate treatment for individuals diagnosed with gender dysphoria and the actual and imminent harm from the removal of access to clothing and grooming standards in accordance with inmates' gender identity.

Plaintiff and all proposed class members seek the same relief: an injunction preventing enforcement of the Health Bulletin and Section 286.311 to the extent they prohibit medically necessary care. An injunction serves the shared interests and would resolve the common contentions among all proposed class members.

### ii.  Adequacy

 "[A]dequacy of representation analysis encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (internal quotation marks omitted). Plaintiff has common interests with the unnamed proposed class members and will continue to "vigorously prosecute the interests of the class through qualified counsel." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).

Plaintiff's interests are aligned with the interests of other proposed class members to enjoin the Health Bulletin—they all seek the removal of a blanket policy that puts them at risk of being denied medical treatment and accommodations for which they have a medical need. Plaintiff has no conflicting interests with the class members because they are all suffering from similar actual or imminent harm due to Defendants' policy.

Defendants' only argument against Plaintiff's adequacy as a class representative is that she lacks standing, but as discussed above, Plaintiff has standing. Plaintiff is an adequate class representative under the Federal Rules of Civil Procedure.

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

Dated: November 19, 2024

<u>/s/ Samantha J. Past</u>
Samantha J. Past (Florida Bar No. 1054519)
Daniel B. Tilley (Florida Bar No. 102882)
**American Civil Liberties Union Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl (Admitted in Washington only)
Leslie Cooper
**American Civil Liberties Union Foundation**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org

*Counsel for Plaintiff*

## **Certificate of Compliance**

I certify that the foregoing, other than those portions excluded by Local Rule

7.1(F), contains 6,331 words.