IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| **REIYN KEOHANE,** | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) Case No. 4:24-cv-00434-AW-MAF |
| | ) |
| **RICKY D. DIXON,** *et al.*, | ) |
| | ) |
| *Defendants.* | ) |

### SECOND DECLARATION OF DR. DANNY MARTINEZ, MD, MPH

I, Danny Martinez, M.D., pursuant to 28 U.S.C. § 1746, hereby makes the following Declaration under penalty of perjury, declare that the statements made below are true, and state as follows:

1. I am over the age of eighteen (18) years and make this Second Declaration based on personal knowledge.

2. I currently serve as the Chief of Medical Services for the Florida Department of Corrections ("FDC" or the "Department"). In my role as Chief of Medical Services, I bear responsibility for overseeing the medical treatment provided to all inmates in FDC custody, including those inmates diagnosed with gender dysphoria and other similar conditions.

3. I reviewed the declarations of inmates Matthew Ward (Doc. 46-10, the "Ward Declaration") and George Mendoza (Doc. 46-11, the "Mendoza

Declaration") filed on November 26, 2024, in the above styled case. Additionally, I reviewed the medical records of Ward and Mendoza to prepare and submit this declaration in response to the two (2) declarations.

**WARD DECLARATION**

4. A review of Ward's medical records confirm Ward received a diagnosis of Gender Dysphoria in 2019 and began receiving cross-sex hormones in June 2019. Further, in accordance with discontinued Procedure 403.012, Ward received access to female grooming standards, alternate canteen list, and female undergarments.

5. Procedure 403.012, Identification and Management of Inmates Diagnosed with Gender Dysphoria ("Procedure 403.012") set out treatment for Gender Dysphoria in section (3) to include "clinical group therapy once weekly, psychoeducational group interventions twice weekly, and individual psychotherapy at least every 30 days." (Doc. 38-1, p. 16-17).

6. Additionally, separate from treatment for Gender Dysphoria, Procedure 403.012 included accommodations in section (5) that may "assist in transitioning" to include alternate canteen items, access to wear make-up inside the housing unit, female hair standards, and female undergarments. (Id., p. 19). Procedure 403.012 did not describe accommodations as treatment or medically necessary items.

7. Health Service Bulletin 15.05.23 ("HSB 15.05.23"), implemented on September 30, 2024, replaced Procedure 403.012 as FDC's guidelines for screening,

2

evaluating, and treating inmates diagnosed with Gender Dysphoria. (Doc. 38-1, p. 69-76). As discussed in my first declaration (Doc. 38-1), HSB 15.05.23 establishes guidelines for the treatment for inmates diagnosed with Gender Dysphoria. Such treatment includes identification and treatment of medical and psychiatric comorbidities through "psychotherapy, psychotropic medication, or other appropriate medically accepted intervention." (Doc. 38-1, p. 72-73).

8. Further, HSB 15.05.23 prioritizes psychotherapy, psychoeducational group interventions and treatment interventions focusing on "managing the psychological distress/dysphoria, assisting with adjustment to incarceration, community re-entry, and strengthening resilience." (Id., p. 73). As previously stated, HSB 15.05.23 provides access to cross-sex hormones for inmates approved by a variance team. (Id., p. 9). HSB 15.05.23 remains silent on social transitioning items and does not identify these items as treatment for Gender Dysphoria.

9. Ward received a medical prescription for cross-sex hormones in 2019 and began receiving cross-sex hormones in 2019. As of the date of this declaration, Ward continues to receive cross-sex hormones, and has not been evaluated by the Multidisciplinary Services Team ("MDST"). As such, no recommendation regarding the continuation of hormones has been submitted for a review as required under Section IX.C. of HSB 15.05.23. FDC originally anticipated the MDST evaluations for inmates receiving hormones to be completed within six (6) months

of implementing HSB 15.05.23, however, it appears that the completion will take longer. The current completion date is not known.

10. Additionally, Ward received access to female hair standards, alternate canteen items, female under garments under Procedure 403.012. In accordance with Procedure 403.012, Ward's access to these standards and items was to assist in transitioning, not as treatment for Gender Dysphoria. Ward does not claim access to the female grooming standards and alternate canteen items are medically necessary, but does assert, "I also wore a bra, female undergarments, hair accessories and make-up every day." (Ward Declaration, Doc. 46-10, p. 2). Further, Ward stated the "loss of my hair, along with female undergarments and makeup, has been earth-shattering for me." A review of Ward's canteen purchases appears to contradict these statements. A review of Ward's "Inmate Order History Report" for purchases from November 2022 to December 2, 2024, shows Ward failed to purchase any itmes for the alternate canteen list, including make-up or hair accessories, for at least the past two (2) years. A true and correct copy of Ward's Inmate Order History Report is attached hereto as **Exhibit A**.

11. A review of Ward's medical records confirms that no treatment plan provides that Ward's access to female grooming standards and alternate canteen items resulted from a medical or mental health prescription of such items as treatment for Gender Dysphoria.

12. FDC continues to focus on providing adequate medical and mental health services to inmates with Gender Dysphoria. FDC's treatment for Gender Dysphoria continues to shift to follow the scientific research that shows a shift from definitive gender-affirming care to a more watchful approach that addresses psychiatric comorbidities and psychotherapy. See HSB 15.05.23, p. 3, n. 4. (Doc. 38-1, p. 71).

**MENDOZA DECLARATION**

13. From a review Mendoza's medical records, Mendoza received access to female grooming standards and alternate canteen items under Procedure 403.012 beginning in 2021. Further, the Gender Dysphoria Review Team approved a prescription for Mendoza to receive cross-sex hormones in 2021.

14. Also, like Ward, no treatment plan in Mendoza's medical records prescribed grooming standards and alternate canteen items as treatment for Gender Dysphoria, as grooming standards and alternate canteen items were not considered treatment for Gender Dysphoria under Procedure 403.012.

15. Similar to Ward, Mendoza claimed to "love wearing make-up." (Mendoza Declaration, Doc. 46-11, p. 2). However, a review of Mendoza's Inmate Order History Report tells a different story. A true and correct copy of Mendoza's Inmate Order History Report is attached hereto as **Exhibit B**. From November 2022 to December 2, 2024, Mendoza purchased from the alternate canteen list only on

November 6, 2023, to purchase make-up. (Exhibit B, p. 17). Other than November 6, 2023, Mendoza made no other purchases from the alternate canteen list, but Mendoza did purchase men's clothing, including men's boxers, as recently as July 18, 2024. (Exhibit B, p. 3).

16. As for hormones, a review of Mendoza's medical records confirms Mendoza continues to receive cross-sex hormones. Further, the MDST has not evaluated Mendoza under HSB 15.05.23, and no recommendation has been provided to the variance team for review. Mendoza will continue receiving cross-sex hormones pending an evaluation by the MDST.

17. Lastly, Plaintiff's, as well as Mendoza's and Ward's, primary focus remains access to cross-sex hormones. Plaintiff claims HSB 15.05.23 creates a "barrier to treatment." (Doc. 46, p. 3). Section IX.B states, "State law prohibits the Department from expending any state funds to purchase cross-sex hormones for the treatment of Gender Dysphoria," and it cites to Section 286.311, Florida Statutes. (Doc. 38-1, p. 75). This law went into effect in 2023. Even with this law in effect, Plaintiff, Ward, and Mendoza all stated under oath that they continued to receive cross-sex hormones. Further, a review of the medical records for all three (3) inmates confirms that all three (3) inmates received, and continue to receive, cross-sex hormones, even after the law went into effect. Section 286.311 concerns the expenditure of State funds, not the distribution of cross-sex hormones. It is improper

to attack HSB 15.05.23 as a "barrier to treatment" as no inmate has been discontinued cross-sex hormones under the HSB.

    I declare under penalty of perjury that the foregoing is true and correct. I understand that a false statement in this Declaration will subject me to penalties for perjury.

Date: <u>December 5, 2024</u>

                                             _____
                                             Danny Martinez, MD, MPH