# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | | |
|---|---|---|
| **REIYN KEOHANE,** | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:24-cv-00434-AW-MAF** |
| | ) | |
| **RICKY D. DIXON,** *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |

# THE FDC OFFICIALS' MEMORANDUM
# OF LAW IN OPPOSITION TO NAMED
# PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

## TABLE OF CONTENTS

Table of Authorities ....................................................................................... ii

Introduction .................................................................................................... 1

Background and Procedural History ............................................................... 3

Legal Standards .............................................................................................. 9

    I.     Class Certification ............................................................................. 9

    II.    Injunctive Relief ............................................................................. 11

Argument ..................................................................................................... 12

    I.     The Court Should Deny Class Certification of Named Plaintiffs'
         Hormone Claim. ............................................................................. 12

         A.    Named Plaintiffs Lack Standing to Pursue Claims
               Regarding Hormone Treatment. ............................................. 12

         B.    Named Plaintiffs Cannot Establish Numerosity Regarding
               Their Hormone Treatment Claim. ........................................... 16

         C.    Named Plaintiffs Cannot Establish Commonality
               Regarding Their Hormone Treatment Claim. .......................... 20

         D.    Named Plaintiffs Cannot Establish Typicality Regarding
               Their Hormone Treatment Claim. ........................................... 24

         E.    Named Plaintiffs Cannot Establish Adequacy Regarding
               Their Hormone Treatment Claim. ........................................... 25

         F.    Named Plaintiffs Cannot Satisfy Rule 23(b) Regarding
               Their Hormone Treatment Claim. ........................................... 26

    II.    The Court Should Deny Class Certification of Named Plaintiffs'
         Social-Transitioning Claim. ............................................................ 28

Conclusion ................................................................................................... 32

Certificate of Compliance With Word Limit ................................................ 34

Certificate of Service .................................................................................... 35

TABLE OF AUTHORITIES

Page(s)

## CASES

Baxley v. Jividen,
    338 F.R.D. 80 (S.D. W. Va. 2020) ...................................................... 22

Brown v. Electrolux Home Prods., Inc.,
    817 F.3d 1225 (11th Cir. 2016) .................................................... 9, 10

Burton v. City of Belle Glade,
    178 F.3d 1175 (11th Cir. 1999) ................................................... 11, 28

Califano v. Yamasaki,
    442 U.S. 682 (1979) ......................................................................... 9

Church v. City of Huntsville,
    30 F.3d 1332 (11th Cir. 1994) ......................................................... 11

City of Los Angeles v. Lyons,
    461 U.S. 95 (1983) ......................................................................... 11

Comcast Corp. v. Behrend,
    569 U.S. 27 (2013) ........................................................................... 9

Cox v. Am. Cast Iron Pipe Co.,
    784 F.2d 1546 (11th Cir. 1986) ....................................................... 16

Dockery v. Hall,
    No. 3:13-cv-326-WHB-JCG, 2018 WL 11424799 (S.D. Miss. Feb. 14,
    2018) ............................................................................................ 22

Epstein Family P'ship v. Kmart Corp.,
    13 F.3d 762 (3d Cir. 1994) .............................................................. 28

Farmer v. Brennan,
    511 U.S. 825 (1994) ....................................................................... 11

Gen. Tel. Co. of Southwest v. Falcon,
    457 U.S. 147 (1982) ................................................................. passim

Griffin v. Dugger,
    823 F.2d 1476 (11th Cir. 1987) .................................................. 12, 13

Harris v. Thigpen,
    941 F.2d 1495 (11th Cir. 1991) ............................................. 5, 29, 31

Hughey v. JMS Development Corp.,
   78 F.3d 1523 (11th Cir. 1996) .......................................................................... 28

J.B. ex rel. Hart v. Valdez,
   186 F.3d 1280 (10th Cir. 1999) ................................................................... 21, 22

JW by & through Tammy Williams v. Birmingham Bd. of Educ.,
   904 F.3d 1248 (11th Cir. 2018) ........................................................................ 13

Keohane v. Fla. Dep't of Corrs. Sec'y,
   952 F.3d 1257, 1274 (11th Cir. 2020) ......................................................... 30, 31

Lippert v. Baldwin,
   No. 10 C 4603, 2017 WL 1545672 (N.D. Ill. Apr. 28, 2017) ............................ 22

M.D. ex rel. Stukenberg v. Perry,
   675 F.3d 832 (5th Cir. 2012) ............................................................................ 21

Parsons v. Ryan,
   754 F.3d 657 (9th Cir. 2014) ..................................................................... passim

Piazza v. Ebsco Indus., Inc.,
   273 F.3d 1341 (11th Cir. 2001) ........................................................................ 24

Prado-Steiman v. Bush,
   221 F.3d 1266 (11th Cir. 2000) ........................................................................ 25

Scott v. Clarke,
   61 F. Supp. 3d 569 (W.D. Va. 2014) ................................................................ 22

Simmons v. Blodgett,
   110 F.3d 39 (9th Cir. 1997) .............................................................................. 10

Valley Drug Co. v. Geneva Pharms., Inc.,
   350 F.3d 1181 (11th Cir. 2003) ........................................................................ 26

Wal-Mart Stores, Inc. v. Dukes,
   564 U.S. 338 (2011) ................................................................................... passim

**STATUTES**

42 U.S.C. § 1983 ....................................................................................................... 3

**RULES**

Fed. R. Civ. P. 23 ............................................................................................... passim

Fed. R. Civ. P. 65(d) ....................................................................................... 11, 28

N.D. Fla. Loc. R. 7.1(F) ........................................................................................... 34

Defendants Ricky D. Dixon ("Secretary Dixon"), in his official capacity as Secretary of the Florida Department of Corrections ("FDC"); Clayton Weiss , in his official capacity as Health Services Director of the Florida Department of Corrections ("Weiss"); Gary Hewett, in his official capacity as Warden of Wakulla Correctional Institution ("Hewett"); Nan Jeffcoat, in her official capacity as Warden of Florida Women's Reception Center ("Jeffcoat"); and Alonzo Horner, in his official capacity as Warden of Homestead Correctional Institution ("Horner," and, together with Secretary Dixon, Weiss, Hewett, and Jeffcoat, the "FDC Officials"), submit this Opposition to Named Plaintiffs' Motion for Class Certification (doc. 78) filed by Plaintiffs Reiyn Keohane ("Keohane"), Sasha/George Mendoza ("Mendoza"), Sheila Diamond/Kelvin Coleman ("Diamond/Coleman"), Karter/Candace Jackson ("Jackson"), and Nelson/Natasha Boothe ("Boothe," and, together with Keohane, Mendoza, Diamond/Coleman, and Jackson, "Named Plaintiffs").

## INTRODUCTION

Named Plaintiffs seek to "certify a class of all current and future incarcerated persons in custody of the FDC who (i) have gender dysphoria and (ii) absent HSB 15.05.23, would be provided hormone therapy and/or clothing and grooming accommodations to treat their gender dysphoria if deemed medically necessary for them." (Doc. 78 at 37). However, at the class certification stage, Named Plaintiffs

must do more than merely allege a violation of their rights. Even under the precedents cited by Named Plaintiffs, they must "provide sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm." Parsons v. Ryan, 754 F.3d 657, 684 (9th Cir. 2014). Named Plaintiffs cannot do so. With respect to hormone treatment, Named Plaintiffs fail to explain how a policy that, on its face, requires compliance with the Constitution could violate their constitutional rights. With respect to social transitioning, Named Plaintiffs likewise possess no evidence of a violation of their rights or the rights of other putative class members; to the contrary, reasonable medical providers disagree about the medical necessity of social transitioning for inmates with gender dysphoria. The Court should deny Named Plaintiffs' Motion for Class Certification for at least the following four reasons:

(1)    Named Plaintiffs lack standing to pursue claims regarding hormone treatment;

(2)    Named Plaintiffs cannot satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, or adequacy with respect to their claim regarding hormone treatment;

(3)    Named Plaintiffs cannot satisfy the requirements of Rule 23(b)(2) with respect to their claim regarding hormone treatment; and

(4)    Named Plaintiffs cannot satisfy Rule 23(a)(2)'s requirement of commonality with respect to their claim regarding social transitioning.

2

Accordingly, the Court should decline to certify a class on Named Plaintiffs'
hormone claim and on Named Plaintiffs' social-transitioning claim.

### BACKGROUND AND PROCEDURAL HISTORY

Named Plaintiff Keohane filed the initial Complaint on October 25, 2024.
(Doc. 1). Keohane's Complaint asserted a single claim under 42 U.S.C. § 1983
("section 1983") against Secretary Dixon, Weiss, and Hewett in their official
capacities for denial of medical treatment in violation of the Eighth Amendment.
(Id., ¶¶ 17-19). Keohane purported to assert this claim on behalf of a class of "all
incarcerated persons in custody of the FDC who i) are or will be diagnosed by FDC
medical or mental health personnel with gender dysphoria, and ii) are currently
being provided—or, absent the new policy announced on September 30, 2024—
would be considered for hormone therapy and/or access to clothing and grooming
standards that accord with their gender identity." (Id., ¶ 7). The initial Complaint
alleged that HSB 15.05.23 amounted to "a blanket policy prohibiting treatment"
and alleged that putative class members "will not receive hormone therapy and/or
clothing and grooming accommodations for gender dysphoria, even if they are
diagnosed with this serous medical condition by FDC medical and mental health
staff and deemed by FDC medical and mental health staff to have a medical need
for such treatment and/or accommodations." (Id., ¶ 11). According to the initial
Complaint, "all members of the class will be subject to a common harm: the denial

of medical treatment and/or accommodations for their diagnosed gender dysphoria, regardless of their medical need for such treatment or accommodations." (Id., ¶ 12). Keohane sought, on behalf of the putative class, "an injunction preventing enforcement of this blanket ban on medical treatment and grooming and clothing accommodations for individuals with gender dysphoria in FDC custody." (Id.).

Keohane filed a Motion for Preliminary Injunction with the initial Complaint. (Doc. 4).   The Court denied Keohane's Motion for Preliminary Injunction on December 27, 2024.  (Doc. 55).  In addressing Keohane's Motion for Preliminary Injunction, the Court acknowledged that, while Keohane asserted a single claim for denial of medical care, the claim included "two components:" one regarding "hormone treatment" and the other regarding "social accommodations" such as "permission to wear long hair, makeup, and women's undergarments." (Doc. 55 at 6).  The Court acknowledged that these "two components differ in some ways." (Id.).   Accordingly, the Court "address[ed] the hormone-treatment and social-accommodations aspects of the claim separately."  (Id.).

In connection with the Motion for Preliminary Injunction, Keohane argued that HSB 15.05.23 amounted to "a 'blanket ban' on hormone treatment."  (Id. at 7). Based on the evidence presented in connection with the Motion for Preliminary Injunction, the Court concluded "that the record shows the new policy is *not* a blanket ban."  (Id. at 7).  Instead:

> The evidence, including hearing testimony, demonstrated that the Department will individually evaluate every inmate who was receiving hormone treatment. Based on that evaluation, the Department will determine if continued hormone treatment is medically necessary. If the Department concludes it *is* medically necessary, the hormone treatment will continue.

(Id. at 7-8). The Court further noted that HSB 15.05.23's limitation of "hormone treatment to instances when it is 'necessary to comply with the U.S. Constitution or a court decision' . . . is no obstacle to constitutionally required care." (Id. at 9; Doc. 57 (Transcript of December 9, 2024, Hearing ("Hrg. Tr.")) at 88:17-19 (Dr. Martinez testifying, as to hormone treatment, "If it is deemed medically necessary by the multi-discipline specialist team, services team, if it's deemed medically necessary, the variance will be given.")). Instead, the Court concluded that, "to the extent the Department provides what is medically necessary, it has provided what is constitutionally required," and, "[i]ndeed, even medical care falling below what is medically necessary does not necessarily violate the Eighth Amendment." (Doc. 55 at 9 (citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). The Court therefore concluded that "Keohane has not shown there is a blanket ban on hormone treatment;" "has not shown a likelihood of establishing standing as to any claim about hormone treatment;" and, "even putting standing aside," Keohane failed to show a "likelihood of success on the merits for the simple reason that the claim

5

depends on showing a blanket ban, and there has been no showing of a blanket ban as to hormone treatment." (Doc. 55 at 14).

The Court also found that Keohane failed to establish a likelihood of success on the merits on the social-accommodations claim, because "Keohane presented no evidence showing that denying requested social accommodations is tantamount to providing care so deficient that it constitutes an Eighth Amendment violation." (Doc. 55 at 17). The Court therefore declined to grant Keohane a preliminary injunction. (Id. at 23).

On March 13, 2025, Named Plaintiffs filed an Amended Complaint. (Doc. 66). The Amended Complaint added Mendoza, Diamond/Coleman, Jackson, and Boothe as Named Plaintiffs and added Horner and Jeffcoat in their official capacities as defendants. (Id. at 1). The Amended Complaint alleged that Keohane "has been receiving hormone therapy from FDC . . . since 2016," and "had been provided clothing and grooming accommodations by FDC from at least 2018 until December 30, 2025." (Doc. 66, ¶ 4). According to the Amended Complaint, Mendoza is a transgender woman who "was diagnosed with gender dysphoria in July 2020 by FDC healthcare personnel and approved for clothing and grooming accommodations" and "began hormone therapy for gender dysphoria in 2022 under the recommendation and care of FDC healthcare personnel." (Id., ¶ 5). The Amended Complaint alleges that Diamond/Coleman is a transgender woman who

"was diagnosed with gender dysphoria and recommended clothing and grooming accommodations as well as hormone therapy by FDC healthcare personnel on January 23, 2024." (Id., ¶ 6). According to the Amended Complaint, Diamond/Coleman "was informed that these recommendations had to be approved by a Tallahassee-based Gender Dysphoria Review Team ('GDRT')," but "the GDRT stopped meeting," and Diamond/Coleman "has not received hormone therapy or clothing and grooming accommodations." (Id.). The Amended Complaint alleges that Jackson is a transgender man who "was diagnosed with gender dysphoria and approved for clothing and grooming accommodations and hormone therapy by FDC healthcare personnel in 2022" and has been receiving hormone therapy from FDC since January 2023. (Id., ¶ 7). Finally, according to the Amended Complaint, Boothe is a transgender man who "was diagnosed with gender dysphoria in 2015" and "has been receiving hormone therapy since 2015," including receiving hormone therapy from FDC upon Boothe's incarceration in September 2024. (Id., ¶ 8).[1]

As to hormone treatment, the Amended Complaint abandoned Keohane's previous theory that HSB 15.05.23 operated as a "blanket ban." Instead, the

---

[1] Jackson and Boothe both allege that they previously received testosterone injections but now receive testosterone gel, which they claim is less effective than injections. (Id., ¶¶ 7, 8). However, the Amended Complaint does not assert a claim relating to the testosterone gel versus injections.

Amended Complaint alleges that Plaintiffs and putative class members face "the risk of hormone therapy being withdrawn or denied despite their medical need for such treatment because the requirements for a 'variance' to authorize hormone therapy include significant barriers unrelated to medical need."  (Id., ¶ 14). According to Named Plaintiffs, HSB 15.05.23 "has predetermined that the evidence it demands for a 'variance' does not exist," rendering HSB 15.05.23's variance standard "an impossible standard to meet.  (Id., ¶ 39).

The Amended Complaint continues to allege that "[i]t is medically necessary for Plaintiffs and members of the proposed class to receive . . . access to clothing and grooming standards that accord with their gender identity."  (Doc. 66, ¶ 128). Along with their Motion for Class Certification, Named Plaintiffs submitted a declaration from Dr. Dan Karasic ("Dr. Karasic") opining that "social transition and gender-affirming medical care, including hormone therapy, can significantly relieve the distress of gender dysphoria and are medically necessary for many people with this condition."  (Doc. 78-1, ¶ 26).  Contemporaneously with this opposition brief, the FDC Officials submit a declaration from Dr. Kristopher Kaliebe ("Dr. Kaliebe") opining that social transitioning is not medically necessary to treat gender dysphoria.  Thus, the record continues to reflect disagreement among medical professionals as to the medical necessity of social transitioning.

8

Since the filing of the Amended Complaint, FDC and its contracted medical provider continued to conduct re-evaluations of inmates previously diagnosed with gender dysphoria for whom FDC and its contractor provide hormone treatment. (Declaration of Dr. Danny Martinez, attached hereto as **Exhibit A**, at 2, ¶ 3 (hereinafter "Martinez Decl.")). Thus far, FDC and its contractor completed the entire reevaluation process with respect to eleven inmates (including Keohane), and all eleven inmates received variances to continue hormone treatment. (Id., ¶ 5). In addition, 120 inmates who are currently receiving hormone treatment are pending review by their Multidisciplinary Services Teams ("MDST"), and ninety-eight inmates not currently receiving hormones are pending before their MDSTs for review of cross-sex hormone treatment. (Id. at 3, ¶ 7). Thus, the evidence demonstrates that FDC grants variances to permit inmates with gender dysphoria to continue hormone treatment where medically necessary, and continues to conduct individualized reviews of all inmates seeking treatment for gender dysphoria.

LEGAL STANDARDS

## I.  CLASS CERTIFICATION

A "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)); see also Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1233 (11th

Cir. 2016) ("All else being equal, the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation.").  "A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." <u>Wal-Mart Stores, Inc. v. Dukes</u>, 564 U.S. 338, 350 (2011).  "Rule 23 does not set forth a mere pleading standard." <u>Id.</u>  Instead, "'sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,'" and "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'"  <u>Id.</u> (quoting <u>Gen. Tel. Co. of Southwest v. Falcon</u>, 457 U.S. 147, 160, 161 (1982)). "[I]f a question of law or fact *is* relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's factor." <u>Brown</u>, 817 F.3d at 1234.  Thus, the Court's "rigorous analysis" frequently "entail[s] some overlap with the merits of the plaintiff's underlying claim." <u>Dukes</u>, 564 U.S. at 351.  Moreover, the "burden of proof" rests with "[t]he party *seeking* class certification," "[a]nd the entire point of a burden of proof is that, if doubts remain about whether the standard is satisfied, 'the party with the burden of proof loses.'"  <u>Brown</u>, 817 F.3d at 1233 (quoting <u>Simmons v. Blodgett</u>, 110 F.3d 39, 42

(9th Cir. 1997)).  Named Plaintiffs' class claims cannot survive a "rigorous analysis," and the Court should deny class certification.

## II.   INJUNCTIVE RELIEF

Named Plaintiffs seek only injunctive relief.  (Doc. 66 at 36-37).  "Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."  Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (citing City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983)).  In the prison context, "[a]n inmate seeking an injunction" for an alleged constitutional violation:

> must adequately plead such a violation; to survive summary judgment, he must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed and are at the time of summary judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm, and that they will continue to do so; and finally to establish eligibility for an injunction, the inmate must demonstrate the continuance of that disregard during the remainder of the litigation and into the future.

Farmer v. Brennan, 511 U.S. 825, 845-46 (1994).  Moreover, an injunction that "do[es] no more than instruct the [defendant] to 'obey the law' . . . would not satisfy the specificity requirements of Rule 65(d) and . . . would be incapable of enforcement."  Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999).  Named Plaintiffs cannot satisfy the standards for injunctive relief.

**ARGUMENT**

**I.    THE COURT SHOULD DENY CLASS CERTIFICATION OF NAMED PLAINTIFFS' HORMONE CLAIM.**

> **A.    NAMED PLAINTIFFS LACK STANDING TO PURSUE CLAIMS REGARDING HORMONE TREATMENT.**

Rule 23(a) permits "[o]ne or more members of a class" to "sue or be sued as representative parties on behalf of all members." By definition, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160, 156 (1982). Accordingly, "any analysis of class certification must begin with the issue of standing." Griffin v. Dugger, 823 F.2d 1476, 1482 (11th Cir. 1987). FDC currently provides Named Plaintiffs Keohane, Mendoza, Jackson, and Boothe with hormone therapy to treat their gender dysphoria. (Martinez Decl. at 2, 3, ¶¶ 5, 8). They therefore lack standing to pursue claims regarding hormone treatment, and they may not serve as class representatives on any such claim.

"A named plaintiff in a class action who cannot establish the requisite case or controversy between himself and the defendants simply cannot seek relief for anyone – not for himself, and not for any other member of the class." Griffin, 823 F.2d at 1483. "Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others." Id. In addition, "each claim must be analyzed separately, and a claim

12

cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." Id. (holding that named plaintiff possessed standing to assert claims related to employee discipline and promotion because those policies allegedly impacted him but lacked standing to assert claims regarding written examination because "he suffered no injury as a result of the [defendant's] use of the written entry-level examination"); Falcon, 457 U.S. at 158-59 (holding that named plaintiff's claims of failure to promote did not "fairly encompass[]" alleged class claims for failure to hire); JW by & through Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1273 (11th Cir. 2018) (reversing district court's order providing equitable relief where named plaintiff lacked standing).  Named Plaintiffs Keohane, Mendoza, Jackson, and Boothe cannot meet these well-established standards with respect to their claim regarding hormone treatment.

At the motion to dismiss stage, the Court concluded that Keohane "alleged enough to show the imminent cessation of hormone treatment" because Keohane "alleged there was a significant policy shift, that the Department's new written policy cites a Florida law explicitly prohibiting use of state funds for cross-sex hormones, that the new policy's default is to disallow hormone treatment with only limited exceptions, and that a prison health official told rounded-up inmates that changes in gender-dysphoria treatment were coming, 'up to and including hormone

therapy.'" (Doc. 58 at 2-3 (quoting Doc. 1, ¶¶ 50-52, 58-60)). However, at the

class certification stage, the Court must "'probe behind the pleadings.'" <u>Dukes</u>, 564

U.S. at 350 (quoting <u>Falcon</u>, 457 U.S. at 160). Here, the evidence establishes that

FDC granted Keohane a variance and continues to provide hormone treatment to

Keohane. (Martinez Decl. at 2, ¶ 4). Keohane therefore undisputably faces no "risk

of having hormone therapy withdrawn or denied." (Doc. 66, ¶ 131; <u>see</u> Doc. 55 at

14 (concluding, at preliminary injunction stage, that Keohane "has not shown a

likelihood of establishing standing as to any claim about hormone treatment").

Accordingly, Keohane lacks standing to pursue a claim regarding hormone therapy,

either individually or on behalf of a class.

　　The evidence also demonstrates that Mendoza, Jackson, and Boothe continue

to receive hormone treatment pending their reevaluation under HSB 15.05.23.

(Martinez Decl. at 3, ¶ 8). Moreover, of eleven inmates who received reevaluations

under HSB 15.05.23, all eleven received variances based on medical providers'

conclusions that hormone treatment remained medically necessary for those

inmates. (<u>Id.</u> at 2, ¶ 5). Thus, the evidence demonstrates that FDC continues to

provide hormone treatment to those inmates for whom medical providers deem it

medically necessary, and, contrary to Named Plaintiffs' allegation, it is not

"impossible" to obtain a variance. As Mendoza, Jackson, and Boothe face no

realistic risk of losing hormone treatment based on factors other than medical

necessity, they lack standing to pursue Named Plaintiffs' hormone claim, either individually or on behalf of a class.

Named Plaintiffs lack a class representative who faces discontinuation of hormone treatment under HSB 15.05.23 for reasons unrelated to medical necessity, because no such inmate exists. Diamond/Coleman remains the sole Named Plaintiff not currently receiving hormone treatment from FDC. (Martinez Decl. at 3, ¶ 9). According to the Amended Complaint, Diamond/Coleman received a recommendation for hormone therapy before FDC implemented HSB 15.05.23 but never received hormones because the GDRT never evaluated the recommendation. (Doc. 66, ¶ 6). As the evidence shows, Diamond/Coleman remains on the list of inmates pending evaluations under HSB 15.05.23. (Martinez Decl. at 3, ¶ 9). As the evidence further shows, FDC continues to conduct these evaluations based on medical necessity, and continues to provide hormone therapy for those inmates for whom it represents a medical necessity. (Id. 2, ¶ 3). Thus, Diamond/Coleman faces no imminent risk of being denied hormone therapy based on factors other than medical necessity.

The Amended Complaint asserts only a claim based on HSB 15.05.23's alleged failure to permit hormone therapy in cases of medical necessity. (Doc. 66, ¶ 131). It asserts no claim for any alleged delay in receiving hormone therapy after receiving a recommendation for hormone therapy prior to FDC's adoption of HSB

15.05.23.  Even if the Amended Complaint did assert such a claim, as set forth below, Named Plaintiffs cannot establish that any such class would satisfy Rule 23(a)(1)'s numerosity requirement.

### B.    NAMED PLAINTIFFS CANNOT ESTABLISH NUMEROSITY REGARDING THEIR HORMONE TREATMENT CLAIM.

Rule 23(a)(1) requires Named Plaintiffs to demonstrate that their proposed "class is so numerous that joinder of all members is impracticable."  In the Eleventh Circuit, "while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."  Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks omitted).  Named Plaintiffs assert that 180 inmates in FDC custody "have been diagnosed with gender dysphoria;" that "[a]ll 180 had clothing and grooming accommodation passes until they were rescinded;" and that "107 had been prescribed hormone therapy by a health care provider."  (Doc. 78 at 22).  Named Plaintiffs appear to suggest that either all 180 FDC inmates with gender dysphoria or the 107 inmates with previous hormone prescriptions qualify for inclusion in their proposed class, but Named Plaintiffs provide no argument or justification for defining their class so broadly.  (Doc. 78 at 22).  Indeed, based on a review of Named Plaintiffs' brief, the accompanying declarations, and additional record evidence, Named Plaintiffs cannot satisfy Rule 23(a)(1)'s numerosity requirement.

First, the proposed class includes inmates like Keohane.  Keohane received a re-evaluation and received a variance to continue hormone treatment.  (Martinez Decl. at 2, ¶ 4).  Accordingly, FDC continues to provide Keohane with hormone treatment, and Keohane faces no risk of losing hormone treatment under HSB 15.05.23.  Thus far, eleven inmates received variances, meaning they will continue to receive hormone treatment.  (Id., ¶ 5).  Like Keohane, these inmates face no risk of losing hormone treatment under HSB 15.05.23, because they already received variances pursuant to that very policy.  As set forth above, these inmates lack standing to pursue any claims regarding hormone treatment, and the Court should not include them in any class.

Second, the proposed class includes inmates who still await an evaluation from their MDSTs but continue to receive hormones in the meantime.  As of May 1, 2025, 120 inmates fell into this category, including Named Plaintiffs Mendoza, Jackson, and Boothe.[2]    (Id. at 3, ¶¶ 7-8).    Those inmates receiving a recommendation for continuation of cross-sex hormones will be evaluated for a variance under HSB 15.05.23 by FDC's Chief of Medical Services, the Chief of Mental Health Services, and the Chief Clinical Advisor ("Variance Team").  As noted above, so far, for all inmates who received a preliminary recommendation for

---

[2] One inmate completed an evaluation by the MDST and remains pending before the Variance Team, as of May 1, 2025.  (Id.).

continuation of their hormone treatment from their MDST, the Variance Team issued variances to continue hormone treatment. (Id. at 2, ¶ 5). Moreover, the Variance Team continues to make decisions regarding variances based on medical need as recommended by the inmates' MDSTs. (Id., ¶ 3). Accordingly, these inmates face no "serious risk of having hormone therapy withdrawn or denied, despite a medical need for this treatment" (doc. 66, ¶ 131), and the Court should not include these inmates in any class.

Third, the proposed class includes inmates who are not currently receiving cross-sex hormones and remain pending an evaluation by their MDSTs under HSB 15.05.23. Approximately ninety-eight inmates fall into this category, including Named Plaintiff Diamond/Coleman. (Martinez Decl. at 3, ¶ 7). This group includes inmates who received a recommendation for hormone therapy under FDC's previous policy but have not yet received approval to begin hormone therapy by their MDSTs. Even assuming Diamond/Coleman possesses standing to assert a claim based on the alleged delay in receiving hormone treatment (a claim the Amended Complaint fails to assert),[3] Diamond/Coleman cannot demonstrate any likelihood of receiving a denial of hormone therapy based on factors other than

---

[3] The Amended Complaint alleges that HSB 15.05.23 provides for denial of hormone treatment based on factors other than medical necessity. (Doc. 66, ¶ 131). It does not assert any claim based on any alleged delay in receiving hormone treatment after receiving a prescription from FDC's contracted medical providers.

medical need.  As with the previous category of inmates, the evidence demonstrates that these inmates will receive an evaluation of whether hormone treatment remains medically necessary for them.  (Id. at 2, ¶ 3).  If their MDSTs conclude that it remains medically necessary, and the Variance Team approves variances, these inmates will receive hormone therapy.  (Id.).  Thus, these inmates likewise face no "serious risk of having hormone therapy withdrawn or denied, despite a medical need for this treatment" (doc. 66, ¶ 131), and the Court should not include them in any class.

Fourth, the proposed class includes inmates who "will become incarcerated in FDC in the future, at which point their care will become subject to HSB 15.05.23."  (Doc. 78 at 22-23).  Again, the evidence demonstrates that inmates diagnosed with gender dysphoria receive evaluations to determine whether hormone treatment is medically necessary for them.  (Martinez Decl. at 2, ¶ 3).  If providers determine that the treatment is medically necessary, then the inmates receive it.  Accordingly, future inmates face no "serious risk of having hormone therapy withdrawn or denied, despite a medical need for this treatment" (doc. 66, ¶ 131), and the Court should not include future inmates in any class.

Based on lack of standing to pursue the claim alleged in the Amended Complaint, Named Plaintiffs cannot identify a group of individuals of sufficient

number to meet the numerosity requirement under Rule 23(a)(1), and, therefore, the Court should deny class certification.

### C. NAMED PLAINTIFFS CANNOT ESTABLISH COMMONALITY REGARDING THEIR HORMONE TREATMENT CLAIM.

Named Plaintiffs correctly recite the standard for establishing commonality under Rule 23(a)(2): the plaintiffs must "'demonstrate that the class members have suffered the same injury' so that resolution of the individual claims would also resolve other class members' claims 'in one stroke.'" (Doc. 78 at 23 (quoting Dukes, 564 U.S. at 349-50)). As Named Plaintiffs acknowledge, "[e]mphasis is on a common *answer* that drives resolution of the litigation." (Id.). Named Plaintiffs, however, cannot meet this well-established standard.

According to Named Plaintiffs, "[t]he existence of a systemic policy that exposes a proposed class to a substantial risk of harm has supported the finding of commonality." (Doc. 78 at 24). Named Plaintiffs cited Parsons v. Ryan, 754 F.3d 657 (9th Cir. 2014), in support of this argument. Parsons challenged "numerous policies and practices of statewide application governing medical care, dental care, mental health care, and conditions of confinement in isolation cells" in Arizona. Id. at 662. Importantly, the Parsons Court recognized that "precedent does not hold that utterly threadbare allegations that a group is exposed to illegal policies and practices are enough to confer commonality." Id. at 683. Instead, the Court noted that "Rule 23(a) is not a pleading standard; rather, it requires proof that there are '*in*

*fact* . . . common questions of law or fact.'" Id. (quoting Dukes, 564 U.S. at 350).

Thus, the Court concluded that "***when inmates provide sufficient evidence*** of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of serious future harm, Rule 23(a)(2) is satisfied." Id. at 684 (emphasis added). By contrast, "commonality is not shown when plaintiffs allege an amorphous claim of undefined and unspecified systemic misconduct." Id. (citing M.D. ex rel. Stukenberg v. Perry, 675 F.3d 832, 844 (5th Cir. 2012)); see also J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1289 (10th Cir. 1999) ("We refuse to hold, as a matter of law, that *any* allegation of a systematic violation of various laws automatically meets Rule 23(a)(2)."). The Parsons Court found that "[t]he materials that [the plaintiffs] submitted to the district court— which included four thorough and unrebutted expert reports, the detailed allegations in the 74-page complaint, hundreds of internal [Arizona Department of Corrections] documents, and declarations by the named plaintiffs—constituted more than sufficient evidence at this stage in the litigation of the existence of the statewide . . . . policies and practices that allegedly expose all members of the putative class to a substantial risk of serious harm." Id. Named Plaintiffs here provided no such evidence. Indeed, as discussed above, the evidence establishes that the policy Named Plaintiffs purport to challenge (HSB 15.05.23) poses no substantial risk of serious harm to Named Plaintiffs or other putative class members.

The other cases cited by Named Plaintiffs likewise involved claims for which the plaintiffs provided evidence to support their class allegations. Scott v. Clarke, 61 F. Supp. 3d 569, 579 (W.D. Va. 2014) (noting that "the allegations in the instant motion support the merits of Plaintiffs' class allegations of the [system's] general, systemic failure to treat serious medical conditions"); Lippert v. Baldwin, No. 10 C 4603, 2017 WL 1545672, at *4 (N.D. Ill. Apr. 28, 2017) (expert appointed by court and agreed to by parties identified "several systemic deficiencies," and expert "conclude[d] that defendants violated minimum constitutional standards"); Dockery v. Hall, No. 3:13-cv-326-WHB-JCG, 2018 WL 11424799, at **5-6 (S.D. Miss. Feb. 14, 2018) (citing Parsons and holding that commonality requirement remained satisfied on motion for decertification of class); Baxley v. Jividen, 338 F.R.D. 80, 88 (S.D. W. Va. 2020) (finding that "[t]he evidence provided is sufficient to support a finding that the members of the putative class are commonly exposed to systemic policies and practices"). Named Plaintiffs' mere assertion that HSB 15.05.23 places them at a substantial risk of serious harm, without evidence, cannot support class certification.

Instead of providing evidence of the existence of a policy that places them at a risk of harm, Named Plaintiffs rely on a misreading of HSB 15.05.23. According to Named Plaintiffs, putative class members "all will have the determination about whether they can continue or begin hormone therapy made using criteria that are

22

unrelated to their individual medical need for the treatment, putting them at risk of medically necessary care being denied." (Doc. 78 at 25).[4]  The record reveals the falsity of this statement.  As this Court already found, the evidence presented at the preliminary injunction hearing "demonstrated that the Department will individually evaluate every inmate who was receiving hormone treatment" to "determine if continued hormone treatment is medically necessary," and, "[i]f the Department concludes it *is* medically necessary, the hormone treatment will continue."  (Doc. 55 at 7-8).  And, since the preliminary injunction hearing, all eleven inmates who completed the full re-evaluation process under HSB 15.05.23 received variances and continue to receive hormone treatment.  (Martinez Decl. at 2, ¶ 5).  Thus, Named Plaintiffs base their commonality argument on an invented "policy" that does not exist.

Aside from Named Plaintiffs' invented "policy," they cannot establish that the Named Plaintiffs share commonality with any other putative class members. Each Named Plaintiff and each putative class member will receive an evaluation and a determination regarding hormone treatment based on his or her own medical need.  As of May 1, 2025, all inmates who received an evaluation for a variance to

---

[4] At the preliminary injunction hearing, counsel for Named Plaintiffs argued that the fact that hormone treatment "is only provided when required by the [C]onstitution" somehow violates the Constitution.  (Hrg. Tr. at 129:15-19).  This argument is non-sensical on its face.

continue hormone treatment under HSB 15.05.23 received a variance and continue to receive hormone treatment. (Martinez Decl. at 2, ¶ 5). No inmates fall into the hypothetical class of inmates who received a discontinuation or denial of hormone treatment under HSB 15.05.23 based on factors other than medical necessity. Named Plaintiffs cannot establish commonality on their hormone claim based on mere speculation, contrary to the evidence, that FDC might someday deny an inmate hormone treatment based on factors other than medical necessity.

### D. NAMED PLAINTIFFS CANNOT ESTABLISH TYPICALITY REGARDING THEIR HORMONE TREATMENT CLAIM.

"Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." Piazza v. Ebsco Indus., Inc., 273 F.3d 1341, 1346 (11th Cir. 2001). According to the Supreme Court:

> The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although he latter requirement also raises concerns about the competency of class counsel and conflicts of interest.

<u>Falcon</u>, 457 U.S. at 157-58 n. 13.  Named Plaintiffs fail Rule 23(a)(3)'s typicality requirement because they cannot demonstrate that they possess claims "so interrelated" with those of absent class members "that the interests of the class members will be fairly and adequately protected in their absence." <u>Id.</u>  Named Plaintiffs' standing failures set forth above render them atypical class representatives.  <u>Prado-Steiman v. Bush</u>, 221 F.3d 1266, 1279 (11th Cir. 2000) ("Without individual standing to raise a legal claim, a named representative does not have the requisite typicality to raise the same claim on behalf of a class."). Named Plaintiffs cannot demonstrate typicality, and the Court should therefore deny class certification as to their hormone claim.

### E.    NAMED PLAINTIFFS CANNOT ESTABLISH ADEQUACY REGARDING THEIR HORMONE TREATMENT CLAIM.

Under Rule 23(a)(4), Named Plaintiffs must demonstrate that they "will fairly and adequately protect the interests of the class."[5]  "This 'adequacy of representation' analysis 'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" <u>Valley Drug Co. v. Geneva Pharms., Inc.</u>, 350 F.3d 1181, 1189 (11th Cir. 2003).  Named Plaintiffs cannot adequately represent the putative class as to their hormone claim.

---

[5] The FDC Officials do not dispute the adequacy of Named Plaintiffs' counsel as class counsel.

According to Named Plaintiffs, "Plaintiffs and members of the putative class are all being harmed in the same way by the challenged policy and seek the same relief to alleviate that harm." (Doc. 78 at 31). However, Keohane, Mendoza, Boothe, and Jackson continue to receive hormone treatment.[6] (Martinez Decl. at 2, ¶ 4; 3, ¶ 8). Thus, they possess no incentive to pursue claims related to hormones. As set forth above, Diamond/Coleman also lacks standing to pursue a claim based on the application of HSB 15.05.23, because any claim Diamond/Coleman possesses relates solely to the alleged delay between receiving a recommendation for hormone therapy and receiving hormone therapy—and the Amended Complaint asserts no such claim. (See supra at 3, ¶ 9). Accordingly, Diamond/Coleman also lacks adequacy to represent a class with respect to the hormone claim asserted in the Amended Complaint.

## F. NAMED PLAINTIFFS CANNOT SATISFY RULE 23(B) REGARDING THEIR HORMONE TREATMENT CLAIM.

In addition to satisfying Rule 23(a)'s requirements, Named Plaintiffs also must satisfy one of Rule 23(b)'s requirements. Named Plaintiffs claim they satisfy Rule 23(b)(2). (Doc. 78 at 32). Under Rule 23(b)(2), Named Plaintiffs must establish that "the party opposing the class has acted or refused to act on grounds

---

[6] In fact, Keohane completed the evaluation process under HSB 15.05.23 and successfully obtained a variance to continue hormone treatment. (Martinez Decl. at 2, ¶ 4).

that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  Dukes, 564 U.S. at 360.  However, here, the record reflects that FDC will provide hormone treatment when medically necessary for a particular inmate.  (Doc. 55 at 8-9).  Indeed, as Named Plaintiffs acknowledge, HSB 15.05.23 states on its face that FDC will provide hormone treatment if necessary to comply "with the U.S. Constitution or a court decision."  (Doc. 78 at 14).  Moreover, as of May 1, 2025, all eleven inmates for whom FDC completed the re-evaluation process under HSB 15.05.23 received a variance; no inmate received a discontinuation of hormone treatment.  (Martinez Decl. at 2, ¶ 5).  Thus, it is unclear what kind of "relief" an injunction would provide.

Indeed, given the fact that HSB 15.05.23 already, on its face, requires FDC to provide hormone treatment if constitutionally required, Named Plaintiffs appear to seek an improper "obey-the-law" injunction.  An injunction that "do[es] no more than instruct the [defendant] to 'obey the law' . . . would not satisfy the specificity requirements of Rule 65(d) and . . . would be incapable of enforcement."  Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (holding that injunction prohibiting defendant "from discriminating on the basis of race in its annexation decisions" would be unenforceable as an obey-the-law injunction).  Instead,

27

"[b]ecause of the possibility of contempt, an injunction 'must be tailored to remedy the specific harms shown rather than to enjoin all possible breaches of the law.'" Hughey v. JMS Development Corp., 78 F.3d 1523, 1532 (11th Cir. 1996) (quoting Epstein Family P'ship v. Kmart Corp., 13 F.3d 762, 771 (3d Cir. 1994)).  Here, however, Named Plaintiffs apparently seek to require FDC to provide hormone treatment for gender dysphoria where medically necessary.  (Doc. 78 at 34).  Such an injunction would do no more than order the FDC Officials to "obey the law." (See Doc. 55 at 9 ("[T]o the extent the Department provides what is medically necessary, it has provided what is constitutionally required.")).[7]  Thus, Named Plaintiffs cannot satisfy Rule 23(b)(2).

## II.    THE COURT SHOULD DENY CLASS CERTIFICATION OF NAMED PLAINTIFFS' SOCIAL-TRANSITIONING CLAIM.

Named Plaintiffs' claim regarding social transitioning represents another "amorphous claim of undefined and unspecified systemic misconduct."  Parsons, 754 F.3d at 684.  As with their hormone claim, Named Plaintiffs failed to "provide sufficient evidence of systemic and centralized policies or practices in a prison system that allegedly expose all inmates in that system to a substantial risk of

---

[7] As the Court noted, "even medical care falling below what is medically necessary does not necessarily violate the Eighth Amendment."  (Doc. 55 at 9 (citing Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).

serious future harm."  Id.  Named Plaintiffs accordingly cannot meet Rule 23(a)(2)'s commonality requirement with respect to this claim.

In denying Keohane's motion for preliminary injunction, the Court concluded that "Keohane presented no evidence showing that denying requested social accommodations is tantamount to providing care so deficient that it constitutes an Eighth Amendment violation."  (Doc. 55 at 17; see also id. at 21 ("Keohane, having presented no expert evidence, has not shown that the requested social accommodations are ever medically necessary").  This failure dooms Named Plaintiffs' efforts to certify a class on this claim.

In an apparent attempt to remedy their previous failure to provide evidence that denying social accommodations violates the Eighth Amendment, Named Plaintiffs submitted the declaration of Dr. Karasic.  (Doc. 78-1).  Dr. Karasic opines that "social transition and gender-affirming medical care, including hormone therapy, can significantly relieve the distress of gender dysphoria and are medically necessary for many people with this condition."  (Doc. 78-1, ¶ 26).  However, as this Court already recognized, "[w]here there is reasonable disagreement about appropriate medical treatment, preferring one reasonable course over another does not violate the Constitution."  (Doc. 55 at 19 (citing Keohane v. Fla. Dep't of Corrs. Sec'y, 952 F.3d 1257, 1274 (11th Cir. 2020) ("Keohane I")); see also id. at 20-21 ("[A]n across-the-board prohibition on a particular treatment cannot constitute

deliberate indifference when there is no showing that the treatment is ever medically necessary.")). The medical necessity of social transitioning for gender dysphoria patients certainly represents an area in which reasonable disagreement exists.

In a previous case involving Named Plaintiff Keohane, the Eleventh Circuit concluded that Keohane's request for social transitioning represented, "[a]t worst . . . , a situation where medical professionals disagree as to the proper course of treatment for Keohane's gender dysphoria, and it's well established that 'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment.'" Keohane I, 952 F.3d at 1274 (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)). Medical professionals continue to disagree as to whether social transitioning can ever represent a medical necessity for treatment of gender dysphoria. Dr. Martinez testified at the preliminary injunction hearing, "There's no scientific evidence to conclude that [social transitioning accommodations] are medically necessary to treat gender dysphoria." (Hrg. Tr. at 99:17-18; see also id. at 26:5-6 (Dr. Martinez testifying that social transitioning "would be psychologically pleasing, but it's not medically necessary")). Moreover, to date, Dr. Martinez is not aware of any FDC inmate receiving a determination by a treating medical professional that social accommodations or alternate canteen items were medically necessary to treat gender dysphoria. (Id. at 116:13-17;

Martinez Decl. at 4, ¶ 12).  In further support of Dr. Martinez's statements, Dr. Kristopher Kaliebe, Professor of Psychiatry at University of South Florida, concluded that social transitioning "may be psychologically pleasing to some individuals with gender dysphoria, but it is not medically necessary to treat their condition."  (Declaration of Dr. Kristopher Kaliebe, dated May 8, 2025, attached hereto as **Exhibit B**, at 8, ¶ 22).  It remains clear, as noted by the Eleventh Circuit in Keohane I, that medical professionals continue to disagree regarding the medical necessity of social-transitioning accommodations.  Keohane I, 952 F.3d at 1274.  As such, Named Plaintiffs failed to provide sufficient evidence that FDC's policies or practices regarding social-transitioning accommodations expose all inmates to a serious risk of substantial harm.

Notwithstanding the current disagreement of medical professionals, if FDC medical providers reach a final determination that social-transitioning accommodations represent a medically necessary treatment for a particular inmate, FDC will provide them to the extent medically necessary.  (Martinez Decl. at 4, ¶ 13; Hrg. Tr. at 59:4-6 ("[S]hould a provider come to the determination about something like hair length, it would have to be on an individual service plan for that individual, and it would have to be evaluated."); see also id. at 121:8-11 (Named Plaintiffs' counsel summarizing the FDC Officials' position as "that female clothing and grooming items are never medically necessary, and that there could

one day in the future potentially be individualized exceptions to this ban on clothing and grooming items")).    Thus, Plaintiffs cannot demonstrate that FDC denies medically necessary treatment with respect to social-transitioning accommodations.

Because reasonable disagreement exists over the medical necessity of social transitioning, Named Plaintiffs failed to provide sufficient evidence that the removal of social-transitioning accommodations exposes all inmates in their proposed class "to a substantial risk of serious future harm." Parsons, 754 F.3d at 684.    Accordingly, Named Plaintiffs cannot establish commonality as to their social-transitioning claim, and the Court should deny class certification.

### CONCLUSION

For the foregoing reasons, the FDC Officials respectfully request that the Court deny Named Plaintiffs' Motion for Class Certification.

Dated: May 9, 2025.

/s/ Kenneth S. Steely
Kenneth S. Steely
*One of the Attorneys for the FDC Officials*

William R. Lunsford
Kenneth S. Steely
William J. Cranford III (*pro hac vice*)
**Butler Snow LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com

kenneth.steely@butlersnow.com
will.cranford@butlersnow.com

Daniel A. Johnson (Florida Bar No. 91175)
**Florida Department of Corrections**
501 South Calhoun Street
Tallahassee, FL 32399-2500
Telephone: (850) 717-3605
dan.johnson@fdc.myflorida.com

*Attorneys for the FDC Officials*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that this Memorandum of Law contains 7,292 words and does not exceed 8,000 total words, as required by N.D. Fla. Loc. R. 7.1(F).

*/s/ Kenneth S. Steely*
Kenneth S. Steely
*One of the Attorneys for the FDC Officials*

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this the 9th day of May, 2025.

Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org

Michelle Fraling*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW, 6th Floor
Washington D.C., 20005
Tel: (917) 710-3245
michelle.fraling@aclu.org

Emily L. Shook*
Anthony J. Anscombe*
STEPTOE LLP
227 West Monroe, Suite 4700
Chicago, IL 60606
Tel: (312) 577-1300
eshook@steptoe.com
aanscombe@steptoe.com

*Pro Hac Vice admission granted*

/s/ Kenneth S. Steely
*Of Counsel*

35