IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| REIYN KEOHANE, *et al.*, | ) <br> ) |
| *Plaintiffs*, | ) <br> ) <br> ) Case No. 4:24-cv-434 |
| vs. | ) <br> ) |
| RICKY D. DIXON, in his official capacity as Secretary of the Florida Department of Corrections; *et al.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| *Defendants*. | ) |

**STIPULATED ORDER REGARDING THE PROTOCOL FOR PRODUCING DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

    To expedite the flow of discovery material and to facilitate the consistency in the format of the documents to be produced by the parties in this case, the parties in the above-captioned case, by and through their respective counsel, hereby stipulate and agree to the terms of this Stipulated Order Regarding the Protocol for Producing Documents and Electronically Stored Information:

    IT IS HEREBY STIPULATED, subject to the approval of the Court that:

1. This Stipulated Protocol for Producing Documents and Electronically Stored Information (the "ESI Protocol") shall govern the production of documents and electronically stored information ("ESI") by the Parties in the above-captioned litigation ("this Action").

2. The production specifications in this Order apply to paper records and ESI that are produced in this Action. The terms and specifications of this Order shall

only apply to productions made after the date of entry of this Order. Productions in this Action that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree. Productions received from third parties shall be produced to the other Parties in the format that such documents and /or information was produced by the third parties, unless the Parties agree otherwise.

3. To the extent additional obligations or rights not addressed in this ESI Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, those rules and/or statutes shall control.

**A. Definitions**:

1. "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a)(1)(A).

2. "Electronically stored information" or "ESI," as used herein shall include any writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations in any medium from which electronically stored information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

3. "Family" means email and all related attachments. Hyperlinked documents are not attachments and are not part of a family.

4. "Paper Records" or "Hard Copy Documents" means Documents existing in paper form at the time of collection.

5. "Native Format" means and refers to an electronic document's associated file structure defined by the original creating application.

For example, the native format of an Excel workbook is a .xls or .xslx file.

6. "Metadata" is the generic term used to describe the structural information of a file that contains data about the file, as opposed to describing the content of a file, for example, application and system information.

7. "Optical Character Recognition" or "OCR" means the process of recognizing, and creating a file containing, visible text within an image.

8. "Hash Value" is a unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.

9. "Confidentiality Designation" means the legend affixed to "Confidential" or "Highly Confidential" Discovery Material as defined by, and subject to, the terms of the Confidentiality Stipulation and Protective Order entered in this Action (Dkt 42-1).

10. "Searchable Text" means the native text extracted from ESI and any Optical Character Recognition text ("OCR text") generated from a Hard-Copy Document or electronic image.

**B. Paper Records:** Paper records will be made available for inspection or produced in electronic form. Paper records produced in electronic form will be scanned or otherwise converted into electronic form in the following format:

1. TIFFs. All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11 inch page size, except for documents requiring higher resolution or different page size.

2. Productions of the images shall be made using an image load file (.OPT or .LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

3. Objective Coding Fields. The following objective coding fields should be provided, if applicable: (1) beginning Bates number; (2) ending Bates number; (3) beginning attachment Bates number; (4) ending attachment Bates number; and (5) page count.

C. **Electronically Stored Information:** The Parties will produce responsive, complete families of electronically stored information in native or TIFF format, as specified in this Order, according to the following specifications:

1. All TIFF formatted documents will be single page, Group 4 TIFF at 300 X 300 dpi resolution and standard size 8 ½ X 11 inch page size, except for documents requiring different resolution or page size.

2. An image load file, in standard Opticon format, showing the Bates number endorsed onto the lower right corner of each page but not obscuring the content on any page and the unitization of the documents to the extent possible, will accompany all document images.

3. Each imaged version of the electronic document will be created directly from the original electronic document.

4. TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out above, unless agreed with the opposing party or ordered by a court. The Producing Party shall also produce PowerPoint files in color (to the extent they are not produced natively). Upon written request that

4

identifies a reasonable number of individual documents at issue by Bates number, a party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher. To the extent it appears files or documents contain metadata that identifies a document as containing comments, tracked changes, speaker's notes, or other hidden text, each party reserves the right to request that such document be produced in color with all comments, tracked changes, speaker's notes, or other hidden text, and any other hidden content made visible in the first instance.

5. All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction.

   i. Each text file shall be named according to the Bates number of the first page of the corresponding image files (e.g., BATES000001.TXT).

   ii. In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

6. The following metadata fields associated with each electronic document will be produced, to the extent they are available. The Field

Names set forth below are provided for illustrative purposes. Metadata field names may be different so long as the field as named contains the information identified in the Field Description. The Parties need not rename default metadata fields. No party shall be required to manually populate any fields that do not exist as a document is maintained in the ordinary course of business.

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Custodians | Name of custodian(s) of email(s) or file(s) produced and any de-duped file(s) not produced | X | X |
| BegBates | Beginning Bates# (including Prefix) | X | X |
| EndBates | Ending Bates# (including Prefix) | X | X |
| BegAttach | Beginning Bates number of the first document in an attachment range (only in emails with attachments) | X | X |
| EndAttach | Ending Bates number of the last document in attachment range (only in emails with attachments) | X | X |
| Attachnames | Names of each individual Attachment, separated by semi-colons | X | |
| From | From field extracted from an email message | X | |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Author | Author field extracted from the metadata of a non-email document | | X |
| To | To or Recipient extracted from an email message | X | |
| Cc | Carbon Copy ("Cc") field extracted from an email message | X | |
| Bcc | Blind Carbon Copy ("Bcc") field extracted from an email message | X | |
| Subject | Subject line extracted from an email message | X | |
| Filename | File name - Original name of file as appeared in original location | | X |
| SentOnDate | Sent date of an email message (mm/dd/yyyy hh:mm:ss a format) (a given email will have either a Date Sent or Date Recvd, but not both) | X | |
| ReceivedDate | Received date of an email message (mm/dd/yyyy hh:mm:ss a format) (a given email will have either a DateSent or Date Recvd, but not both) | X | |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| CreationDate | Date that a non-email file was created (mm/dd/yyyy hh:mm:ss a format) | | X |
| ModifiedDate | The application recorded time on which the document was last modified (mm/dd/yyyy hh:mm:ss a format) | | X |
| Filesize | Size or volume of individual file | X | X |
| Pgcount | Number of pages of document produced | X | X |
| NativeLink | Relative path to any files produced in native format | X | X |
| Text Path | Relative path to any OCR/extracted text files in the production set | X | X |
| Parentmsgid | Where the item is an email which is a REPLY or FORWARD, the MSGID of the original email which was REPLIED to or FORWARDED | X | |
| HashValue | MD5 or SHA-1 hash value used to deduplicate the data | X | X |
| Confidentiality Designation | Confidentiality Designation for produced documents | X | X |

| Field Name | Field Description | Required For Email | Required For Non-E-Mail ESI |
|---|---|---|---|
| Redaction | Identifies if a document has been redacted | X | X |
| File extension* *will not be populated for emails | The suffix at the end of a filename that indicates what type of file it is *(e.g., .ppt, .doc, .pdf)* |  | X |
| All Custodians | All custodians of the document | X |  |

7. Native Format Production of Documents:

   a. The Parties will produce the following ESI types in native file format:
      - Excel spreadsheets
      - Audio/video files
      - PowerPoint presentations

   b. Any document produced in native format will be produced according to the following specifications:

   (1) A unique Bates number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. An example of this convention would be:

   (a) "ZF_TRW_MDL_000001_HighlyConfidential.xls"

   (2) The native format documents shall be accompanied by reference information that sets forth for each document, sufficient information to allow the Parties to track and authenticate the native format documents produced, including: (i) the name of the custodian from whose files the electronic file is produced; (ii) an appropriately

9

     calculated "MD-5 Hash Value"; (ii) the original name of the file; and (iv) a Bates number.

 (3) Any file produced in native format need not be imaged. Instead, a single page placeholder image shall be provided that indicates the file was produced in native format and contains the Bates number and Confidential designation of the corresponding file.

### D. Redacted Files

The Parties reserve the right to redact any information covered by the attorney-client privilege, attorney-work product doctrine, or any other applicable privilege, including personally identifying information (PII), personal health information (PHI), and reporter identifying information (RII) prior to producing documents in this Action. To the extent a Party redacts such information, the information redacted shall be identified by the endorsement "Redacted for Privilege" "Redacted – Privileged" or "Redacted – PII/PHI" or a substantially similar legend. The Receiving Party reserves the right to challenge any such redactions if it believes the redactions to be improper or overbroad.

Extracted text will *not* be provided for electronic documents that have been redacted—*e.g.,* for privilege or trade secrets—because the extracted text would reveal the redacted information. Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text. Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form as long as the producing party keeps a pristine,

unredacted copy of the native file and identifies the natively redacted documents to the receiving party in the production cover letter or by way of a native redaction field, to the extent possible.

### E. Data Load Files/Cross-Reference Files

Fielded data should be exchanged via a document-level-database load file in one of two delimited formats. Either standard Concordance (DAT) or comma delimited (CSV). All image data should be delivered with a corresponding image load file in one of three formats; standard IPro (LFP), Opticon (OPT) or Summation (DII). The total number of image files referenced in the image load file should match the total number of images in the production delivery. This section is subject to the Parties' vendors being able to process the data; if not, the Parties will meet and confer.

### F. Deduping Documents and De-NISTing Documents

1. Each Party will dedupe ESI globally for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level). This will result in the Producing Party producing only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "All Custodians" field. The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents. De-duplication shall not break apart families.

2. Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

### G. Proprietary or Third-Party Software

To the extent that information produced pursuant to this ESI Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties shall meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

### H. Production Media

The Parties shall produce documents electronically via a secure File Transfer Protocol ("FTP") rather than through physical media (e.g. CD, DVD, or hard drive), unless such electronic transmission is impracticable, or the Parties otherwise agree on a different method of transmission. The produced documents shall be password protected and/or encrypted.

### I. Defendants' Identification and Classification of Documents

The Parties agree to meet and confer in good faith regarding the scope of discovery, including custodians that will be subject to discovery, applicable date range restrictions, and search terms.

### J. Social Media

To the extent the Parties agree to produce social media, or it is ordered by the Court, the Parties agree to meet and confer as to the collection and formats of production of responsive and proportional Social Media ESI, if any.

### K. Mobile and Handheld Device Documents and Data

The Parties agree to meet and confer as to the collection and formats of production of any responsive documents and data contained on any mobile or handheld device.

**L. General Provisions**

1. Any practice or procedure set forth herein may be varied by agreement of the Parties or Court order.

2. Should any party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the Parties will meet and confer to resolve any dispute at least fourteen days before seeking Court intervention.

SO ORDERED this _____ day of _____, 2025.

_____
Judge