## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

| | | |
|---|---|---|
| **REIYN KEOHANE,** *et al.* | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:24-cv-00434-AW-MAF** |
| | ) | |
| **RICKY D. DIXON,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

### THE FDC OFFICIAL'S RESPONSE
### TO PLAINTIFF'S MOTION TO COMPEL

Pursuant to Federal Rules of Civil Procedure 33 and 36(a)(6), the FDC Officials[1] hereby submit this Response to Plaintiff Reiyn Keohane's Motion to Compel Further Responses to Interrogatories and Deem Requests Admitted (Doc. 98, "Plaintiff's Motion").  In support of this Response, the FDC Officials provide as follows:

### INTRODUCTION

Plaintiff seeks to establish the FDC Officials' Eighth Amendment liability through a discovery motion.  As the Eleventh Circuit put it, Plaintiff's Motion reflects a "wild-eyed hope that the [FDC Officials] will fail to answer [Plaintiff's Requests for Admission] and therefore admit essential elements" of Plaintiff's claim.

---

[1] "FDC Officials" refers to the same individuals as in Document 83.

Perez v. Miami-Dade Cnty., 297 F.3d 1255, 1268 (11th Cir. 2002).  The Court should

deny Plaintiff's Motion for at least the following two reasons:

> (1)      The FDC Officials properly responded to Plaintiff's
>          Interrogatories; and
>
> (2)      The FDC Officials properly responded to Plaintiff's
>          Requests for Admission.

As discussed in further detail below, Plaintiff's Motion fails to establish any

entitlement to relief and should be denied.

## **ARGUMENT**

The FDC Officials completely and appropriately responded to two

Interrogatories and four Requests for Admission ("RFAs") (Doc. 98).  Ignoring the

content of these responses, Plaintiff requests that the Court order the FDC Officials

to provide a "full response" to the Interrogatories and that the Court deem the RFAs

admitted.  Should the Court grant Plaintiff the requested relief, particularly as to the

RFAs, the FDC Officials' Eighth Amendment liability as to Keohane will be

"conclusively established" through a *discovery motion*—not through a dispositive

motion or a trial.  Fed. R. Civ. P. 36(b).  But, the discovery rules do not contemplate

such a result.  Because the FDC Officials properly responded to Plaintiff's discovery

requests, the Court should deny the requested relief.

## I.    THE FDC OFFICIALS PROPERLY RESPONDED TO PLAINTIFF'S INTERROGATORIES.

Plaintiff requests that the Court compel the FDC Officials to provide a "full" response to Interrogatory Nos. 11 and 13. Under Rule 33(b), a party answering interrogatories must answer "each interrogatory … separately and fully in writing under oath," and any objections "must be stated with specificity." Fed. R. Civ. P. 33(b)(3); (b)(4). Additionally, when the answer to an interrogatory "may be determined by examining … a party's business records," the "responding party may answer by … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Id. The Interrogatory Responses provided by the FDC Officials complied with the guidance afforded in the Rules of Civil Procedure.

## A.    Interrogatory No. 11

Plaintiff's Interrogatory No. 11 asked the FDC Officials to "[i]dentify all health bulletins that have a requirement that a treatment go to the etiological basis of the pathology, as well as all health conditions and treatments for which FDC requires treatment to go to the etiological basis of the underlying condition." (Doc. 908 at 5). As explained below, the FDC Officials' response to Interrogatory No. 11 complies with the Federal Rules of Civil Procedure. Plaintiff simply dislikes the FDC Officials' response.

The FDC Officials' response properly invoked Rule 33(d) by directing Plaintiff to Health Services policies that the FDC Officials produced in discovery.

(Doc. 98 at 6). "When the responding party relies on Rule 33(d) to respond to an interrogatory, the party seeking discovery must make a *prima facie* showing that 'the use of Rule 33(d) is somehow inadequate to the task of answering the discovery, whether because the information is not fully contained in the documents, is too difficult to extract, or other such reasons.'" Red-D-Arc Inc. v. AMP 2 LLC, No. 6:24-CV-1087-LHP, 2025 WL 26648, at *1 (M.D. Fla. Jan. 3, 2025) (quoting Int'l Aerospace Group Corp. v. Evans Meridians Ltd., No. 16-24997-CIV, 2017 WL 1927957, at *3 (S.D. Fla. May 10, 2017)). Plaintiff cannot make such a showing here. While Plaintiff claims that the FDC Officials improperly invoked Rule 33(d), Plaintiff's Motion itself belies that claim: Plaintiff explained that "[a] search of [the referenced documents] using the terms 'etiological basis' turns up only one document: HSB 15.05.23, which is the procedure challenged by this lawsuit." (Doc. 98 at 8). Thus, Plaintiff demonstrated the ability to discern the desired answer from the documents the FDC Officials referred to in their Response. Plaintiff's own Motion demonstrates the lack of any need for the Court to compel the FDC Officials to provide a "full" response to Interrogatory No. 11.

The FDC Officials have not, as Plaintiff alleges, "improperly obfuscated" anything. (Doc. 98 at 8). Instead, Plaintiff merely desires that the FDC Officials respond to Interrogatory No. 11 in Plaintiff's preferred manner. Plaintiff remains free to make any arguments as to the perceived import of the "etiological basis"

language in HSB 15.05.23, as well as the perceived import of the absence of that language from other FDC Health Services policies. However, the Court need not order the FDC Officials to provide any further response to Interrogatory No. 11.

### B.    Interrogatory No. 13

Interrogatory No. 13 asked the FDC Officials to "explain the basis" for, and "identify the evidence" underlying, any answer to an RFA other than an unqualified admission or an unqualified denial. (Doc. 98 at 9). The FDC Officials, in their Second Amended Response, directed Plaintiff to the FDC Officials' responses to Plaintiff's RFAs. (Id.). As discussed below with respect to the FDC Officials' responses to Plaintiff's RFAs, the Court need not compel the FDC Officials to provide any additional response to Interrogatory No. 13, and Plaintiff's Motion should be denied as to Interrogatory No. 13.

## II.    THE FDC OFFICIALS PROPERLY RESPONDED TO PLAINTIFF'S RFAS.

Plaintiff's Motion devotes the most significant amount of time to the FDC Officials' responses to certain RFAs. (Doc. 98 at 9–21). Indeed, as discussed further below (and as is clear from the face of the RFAs), Plaintiff requested that the FDC Officials admit Eighth Amendment liability in addition to several other facts that the FDC Officials previously denied in their Answer. (Id.; Doc. 77 at ¶¶ 126–128 (denying Eighth Amendment liability), ¶¶ 79, 85, 96, 99, 102, 106, 113 (denying that "access to clothing and grooming accommodations constituted 'treatment'" for

gender dysphoria)).   Additionally, Plaintiff seeks improper relief: that the Court deem the matters central to this case "conclusively established."  Fed. R. Civ. P. 36(b).   If Plaintiff believes the FDC Officials improperly denied the RFAs, Plaintiff's remedy is to (1) prove the fact; and (2) seek post-judgment sanctions against the FDC Officials under Rule 37.  See Fed. R. Civ. P. 37.  The Court should not deem the matters in RFA Nos. 4, 5, 9, or 10 to be admitted because the FDC Officials' responses to those RFAs complied with Rule 36.

Under Rule 36, "[a] party may serve on any other party a written request to admit … relating to … fact, the application of law to fact, or opinions about either[.]"  Fed. R. Civ. P. 36(a)(1).  "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it."  Id.  A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest."  Id.

Importantly, and as Plaintiff admitted in the Motion, "[t]he purpose of Rule 36 is 'to expedite the trial and to relieve the parties of the cost of proving facts *that will not be disputed at trial*."  (Doc. 98 at 4) (quoting Perez, 297 F.3d at 1264) (emphasis added).  Plaintiff also correctly pointed out that RFAs are "'a means of avoiding the necessity of proving issues with the requesting party will *doubtless be able to prove*.'"  (Id.) (quoting Odom v. Roberts, 337 F.R.D. 347, 351 (N.D. Fla.

2020)) (emphasis added).  While Plaintiff pays lip service to these principles, Plaintiff's request that the Court deem contested issues of fact and law to be "conclusively established" tells a different story.  Fed. R. Civ. P. 36(b).  Next, Rule 36(a)(6) allows a requesting party to move to "determine the sufficiency of an answer or objection."  "Unless the court finds an objection justified, it must order that an answer be served.  On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."  Fed. R. Civ. P. 36(a)(6).  "The Court's power to deem a matter admitted under Rule 36(a)(6) is discretionary[.]" Point Blank Sols., Inc. v. Toyobo Am., Inc., No. 09-61166-CIV, 2011 WL 742657, at *6 (S.D. Fla. Feb. 24, 2011).  The Court should exercise its discretion and deny Plaintiff's request to deem any matters in its RFAs admitted.

Point Blank Solutions provides an instructive example here.  In that case, the court declined to deem matters admitted prior to trial as a sanction for allegedly deficient responses to RFAs.  Id. at *6.  The Point Blank court identified "no reason why th[e] case should be tried via discovery practice instead of before a judge and jury as the Federal Rules contemplate."  Id.  Indeed, the court pointed out that "Rule 37(c) provides [the requesting party] with an ample post-judgment avenue for relief and, because [the requesting party] will have to prove the truth of the disputed matters in any event, it will not prejudice [the requesting party] to postpone a

determination of the propriety of the … responses until after judgment is entered."

Id.  In similar fashion here, Plaintiff fails to show any basis for this Court to conclude

that it should insert itself into the facts at this juncture to determine whether a fact is

sufficiently proven or not.

Finally, "[a]lthough Rule 36(a) authorizes a party to serve a request for

production relating to the application of law to fact, a party may not seek an

admission as to a pure conclusion of law."  Searcy v. United States, No. 19-80380-

CIV, 2019 WL 6251039, at *2 (S.D. Fla. Nov. 22, 2019) (quoting Gross v. Guzman,

No. 11-23028-CIV, 2013 WL 12091159, at *10 (S.D. Fla. Jan. 25, 2013)).   In

Searcy, for example, the plaintiff in a negligence case arising from a motorcycle

accident propounded RFAs on the defendant that asked the defendant to admit that

he "negligently operated the vehicle he was driving so as to cause a crash;" that the

"negligence of [the defendant] … caused [the plaintiff] to be killed;" and that the

"negligence of [the defendant] … was the sole legal cause of [the plaintiff's] death."

2013 WL at 12091159 at *1.   The Searcy court determined that these RFAs all

"improperly [sought] admissions to pure conclusions of law."  Id. at *3.  See also

Landberg ex rel. Landberg v. Universal Trailer Corp. Horse/Livestock Grp., No.

1:06-CV-2971-BBM, 2008 WL 11334018, at *6 (N.D. Ga. Mar. 14, 2008) (pointing

out that "it would be inappropriate for a party to demand that the opposing party

ratify legal conclusions that the requesting party has simply attached to operative

facts") (quoting <u>Disability Rights Council v. Wash. Metro. Area Transit Auth.</u>, 234 F.R.D. 1, 3 (D.D.C. 2006)).  In addition to failing to comply with the purpose of Rule 36, RFA Nos. 4 and 5 also impermissibly seek legal conclusions by requesting that the FDC Officials admit their Eighth Amendment liability.  The Court should deny Plaintiff any relief as to any of the RFAs subject to the Motion.

### A.    RFA No. 4

RFA No. 4 asked the FDC Officials to admit that, "[f]or Reiyn Keohane," "the denial of cross-sex hormone therapy would violate the Eighth Amendment to the U.S. Constitution."  (Doc. 98 at 10).  Beyond impermissibly requesting a legal conclusion (that the FDC Officials admit their Eighth Amendment liability based on a hypothetical set of questions), <u>see Landberg</u>, 2008 WL 11334018 at *6, RFA No. 4 also consists of an impermissible hypothetical question.  (<u>See</u> Doc. 98 at 10).  As the FDC Officials explained in their Amended Response, Reiyn Keohane "continues to receive cross-sex hormones." (Doc. 98 at 10).  Thus, the FDC Officials need not respond to RFA No. 4, as improper hypothetical RFAs do not require a response. <u>E.g.</u>, <u>Landberg</u>, 2008 WL 11334018 at *6 (noting that "a request for admission based on an application of law to a hypothetical set of facts is improper") (quoting 7 <u>Moore's Federal Practice</u> § 36.10[8]); <u>In re Transcon. Gas Pipe Line Co., LLC</u>, No. 1:16-CV-02991-ELR, 2024 WL 4251915, at *5 (N.D. Ga. Aug. 5, 2024), report and recommendation adopted sub nom. <u>Transcon. Gas Pipe Line Co., LLC v. Various</u>

<u>Defendants</u>, No. 1:16-CV-02991-ELR, 2024 WL 4251267 (N.D. Ga. Aug. 29, 2024) (noting that "hypothetical questions are not within purview of Rule 36") (quoting <u>Storck USA, L.P. v. Farley Candy Co.</u>, No. 92 C 552, 1995 WL 153260, at *5 (N.D. Ill. Apr. 6, 1995)). The FDC Officials had no obligation to respond to Plaintiff's hypothetical in RFA No. 4, so the Court deny Plaintiff's Motion pertaining to RFA No. 4.

Even though the FDC Officials had no obligation to respond to RFA No. 4, they still in fact responded. (<u>See</u> Doc. 98 at 10–11). In their Response, the FDC Officials explained that: (1) Reiyn Keohane continues to receive hormones; and (2) Plaintiff failed to provide sufficient facts for the FDC Officials to determine whether the denial of cross-sex hormones to Keohane would violate the Eighth Amendment. (<u>Id.</u>). Furthermore, the FDC Officials admitted that "knowingly denying medically necessary treatment may violate the Eighth Amendment." (<u>Id.</u>). Because RFA No. 4 improperly seeks a hypothetical legal conclusion, and because the FDC Officials in any event "fairly respond[ed] to the substance of the matter," Fed. R. Civ. P. 36(a)(1), Plaintiffs are entitled to no relief as to RFA No. 4.

### B.    RFA No. 5

RFA No. 5 asked the FDC Officials to admit that, for Reiyn Keohane, "denial of the 'Accommodations' set forth in Section 5 of FDC Procedure 403.012 violates the Eighth Amendment to the U.S. Constitution." (Doc. 98 at 14). Because the FDC

Officials rescinded Procedure 403.012, and because the FDC Officials decline to provide 'social transitioning' accommodations to Keohane, RFA No. 5 asks the FDC Officials to admit their Eighth Amendment liability. (Doc. 77 at ¶¶ 4, 34). This request is improper, as Plaintiff admitted in the Motion. (Doc. 98 at 4) ("[t]he purpose of Rule 36 is 'to expedite the trial and to relieve the parties of the cost of proving facts *that will not be disputed at trial*") (quoting <u>Perez</u>, 297 F.3d at 1264) (emphasis added). The FDC Officials obviously dispute that their denial to Keohane of the 'Accommodations' provided for in former Procedure 403.012 violates the Eighth Amendment, and Plaintiff remains free to establish that it does—through facts and evidence at summary judgment or trial. Moreover, like the requests at issue in <u>Landberg</u> that asked a party to admit its liability, RFA No. 5 also improperly seeks a pure legal conclusion. 2008 WL 11334018 at *6. Thus, the FDC Officials had no obligation to respond to RFA No. 5, and, in any event, the Court should decline to try this case through a discovery motion.

As with RFA No. 4, the FDC Officials responded to and expressly denied RFA No. 5 even though they had no obligation to respond to it. Particularly, the FDC Officials pointed out that "[n]o evidence exists that, as to Plaintiff Keohane, the 'Accommodations' have been determined to be medically necessary." (Doc. 98 at 15). The FDC Officials then expressly denied the request: "the denial of non-medically necessary 'Accommodations' does not violate the Eighth Amendment.'"

(Id.).  The FDC Officials also pointed Plaintiff to the Eleventh Circuit's conclusion that Keohane previously failed to establish the FDC Officials' Eighth Amendment liability for declining to provide Keohane with "social transitioning" accommodations.  Keohane v. Fla. Dep't of Corr. Sec'y, 952 F.3d 1257, 1277–78 (11th Cir. 2020).  The FDC Officials' denial of RFA No. 5 "fairly respond[ed] to the substance" of the request, Fed. R. Civ. P. 36(a)(1), so the Court should decline to deem RFA No. 5 admitted or to grant Plaintiff any other relief as to RFA No. 4.

### C.    RFA No. 9

While RFA Nos. 9 and 10 do not expressly ask the FDC Officials to admit their Eighth Amendment liability, they do come close.  (See Doc. 98 at 16, 19).  Both of these deliberately-phrased requests ask the FDC Officials to admit facts they vigorously dispute.  Particularly, RFA No. 9 asks the FDC Officials to admit, apparently without limitation, that "[c]ross-sex hormone therapy may improve clinical outcomes for inmates with gender dysphoria without treating the etiologic basis for the condition."  (Doc. 98 at 16).

First, the FDC Officials explained that the etiologic basis of gender dysphoria is unknown, which makes it impossible for the FDC Officials to admit or deny whether cross-sex hormones "may improve clinical outcomes for inmates with gender dysphoria without treating the etiologic basis for the condition."  (Id.).  But, more importantly, the RFA seemingly applies to *all* "inmates with gender

dysphoria," regardless of whether or not medical staff determine that cross-sex hormones are medically necessary for a particular inmate. (See id.). Likewise, some inmates with gender dysphoria may not experience "improve[d] clinical outcomes" even while receiving cross-sex hormones, and other inmates with gender dysphoria may experience "improve[d] clinical outcomes" without receiving cross-sex hormones. (Id.). And, not all inmates with gender dysphoria in FDC custody are currently receiving cross-sex hormones, so the FDC Officials cannot answer the Request as to those individuals. (See id. at 17). In this respect, RFA No. 9 asks an impermissible hypothetical question. Landberg, 2008 WL 11334018 at *6. Plaintiff also failed to define or explain the term "improve[d] clinical outcomes," so it remains entirely unclear what "clinical outcomes" Plaintiff wants the FDC Officials measure for purposes of RFA No. 9. While one "clinical outcome" could be the degree of psychological distress purportedly caused by gender dysphoria—which cross-sex hormones may or may not improve—another "clinical outcome" could be a rise in testosterone levels in the blood, for example, which could be argued as an improvement for an individual receiving testosterone. The FDC Officials thus responded to RFA No. 9 to the best of their ability, and no relief is warranted.

Whether the Eighth Amendment obligates the FDC Officials to provide cross-sex hormones to inmates with gender dysphoria—and under what circumstances—remains a central issue in this case. The Court should not allow Plaintiff to establish

the fact by way of a discovery motion.  Point Blank Sols., 2011 WL 742657, at *6.

The Court should deny Plaintiff's Motion as to RFA No. 9.

    **D.**    **RFA No. 10**

    Like RFA No. 9, RFA No. 10 asks the FDC Officials to admit that "[t]he accommodations set forth in Section 5 of FDC Procedure 403.012 may improve clinical outcomes for inmates with gender dysphoria without treating the etiologic basis for the condition."  (Doc. 98 at 19).  Again, as with RFA No. 9, the FDC Officials explained that the etiologic basis of gender dysphoria remains unknown, which makes it impossible for the FDC Officials to admit or deny that "Accommodations" may "improve clinical outcomes for inmates with gender dysphoria without treating the etiologic basis for the condition."  (Doc. 98 at 19).  And, as with RFA No. 9, RFA No. 10 also asks an impermissible hypothetical question, because no inmates in FDC custody with gender dysphoria receive "Accommodations."  (See Doc. 98 at 19–20).  The FDC Officials therefore cannot admit or deny whether "Accommodations" "may improve clinical outcomes" for these individuals.

    Like RFA No. 9, RFA No. 10 also thwarts the purpose of Rule 36.  The Court should therefore decline to deem RFA No. 10 admitted or to order any other relief as to RFA No. 10.  Plaintiff admitted that RFAs serve as "'a means of avoiding the necessity of proving issues with the requesting party will ***doubtless be able to***

*prove.*'"  (Id.) (quoting <u>Odom v. Roberts</u>, 337 F.R.D. 347, 351 (N.D. Fla. 2020)) (emphasis added).  The FDC Officials dispute that the Eighth Amendment obligates them to provide "Accommodations" to inmates with gender dysphoria.  <u>See</u> <u>Keohane</u>, 952 F.3d at 1277–78.  The Court should require Plaintiff to prove the related assertion that "Accommodations" improve clinical outcomes through expert evidence at summary judgment or trial and should not establish the fact through a discovery motion.  <u>Point Blank Sols.</u>, 2011 WL 742657, at *6.  Plaintiff will not "doubtless be able to prove" the assertion in RFA No. 10 at trial. <u>Odom</u>, 337 F.R.D. at 351.  <u>See</u> <u>Keohane</u>, 952 F.3d at 1277–78 (recognizing the "disagreement among the testifying professionals about the medical necessity of social transitioning to Keohane's treatment").  The Court should deny Plaintiff's Motion as to RFA No. 10.

## CONCLUSION

For the reasons explained above, the Court should deny Plaintiff's Motion in its entirety.

Dated: August 18, 2025

*/s/ Kenneth S. Steely*

Kenneth S. Steely
*One of the Attorneys for the FDC Officials*

Kenneth S. Steely (Florida Bar #84714)
William R. Lunsford
Megan M. Everett
**BUTLER SNOW LLP**

200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com
megan.everett@butlersnow.com

Daniel A. Johnson (Florida Bar No. 91175)
**FLORIDA DEPARTMENT OF CORRECTIONS**
501 South Calhoun Street
Tallahassee, FL 32399-2500
Telephone: (850) 717-3605
dan.johnson@fdc.myflorida.com

*Attorneys for the FDC Officials*

## **CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I hereby certify that this Notice of Supplemental Authority contains 3,461

words and does not exceed 8,000 words as required by Local Rule 7.1(F).

*/s/ Kenneth S. Steely*

Kenneth S. Steely
*One of the Attorneys for the FDC Officials*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this the 18th day of August, 2025:

Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Li Nowlin-Sohl*
Leslie Cooper
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org

Michelle Fraling*
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
915 15th Street NW, 6th Floor
Washington D.C., 20005
Tel: (917) 710-3245
michelle.fraling@aclu.org

Anthony J. Anscombe*
Laurel C. Taylor*
**STEPTOE LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
Tel: (312) 577-1300
Fax: (312) 577-1370
aanscombe@steptoe.com
lataylor@steptoe.com

*Pro Hac Vice*

*Attorneys for Plaintiffs*

*/s/ Kenneth S. Steely*
*Of Counsel*

18