IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | | |
|---|---|---|
| REIYN KEOHANE, *et al.*, | : | |
| | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | Case No. 4:24-cv-434-AW-MAF |
| | : | |
| RICKY D. DIXON, in his official capacity as Secretary of the Florida Department of Corrections; *et al.*, | : | |
| | : | |
| *Defendants*. | : | |

**PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS PURSUANT TO SUBPOENA TO CENTURION**

By and through undersigned counsel, Plaintiffs Reiyn Keohane, et al. ("Plaintiffs") respectfully move this Court to compel third-party Centurion of Florida, LLC ("Centurion") to fully and promptly produce documents in response to Plaintiffs' Subpoena to Produce Documents. Months of negotiations regarding custodians and search terms have produced no more than a narrow agreement by Centurion to produce records from two custodians, using a grossly underinclusive set of seven search terms. Centurion has not articulated any basis for its restrictive approach. Plaintiffs seek highly relevant documents relating to Centurion's interactions with the Florida Department of Corrections ("FDC"), documents

1

regarding the medical necessity of hormone therapy and social accommodations, and records relating to Centurion's provision of care to Plaintiffs.

## I.   STATEMENT OF FACTS

Centurion Health Networks is one of the largest providers of correctional healthcare in the United States. Its website proclaims: "[I]nmates are entitled to the same level of healthcare as people outside of correctional facilities."[1] On June 29, 2023, Centurion entered into a five-year contract with the FDC to provide healthcare services to the over 89,000 people in FDC custody through June 30, 2028. The value of the contract is $2.819 billion. This year's payment to Centurion is $575.5 million.

Plaintiffs—representatives of a putative class—are transgender inmates incarcerated within the FDC who suffer from gender dysphoria and allege that a recent policy change promulgated by FDC violates their Eighth Amendment rights, as well as the rights of similarly situated inmates.

Each of the Plaintiffs has received healthcare from professionals employed by Centurion, including for their gender dysphoria. The medical necessity of treatment is a lynchpin of Plaintiffs' case, so it would be hard to overstate the importance of Centurion's records.

On March 12, 2025, Plaintiffs served a subpoena on Centurion pursuant to Federal Rule of Civil Procedure 45. *See* **Exhibit A**, the "Subpoena." The Subpoena

---

[1] See "Answers to All Your Questions" at https://teamcenturion.com/ (last visited August 20, 2025).

was properly issued for the United States District Court for the Northern District of Florida, with a return date of April 11, 2025, and sought twelve categories of documents. The documents requested include Plaintiffs' medical records, documents relied upon by Centurion personnel in making treatment decisions, documents relating to social accommodations, documents relating to Centurion's adoption or rejection of the recommendations of the National Commission on Transgender and Gender Diverse Healthcare in Correctional Settings, documents relating to the implementation of FDC's policies for the treatment of gender dysphoria, communications with FDC regarding policies, variances, and Plaintiffs, and contracts between Centurion and Defendants. *See* **Exhibit B**, "Schedule A."

On March 23, 2025, Centurion requested an extension of time to respond to the Subpoena, to which Plaintiffs agreed, extending the response date to April 25, 2025. On that date, Centurion served a written response which simply objected to ***all*** of Plaintiffs' requests, and produced no documents other than its contracts with FDC. Centurion contended that the requests were overly broad and unduly burdensome, that some of the documents had already been produced by another party, and that many of the requests were vague. *See* **Exhibit C**, "Third-party Centurion of Florida, LLC's Responses to Plaintiffs' Subpoena." Centurion offered to meet and confer on its responses.

Over the ensuing three months, Plaintiffs met and conferred with Centurion

3

on multiple occasions. On May 6, 2025, the Parties conferred broadly regarding Centurion's response and objections to each of the Requests. Plaintiffs explained the relevance of the Requests and why the requested documents were important. During this discussion, Centurion identified two potential custodians—Dr. Lay (Centurion's Statewide Medical Director) and Dr. Watkins-Ferrell (Centurion's Statewide Mental Health Director)—and noted its willingness to create a list of search terms and custodians and work with Plaintiffs to develop a final list that both parties were comfortable with. The Parties also discussed Centurion's software's ability to run searches for responsive documents, and the inclusion of text messages within the document production. Centurion stated it would look into text communications and the search capabilities of its software platforms and would report back. Following this meeting, Centurion produced some invoices, but these only dated back to July 2023, while Plaintiffs requested all documents dating back to 2020.

On May 28th, 2025, Plaintiffs shared a list of 27 proposed search terms with Centurion.[2] Plaintiffs narrowly tailored these terms to target responsive documents specific to the care that Centurion provides to inmates with gender dysphoria.

---

[2] **Proposed Search Terms**: "bra pass", "wear make-up", "wear makeup", "masculine", "male-stereotypical", "male genitalia", "used her genitals", tavares@fdc.myflorida.com, aloka.joshi@fdc.myflorida.com, clayton.weiss@fdc.myflorida.com, kalem.santiago@fdc.myflorida.com, danny.martinez@fdc.myflorida.com, tim.fitzgerald@fdc.myflorida.com, suzonne.kline@fdc.myflorida.com, katy.fabian@fdc.myflorida.com, "MDST", "multidisciplinary services team", "GDRT", "gender dysphoria review team", "GDVT", "GD variance team", "GD diagnostic review", "HSB 15.05.23", "403.012", "effective 9/30/2024", "transgender", and "transexual." These terms are narrow, specific, and targeted to the issues in this case.

On June 13, 2025, the Parties conferred again to address outstanding issues from the previous meeting, document production, and the list of search terms and custodians. Prior to the meeting, Centurion provided a hit count report on the proposed search terms, which resulted in 167,239 hits. During this meeting, Plaintiffs suggested ways in which to lower the hit count. For example, over 146,000 of the hits were for the FDC email addresses. This meeting did not yield an agreement on custodians, but Centurion did agree to work on identifying mental health providers by reviewing small samples for names of possible custodians. Plaintiffs suggested starting with the healthcare providers that have provided care to the named Plaintiffs.

On July 11, 2025, the Parties met again. Centurion stated that it had issues identifying custodians, and the process was a "big headache." Centurion confirmed that it had not begun reviewing documents and that its previously furnished document hit-counts were for only two custodians, Dr. Lay and Dr. Watkins-Ferrell. Plaintiffs suggested running hit counts for more custodians, but Centurion said it was not an easy task as it could not search multiple names concurrently. Centurion suggested Plaintiffs provide names or titles that would help it narrow the custodian search.

On July 17, 2025, Plaintiffs sent a targeted list of 19 additional custodians to Centurion.[3] Each of these custodians had been involved in recommending people for variances for hormone therapy under the health bulletin that Plaintiffs are challenging (HSB 15.05.23), some had also been responsible for providing health care to the named Plaintiffs, and one is Centurion's Statewide Pharmacy Director.

On July 24, 2025, Parties met again. During this meeting Centurion stated it would not agree to the list of custodians provided by Plaintiffs on July 17, 2025. Instead, it would only produce records for the two custodians it had already proposed on May 6, 2025 (Dr. Lay and Dr. Watkins-Ferrell). Centurion further restricted its search to a mere four search terms[4] (and stated they were considering one or two more), for a period starting on May 1, 2023, not for the year 2020 as requested.

Plaintiffs followed up via email on July 25, 2025, offering to further narrow the list of custodians and requesting additional search terms.[5] Per Centurion's prior hit report, the additional 26 search terms Plaintiffs requested would have added only

---

[3] 19 Suggested Custodians: (1) Dr. Aloka Joshi; (2) Dr. Angel Cortes Robels; (3) Dr. Ana Zuniga; (4) Dr. Rafael Tapia; (5) Sheila Mork; (6) A. Tavares; (7) Pamela Williams; (8) Jillian Martell; (9) Abiola Damola; (10) C. Warren; (11) A. Cancio Vega; (12) J. Bello; (13) Dr. B. Holland; (14) Sandy Springs; (15) Amber Akins; (16) Jackie Ali; (17) A. Smart; (18) J. de Jesus; (19) Timothy Rakas.
[4] The four search terms were: "gender dysphoria"; "gender affirming; "gender dysphoria review team"; and "transgender."
[5] The additional terms were: "GD inmate"; "GD diagnosis"; "social transitioning"; "cross sex"; "crosssex"; "cross-sex"; "alternate canteen items"; "female standards"; "female hair"; "female grooming"; "female-stereotypical"; "female undergarments"; "female canteen"; "female clothing"; "bra pass"; "wear make-up"; "wear makeup"; "male-stereotypical"; "male genitalia"; "GDRT"; "GDVT"; "GD variance team" "GD diagnostic review"; "HSB 15.05.23"; "403.012"; "effective 9/30/2024."

6

3,333 hits. Centurion added only three of the terms[6] ultimately running seven search terms from a period starting May1, 2023 against the two custodians:

1. Gender dysphoria
2. Gender affirming
3. Cross sex
4. Gender dysphoria review team
5. Transgender
6. 15.05.23
7. 403.012

Centurion states that, with these limited parameters, it will be reviewing about 6,600 hits.

To date Centurion has not produced any more documents. Had Centurion stated in May that it would produce records for only two custodians, using only these seven search terms, Plaintiffs would have filed this motion months ago.

## II.   ADDITIONAL DISCOVERY SOUGHT

Plaintiffs' Subpoena seeks ESI and text messages for 12 categories of highly relevant documents. *See* **Exhibit B**. As is typical in the context of ESI, the collection and production of responsive materials calls for the identification of custodians likely to have responsive materials, and the application of search terms likely to hit upon materials responsive to Plaintiffs' requests. Centurion's agreement to produce documents from two custodians, using seven search terms, will not come close to giving Plaintiffs the discovery to which they are entitled.

---

[6] The three additional search terms were: "cross sex"; "15.05.23"; and "403.012."

**Custodians**: The two custodians proposed by Centurion are certainly appropriate, given their supervisory roles and contact with FDC. However, Plaintiffs have not interacted with these individuals, and neither Dr. Lay nor Dr. Watkins-Ferrell have provided treatment to any Plaintiff or been involved in the variance process. In the interest of compromise, Plaintiffs are willing to further narrow the list of custodians to the following individuals, who either treated Plaintiffs (and other inmates with gender dysphoria who are a part of the putative class) and have been involved in the variance process, or who have unique knowledge about a specific relevant issue:

1. **Dr. Aloka Joshi** (Mental Health Provider for several inmates with gender dysphoria also listed on Diagnostic Review and Treatment Recommendations ("DRTs")[7]
2. **Dr. Angel Cortes Robels** (Medical Director listed on several of the DRTs)
3. **Dr. Ana Zuniga** (Clinical Psychologist listed on several of the DRTs)
4. **Dr. Rafael Tapia** (Psychological Services Director Psychologist listed on several of the DRTs)
5. **Sheila Mork** (Mental Health Clinical Director listed on several DRTs)
6. **A. Tavares** (Mental Health Provider for individuals with gender dysphoria also listed on DRTs)
7. **Pamela Williams** (Registered Nurse listed on several of the DRTs and records of Plaintiff Sasha Mendoza)
8. **Timothy Rakas** (Centurion Statewide Pharmacy Director, and knowledgeable about hormone medications)
9. **Dr. John Lay** (Centurion's Statewide Medical Director)
10. **Dr. Peggy Watkins-Ferrell** (Centurion's Statewide Mental Health Director)

---

[7] The DRTs are the documents submitted to the Gender Dysphoria Variance Team to request approval for a variance for hormone therapy.

8

**Search Terms:**

The seven search terms agreed to by Centurion are logical terms, but unduly restrictive. Indeed, many of these terms have various iterations that will have been used in the relevant documents. For example, "Gender Dysphoria Review Team" also appears as "GDRT"; "cross sex" also appears as "crosssex" and "cross-sex"; "gender dysphoria" as "GD"; etc. Centurion's list also does not contain any terms that will identify communications relating to social transition accommodations or physical appearance, a key issue in this case. For these reasons, Plaintiffs request that the following additional search terms be applied to records of the ten custodians identified above:

1. GD inmate
2. GD diagnosis
3. social transitioning
4. cross sex
5. crosssex
6. cross-sex
7. alternate canteen items
8. female standards
9. female hair
10. female grooming
11. female-stereotypical
12. female undergarments
13. female canteen
14. female clothing
15. bra pass
16. wear make-up
17. wear makeup
18. male-stereotypical
19. male genitalia
20. GDRT

21. GDVT
22. GD variance team
23. GD diagnostic review
24. effective 9/30/2024

The requested search terms and custodians will yield vital documents that will allow Plaintiffs to better understand the provision of medical care and treatment within the FDC facilities, and more specifically regarding Gender Dysphoria treatment. They are also very targeted and result in reasonable hits, adding only 2,809 hits for these two custodians (and presumably modest hits for other custodians as well).

Centurion's primary rationale for limiting its search terms seems to be related to the limitations of its internal system and the fact that it is a third-party. However, given that Centurion is the exclusive provider of the healthcare offered throughout the FDC, the information and documents it possesses are directly relevant to this present litigation and contain information that cannot be obtained elsewhere. Moreover, Centurion employees—including several individuals listed as proposed custodians—are expected to be deposed, making it critical to obtain these documents. The burden of responding to this subpoena is trivial compared to the scale of Centurion's operations, and revenue generated by Centurion under its agreement to be the exclusive medical provider for Florida Department of Corrections.

To prevent further delay Plaintiffs respectfully move to compel Centurion to comply with the Subpoena pursuant to Rule 45(g) and requests the Court order immediate production of responsive documents following the expanded list of search terms and custodians by September 14, 2025.

### III.   STANDARDS

Local Rule 26.1(D) states that a motion to compel "must frame the dispute clearly and, if feasible, must, for each discovery request at issue: (1) quote the discovery request verbatim; (2) quote each objection specifically directed to the discovery request; and (3) set out the reasons why the discovery should be compelled."

Federal Rule of Civil Procedure Rule 45 governs subpoenas served on third-parties. As with any discovery in a civil matter, the information sought in the subpoena must be relevant to the case. *See Westchester Surplus Lines Ins. Co. v. Portofino Masters Homeowners Assoc., Inc.,* 345 F.R.D. 532, 536 (N.D. Fla. 2024) ("The scope of discovery under Rule 45 is the same as the scope of discovery under Federal Rule of Civil Procedure 26.") (internal citations omitted). Pursuant to Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In determining whether discovery is relevant, the Court must consider the allegations, claims, and defenses raised. *See*

*Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (citing Fed. R. Civ. P. 26(b)(1)).

Additionally, the party issuing the subpoena must take reasonable steps to avoid imposing undue burden or expense on the subpoenaed party. See Fed. R. Civ. P. 45(d)(1). However, while the issuers of the subpoena have the burden to establish relevance, the party resisting discovery has the burden of demonstrating that compliance with the subpoena is unduly burdensome. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-MD-2885, 2020 WL 6438614, at *5 (N.D. Fla. Nov. 2, 2020); *see also John v. Keller Williams Realty, Inc.*, No. 6:19-cv-1347-Orl-40DCI, 2019 WL 7482200, at *2 (M.D. Fla. Nov. 19, 2019) ("Claims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome.").

IV. **ARGUMENT**

    A. **The Documents Requested from Centurion are Relevant to Plaintiffs' Claims**

The documents and communications in Centurion's possession are directly relevant to the claims at issues in this case. "A Rule 45 subpoena should be enforced unless it is clear that the evidence sought can have no possible bearing on the issues." *Classic Soft Trim, Inc. v. Albert*, No. 6:18-CV-1237-ORL-78-GJK, 2020 WL 6730978, at *2 (M.D. Fla. Oct. 8, 2020) (quotation marks and citation omitted). Centurion is FDC's contracted medical provider to inmates in FDC custody,

meaning all medical care for inmates, including that for gender dysphoria, is administered by Centurion. In fact, on September 30, 2024, a representative from Centurion announced to Plaintiff Reiyn Keohane and other inmates that their treatment for gender dysphoria would be changing, "up to and including hormone therapy." *See,* ECF No. 1, ¶60. Centurion has been involved in the development of FDC's new policy and has been FDC's partner in implementing this policy since its release, and thus, documents in Centurion's possession are relevant to the claims at issue. *See Trahan v. Sandoz Inc.*, No. 3:13-CV-350-J-34MCR, 2015 WL 12857087, at *2 (M.D. Fla. May 22, 2015) (granting motion to compel third-party subpoena and holding that "litigation-related documents sought in the subpoena, including the claim file, confidentiality agreements and claim correspondence, are relevant to [Plaintiffs'] claims or could lead to the discovery of admissible evidence."); *see also*, *Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-CIV-24363, 2018 WL 1456614, at *6 (S.D. Fla. Mar. 23, 2018) (holding that documents related to direct communications between plaintiff and third party related to defendants' action against plaintiff are relevant to the case.)

Moreover, Centurion is not merely a disinterested third-party in this case but rather has been directly involved in and "paid to perform…the policies at issue in the case at bar." *Handorf v. Milliman, Inc.*, 731 F. Supp. 3d 1077, 1084 (N.D. Iowa 2024) (granting motion to compel and holding that where a third party is "directly

13

involved in the issues before the Court…any concern about imposition on a third party is diminished.") Centurion's involvement in this case is tied to the underlying dispute, i.e., FDC's health bulletin aimed at curtailing transgender inmates' access to hormone therapy and other accommodations. Centurion has been and will continue to be the party that implements these policies, and thus, Centurion's involvement is not tangential and the documents in its possession are relevant to the case.

Moreover, at no point during the parties' discussions has Centurion claimed that the requested documents were not relevant to the case. This is because it has no grounds to do so. Each document request in the subpoena is narrowly tailored to the specific claims at issue in this case, limited to a specific time period, and only seeks information that would be in Centurion's possession. Thus, Plaintiffs' requests are relevant to this action.

### B. Centurion Has Failed to Show that the Requested Discovery is Unduly Burdensome

Plaintiffs' Requests and proposed custodians and search terms are narrowly tailored to the needs of this case. This is a class action lawsuit involving 180 inmates; requesting Centurion, the primary healthcare provider for all these inmates, to run 31 search terms against 10 custodians is more than reasonable and is not overly burdensome. Moreover, each of the search terms is targeted to the relevant issues and is unlikely to yield false positives. *See In re Novo Nordisk Sec. Litig.*, 530 F.

Supp. 3d 495, 505 (D.N.J. 2021) (granting addition of 10-15 custodians in response to subpoena request).

Plaintiffs have taken every measure to reduce the burden on Centurion, including by providing a limited number of search terms for Centurion's ESI and heavily curtailing the number of custodians whose information Centurion must search. If a party objects to a Rule 45 subpoena, it must demonstrate that compliance presents an undue burden or would require the disclosure of privileged or protected information. *Fadalla v. Life Auto. Prod., Inc*., 258 F.R.D. 501, 504 (M.D. Fla. 2007). Centurion has not and cannot meet this burden.

While Centurion does not dispute the relevance of the information in its possession, to avoid its obligations under the subpoena, Centurion has, despite multiple meet and confers, adamantly refused to search the ESI of potential custodians identified by Plaintiffs. Plaintiffs have not asked Centurion to search the ESI of every single Centurion employee, instead, Plaintiffs provided Centurion with a short and targeted list of 19 custodians, each of whom have been involved in providing healthcare to transgender inmates and the hormone therapy variance process, have previously offered to further narrow the list, and now propose to narrow that list to the 10 custodians requested above. Plaintiffs have also limited the ESI searches to 31 specific search terms. Thus, the burden on Centurion is minimal with respect to Plaintiffs' requests. *See Am. Airlines, Inc. v. In Charge*

*Mktg., Inc.*, No. 2:10-CV-00467-JES-SPC, 2012 WL 2116349, at *2 (M.D. Fla. June 11, 2012) (holding that plaintiff's "requests fail to burden [third-party] because it pertains to a small period of time and the breadth of the document request is relatively small.")

Moreover, Centurion has made no showing that the requested discovery is unduly burdensome. The information sought is not duplicative and Centurion is the only source that Plaintiffs can receive the requested information from. *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 504 (D.N.J. 2021) (granting motion to compel subpoena where "internal communications between non-parties…[were] unlikely to be in the possession of another party to the litigation.) Moreover, a generalized assertion of undue burden is not enough.  A more particularized argument is required, such as providing the "money, time, work-hours, or other cost that [the party] faced in complying with the subpoena." *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1306-07 (11th Cir. 2018).  Centurion has made no such showing, and has only made blanket assertions of burden without providing any explanation as to how the addition of 8 custodians and a few additional search terms makes the burden on Centurion "undue." *See Smartmatic USA Corp. v. Montgomery*, No. 2:23-MC-5-JLB-KCD, 2023 WL 4662241, at *4 (M.D. Fla. July 20, 2023) (granting motion to compel where third party failed to demonstrate "the burden or expense compliance would impose on him.").

The only argument Centurion has made regarding its burden is that its systems cannot run multiple searches at the same time. However, given the importance of the records in Centurion's possession, the limitations of its own systems is not a valid reason to block crucial discovery. Courts have repeatedly rejected arguments that the complexity or inefficiency of a party's record-keeping system can justify noncompliance with discovery rules. In *Culliver*, the court rejected a relevant non-party's burden argument noting that it was "not a typical disinterested party given its intimate involvement in the underlying events" and that it should have "anticipated that litigation related to the [underlying event]," and found the fact that it "failed to keep relevant information in an easily retrievable manner…unavailing." *Culliver v. Ctr. for Toxicology & Env't Health LLC*, No. 3:21-CV-4942-MCR-GRJ, 2022 WL 475185, at *5-6 (N.D. Fla. Feb. 16, 2022) (holding that non-party did not meet "its burden under Rule 45 or Rule 26 to withhold the discovery Plaintiff seeks"); *see also*, *Automated Merch. Sys. Inc. v. Crane Co.*, 279 F.R.D. 366 (N.D. W. Va. 2011)

> [D]efendant may not excuse itself from compliance with Rule 34 by utilizing a system of record-keeping which conceals rather than discloses relevant records or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition. To allow a defendant whose business generates massive records to frustrate discovery, by creating an inadequate filing system, and then claiming undue burden, would defeat the purposes of the discovery rules.

17

*Id.* at 375.

The circumstances here are no different. As discussed above, Centurion is not a disinterested third-party and should not be allowed to sidestep its discovery obligations on the basis that its systems are antiquated and not designed to run basic searches across a limited number of custodians. Thus, Centurion has failed to demonstrate that compliance with Plaintiffs' subpoena presents an undue burden.

Plaintiffs respectfully request, therefore, that the Court grant their motion.

## V. CONCLUSION

For these reasons, Plaintiff requests that the Court compel Centurion to run the 31 search terms against the 10 custodians identified above and produce responsive documents by September 14, 2025.

## CERTIFICATION UNDER LOCAL RULE 7.1 (B)

The undersigned counsel certifies that Plaintiffs' Counsel attempted to comply with the attorney-conference requirement of Rule 37 (a) (1) and Local Rule 7.1(B) but was unable to resolve the issues addressed in this motion.

## CERTIFICATE OF WORD COUNT

The undersigned counsel certifies that, pursuant to Local Rule 7.1(F), the total word count in this motion is 4254 words.

Dated: August 20, 2025

Respectfully submitted,

/s/ Daniel B. Tilley
Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
**American Civil Liberties Union Foundation of Florida**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Anthony Anscombe*
Darlene Alt†
Laurel Taylor*
**Steptoe LLP**
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Tel. (312) 577-1300
aanscombe@steptoe.com
dalt@steptoe.com
lataylor@steptoe.com

*Counsel for Plaintiffs*

Li Nowlin-Sohl (Admitted in Washington only)*
Leslie Cooper
**American Civil Liberties Union Foundation**
125 Broad St.
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org

Michelle Fraling*
**American Civil Liberties Union Foundation**
915 15th Street NW, 6th Floor
Washington DC, 20005
Tel: (917) 710-3245
michelle.fraling@aclu.org

\* *Admitted pro hac vice*
† *Pro hac vice application forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this the 20th day of August, 2025.

I further certify that a copy has been served on counsel for third-party Centurion of Florida, LLC, Jacob Hanson, via email at: jhanson@bradley.com.

Jacob Hanson (FBN 91453)
**BRADLEY ARANT BOULT CUMMINGS LLP**
1001 Water Street, Suite 1000
Tampa, Florida 33602
Tel: (813) 559-5500
Primary Email: jhanson@bradley.com
Secondary Email: tabennett@bradley.com

*Counsel for Centurion of Florida, LLC*

/s/ Daniel B. Tilley