IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**REIYN KEOHANE, et al.,**

      **Plaintiffs,**

**v.**                                   **Case No. 4:24-cv-434-AW-MAF**

**RICKY D. DIXON, in his official capacity
as Secretary of the Florida Department of
Corrections, et al.,**

      **Defendants.**

_____/

## ORDER GRANTING IN PART MOTION TO CERTIFY A CLASS

Plaintiffs, inmates with gender dysphoria, sued to challenge the Department of Corrections' policies regarding medical care. They seek class certification, which Defendants oppose. *See* ECF Nos. 78, 83, 91.[1] (I will refer to Defendants collectively as the "Department.") Neither side requested a hearing—evidentiary or otherwise—and I conclude no hearing is necessary. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1099 (11th Cir. 1996) (noting that evidentiary hearings are not always necessary to resolve class-certification motions). Having carefully considered the parties' written

---

[1] The parties also submitted several notices of supplemental authority and responses. *See* ECF Nos. 92, 95, 103, 120, 121, 122.

arguments, I now grant class certification as to one aspect of Plaintiffs' claim (social accommodations) and deny it as to the other (hormone therapy).[2]

## I.

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Rule 23(a) identifies four prerequisites to class certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical

---

[2] As previously explained, the term "social accommodations" means allowing inmates with gender dysphoria to adhere to grooming standards that would otherwise be prohibited based on sex (*e.g.*, allowing male inmates with gender dysphoria to wear long hair and makeup) and allowing access to undergarments and canteen items typically reserved for the opposite sex. ECF No. 55 at 5-6, 6 n.5. As also previously noted, Plaintiffs present a single Eighth Amendment deliberate-indifference claim that features two components: hormone treatment and social accommodations. *See id.* at 5-6. The parties have consistently made separate arguments regarding the two components, and I addressed the two components separately at the preliminary-injunction stage. *Id.* In *Keohane I*, the Eleventh Circuit similarly addressed the two components separately, even though they were part of a single deliberate-indifference claim. *See Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1262 (11th Cir. 2020); *Keohane v. Fla. Dep't of Corr. Sec'y*, Case No. 4:16-cv-511, ECF No. 1 (underlying complaint with a single count).

of the claims or defenses of the class; and (4) the representative parties
will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). A plaintiff cannot rely exclusively on his complaint's allegations to show these prerequisites. *See Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888, 891 (11th Cir. 2023). Instead, a plaintiff must make an affirmative showing that class certification is proper, and he must prove the necessary underlying facts. *See Wal-Mart Stores*, 564 U.S. at 350. In other words, "[t]he party seeking class certification has a burden of *proof*, not a burden of pleading." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016).

There are three types of class actions, each with unique requirements. Fed. R. Civ. P. 23(b). Plaintiffs seek to bring the second kind, which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* R. 23(b)(2).

**A.**

Plaintiffs have not shown that the court should certify a class relating to hormone treatment because they have not shown that any Plaintiff has standing to pursue such a claim. *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987) (noting that "any analysis of class certification must begin with the issue of standing"); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000) (noting that standing intertwines with the class certification analysis because

"there cannot be adequate typicality between a class and a named representative unless the named representative has individual standing to raise the legal claims of the class").

The "irreducible constitutional minimum of standing" requires a plaintiff to show a concrete injury traceable to the defendant and redressable by the court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). When a plaintiff seeks only prospective relief, as Plaintiffs here do, they must show future injury that is "certainly impending." *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409-10 (2013). Here, the Department argues Plaintiffs lack standing to challenge hormone-treatment policies because they either continue to receive hormone treatment or have not shown that the policy keeps them from receiving hormone treatment. ECF No. 83 at 16-20. Plaintiffs, on the other hand, assert they have standing because they risk losing their hormone treatment under the new policy. ECF No. 91 at 3-5. The Department has the better argument.

It is undisputed that all Plaintiffs but one (Diamond) are receiving hormone treatment and have been for some time. *See* ECF No. 66 (FAC) ¶¶ 4-5, 7-8; ECF No. 83-1 ¶¶ 4-5, 8-10. Plaintiffs contend they nonetheless face imminent withdrawal of that treatment.[3] But they have not shown this to be so. At the motion-to-dismiss stage

---

[3] The declarations of two named Plaintiffs mention that they are receiving hormone gel instead of hormone injections, which they contend is less effective. *See*

(addressing an earlier complaint), I concluded Plaintiff Keohane had alleged enough to show standing. But at this stage, Plaintiffs must do more than make allegations. And they have not met their burden of proving an imminent withdrawal of hormone treatment.

Plaintiffs try to place the burden on the Department. They say the Department issued variances allowing hormones after the case began, meaning the Department is arguing about mootness instead of standing. ECF No. 91 at 5-6; *see also Tanner Advert. Grp., LLC v. Fayette County*, 451 F.3d 777, 785 (11th Cir. 2006) ("The doctrine of mootness provides that the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." (cleaned up)). And it is a defendant's burden to show mootness. *See FBI v. Fikre*, 601 U.S. 234, 243 (2024) ("In all cases, it is the defendant's 'burden to establish' that it cannot reasonably be expected to resume its challenged conduct—whether the suit happens to be new or long lingering, and whether the challenged conduct might recur immediately or later at some more propitious moment." (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022)). But

---

ECF No. 78-6 ¶ 10; ECF No. 78-7 ¶ 12. But Plaintiffs' complaint does not challenge policies related to the mode of hormone delivery. Further, nothing in these declarations ties the mode of delivery to the policy at issue. *See, e.g.*, ECF No. 78-6 ¶ 10 (discussing change from injections to gel that occurred before implementation of HSB 15.05.23).

Plaintiffs' failure to show a concrete and particularized injury is not based on what happened after the case began. Plaintiffs have not proven that at the case's outset—or at any time since—any of them faced an imminent threat of injury. Again, all but Diamond currently receive hormones, and Plaintiffs have not shown any likelihood that this will imminently change because of the policy.

For one thing, although the Department issued the challenged policy (Health Services Bulletin 15.05.23, or "HSB") shortly before this case began, the Florida Statute the HSB references (Section 286.311) existed since 2023. It is undisputed that the Department provided hormone treatment despite that Florida law, so the HSB's reference to that law hardly shows a certainly impending withdrawal of hormone treatment. *See* FAC ¶¶ 4-5, 7-8 (acknowledging that the Department provided hormone treatment while § 286.311 was in effect). Additionally, Plaintiffs point to HSB language stating that "[i]n rare instances deemed medically necessary, a variance may be approved to permit the use of cross-sex hormones to treat an inmate's Gender Dysphoria." *See id.* ¶ 38; *see also* ECF No. 91 at 3. But as a previous order explained, the requirement for a variance—or the "rare instances" language—does not establish a blanket ban on hormone treatment. *See* ECF No. 55 at 6-14. Similarly, it does not demonstrate that the denial of hormone treatment (or the denial of variances seeking hormone treatment) is certainly impending. Even the Department's previous policy authorized hormone treatment if "medically necessary

and not contraindicated for any reason." ECF No. 4-2 at 5-6; *see also* ECF No. 4-3 at 5. Similarly, the challenged HSB provides that "[a]ll inmates diagnosed with gender dysphoria will be individually evaluated," and the Department reiterated that it would assess everyone individually. *See* ECF No. 4-4 at 3; ECF No. 55 at 7-8 (discussing testimony of Dr. Martinez). That the new policy *could* impact individual assessments for *some* inmates is not enough. In short, Plaintiffs have demonstrated nothing more than speculation that the HSB could cause them to lose hormone treatment.

As for delays in receiving hormone treatment, no named Plaintiff can show an injury traceable to the challenged policy—or an injury redressable by an injunction prohibiting its enforcement.[4] The First Amended Complaint alleges that "the policy mandates a significant delay in care regardless of an individual's medical need to start hormone therapy or prior treatments," and it suggests that new inmates who were receiving hormone treatment before incarceration "would be required to discontinue hormone therapy for at least one year under the new policy." FAC ¶ 40; *see also* ECF No. 4-4 at 5 (HSB at VII.A.5: "An established pattern of attendance

---

[4] The parties dispute whether Plaintiffs' claim includes a challenge to the delay in providing hormone treatment based on the Department's policy or whether it only includes a challenge to the denial or discontinuation of hormone therapy. *See, e.g.*, ECF No. 83 at 19-20, 18 n.3; ECF No. 91 at 5 n.2. But as explained below, Plaintiffs have not demonstrated that class resolution would be appropriate as to a delay challenge either way.

and participation in mental health treatment for at least one year is required prior to the consideration of any variances."); *id*. at 7 (HSB at IX.C.1: "Variances should only be considered after completion of the treatment protocol in Section VII."). And Plaintiffs seek an injunction that enjoins, among other things, "enforcing Section 286.311 and Health Bulletin 15.05.23 or any other policy that . . . delays hormone therapy for inmates with gender dysphoria based on requirements that are unrelated to their medical needs." FAC at 36-37.

Plaintiff Sheila Diamond is the only Plaintiff alleging delay. Diamond received a "provisional diagnosis of gender dysphoria at Jackson Correctional Institution" in 2022. ECF No. 78-5 ¶ 12. After a "year-long evaluation process," psychologists finally confirmed the diagnosis and recommended hormone treatment. *Id.* ¶ 13. The recommendation needed approval "by the Gender Dysphoria Review Team," *id.* ¶ 14, but there was no decision on the recommendation, *id.* ¶ 15. The Department acknowledges Diamond is still not receiving hormones and has not been finally evaluated. ECF No. 83-1 ¶ 9. This is enough to show a concrete Article III injury, but Plaintiffs have not shown that the delay is traceable to the challenged policy. For example, there is no evidence (or even allegation) that the delay flows from the requirement that the inmate participate in mental health treatment for a year before a variance is considered. Nor is there an allegation that the Department's policy mandated Diamond's delay for reasons unrelated to assessing medical need.

Similarly, Plaintiffs have not explained how enjoining "enforce[ment of] Section 286.311 and Health Bulletin 15.05.23 or any other policy that . . . delays hormone therapy for inmates with gender dysphoria based on requirements that are unrelated to their medical needs," FAC at 36-37, would remedy the delay Diamond faces.

The bottom line is that Plaintiffs have not shown that any Plaintiff has standing to pursue any claim related to hormone treatment. Thus, they have not met their burden at this stage to show that class certification is appropriate as to this subclaim. Moreover, even assuming for argument's sake that Diamond has standing to assert a claim based on delay, Plaintiffs have not shown that the proposed class at large is subject to this policy or practice. Either way, there is no indication that Diamond's delay claim is typical of the class. Finally, a deliberate-indifference claim that requires individualized assessments of the length of delay and details of medical need is also unlikely to present sufficiently common issues of law and fact for the entire class.

For all of these reasons, Plaintiffs' request to certify a class regarding hormone treatment will be denied.

**B.**

Turning to the denial of social accommodations, there is no real question about standing.[5] The Department acknowledges it has not allowed gender-dysphoria-related social accommodations for any inmate since the policy change. ECF No. 83-1 at ¶ 12. It also does not rebut Plaintiffs' declarations, which state social accommodations have been revoked, and items obtained thereby have been prohibited and confiscated. ECF No. 78-3 ¶ 27; ECF No. 78-4 ¶ 14; ECF No. 78-5 ¶ 19; ECF No. 78-6 ¶ 12; ECF No. 78-7 ¶ 13. Because the Department confiscated the items in response to the new policy, Plaintiffs' injuries are concrete, traceable to the Department's actions, and redressable by a court order.

The Department devotes little argument to the social accommodations claim, and what it does argue focuses on the merits instead of challenging Plaintiffs' showing of numerosity, commonality, typicality, adequacy, and compliance with Rule 23(b). As Plaintiffs correctly point out, *see* ECF No. 91 at 11, the court should consider the merits only to the extent necessary to decide the class-certification issue. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013); *Brown*, 817 F.3d at 1234.

---

[5] The Department did not challenge standing as to social accommodations. Still, I have an independent obligation to consider jurisdiction. *Mirage Resorts, Inc. v. Quiet Nacelle Corp.*, 206 F.3d 1398, 1400-01 (11th Cir. 2000).

Plaintiffs have demonstrated compliance with the Rule 23(a) prerequisites. First, the class of inmates with gender dysphoria who are denied social accommodations is sufficiently numerous. The parties agree there are at least 180 inmates in this category. *See, e.g.*, ECF No. 78 at 22; ECF No. 83 at 20; 46-7 at 3; ECF No. 83-1 ¶ 7. That is more than enough to satisfy numerosity. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Next, there is commonality. Everyone in the proposed class faces the same injury. *See Wal-Mart*, 564 U.S. at 349-50 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." (cleaned up)). It is undisputed that all named Plaintiffs lost their social accommodations pursuant to the new policy. *See, e.g.*, ECF No. 83-1 at ¶ 12; ECF No. 78-3 ¶¶ 27-28; ECF No. 78-4 ¶¶ 14, 16; ECF No. 78-5 ¶¶ 18-19; ECF No. 78-6 ¶¶ 11–12; ECF No. 78-7 ¶¶ 13-14. Plaintiffs have demonstrated commonality because their claims can be resolved together through assessment of a policy that applies to the whole class. Similarly, the named Plaintiffs' claims related to the denial of social accommodations are typical of the other class members' claims. The evidence shows no salient differences between named Plaintiffs and other class members. All seem to have lost access to social accommodations in much the same manner. *See, e.g.* ECF No. 78-3 ¶¶ 27-28; ECF No. 78-4 ¶¶ 14, 16; ECF No. 78-5 ¶¶ 18-19 (all averring prison officials confiscated clothing and makeup after implementation of

the policy). And all class members challenge the same practice (the policy of banning social accommodations for inmates with gender dysphoria) based on the same legal theory (Eighth Amendment deliberate indifference).

Plaintiffs have also demonstrated adequacy. *See* ECF No. 78-2; ECF No. 78-8; ECF No. 78-9; ECF No. 78-10. The named Plaintiffs' interests are not antagonistic to the interests of the other class members—all challenge the same conduct. *Cf. Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) (explaining that antagonistic interests undermine adequacy if "some party members claim to have been harmed by the same conduct that benefitted other members of the class"). Further, based on their declarations, I find that the proposed class counsel is qualified, experienced, and will be able to navigate the proposed class litigation.

Finally, Plaintiffs have demonstrated that this is a proper Rule 23(b)(2) class. As with the Rule 23(a) prerequisites, the Department does not contest the propriety of a (b)(2) class for the social accommodations claim. Rule 23(b)(2) classes are permitted when "a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360. Here, a single injunction enjoining the Department's policy precluding social accommodations would provide the relief sought by each class member.

Because Plaintiffs have satisfied each requirement, the motion for class certification will be granted as to the claim regarding social accommodations.

## II.

To certify a class, a court must "define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). As explained above, the only class claim relates to the denial of social accommodations and the corresponding relief sought. Plaintiffs' counsel from the American Civil Liberties Union Foundation of Florida, The American Civil Liberties Union Foundation, and Steptoe LLP are appointed as class counsel. The class is defined as all persons who are or will be incarcerated in the custody of the FDC who have been diagnosed with gender dysphoria and who, absent HSB 15.05.23, would be provided social accommodations to treat their gender dysphoria if deemed medically necessary for them.

Plaintiffs' motion for class certification (ECF No. 78) is GRANTED to the extent set out above. Named Plaintiffs Reiyn Keohane, Sasha Mendoza, Sheila Diamond, Karter Jackson, and Nelson Boothe are designated class representatives, and Plaintiffs' counsel is designated class counsel.

SO ORDERED on October 22, 2025.

*s/ Allen Winsor*
Chief United States District Judge

13