# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

_____

REIYN KEOHANE, et al.,

     Plaintiffs,

vs.                                Case No.  4:24-cv-434

RICKY D. DIXON, in his
Official capacity as
Secretary of the Florida
Department of Corrections,
et al.,

     Defendants.
_____/


REMOTE DEPOSITION OF:
TIM FITZGERALD


ON BEHALF OF:           Defendants

DATE:                   December 10, 2025

TIME:                   10:04 a.m. to 2:54 p.m.

LOCATION OF WITNESS:    Crawfordville, Florida


_____

REPORTED BY:
MICHELLE SMITH, RDR, FPR, LCR, CCR, CLR, CLVS, CDVS



Governor Noem's spokesperson.  The Governor wants conservative governors across America to work together for reform in the enactment of conservative policy through our Federalist system.  Florida's prison policy is quite simple.  Men are housed in men's facilities and women are housed in women's facilities.  I am copying Molly Best with the Florida Department of Corrections should you need any policy citations or have further questions."

Did I read that correctly?

A.  Yes, sir.  Thank you.

Q.  Now, what I would like is, let's keep this exhibit handy but right now, I would like Sarah, could you please put up the next exhibit in order, which will be Exhibit 9.

(Exhibit Number 9 was marked for identification.)

BY MR. ANSCOMBE:

Q.  And this is Bates pages 43569, or it's just a single page document.  All right.  This is a -- an e-mail from you to Suzonne Kline with a CC to Thomas Reimers, transgender hormone treatment is the subject.  And the date on this is January 12th, 2023 and this is at about 10:36 in the morning, do you see that, sir?



A.  Yes, sir.

Q.  You write to Ms. Kline, "Dr. Kline, I hope you are well.  I called you to discuss FDC policy on transgender hormone treatment, I was asked a question on our policy and need to provide an answer.  Please call me on my cell as I am out of the office today," and providing your cell.  Do you see that?

A.  Yes, sir.  Thank you.

Q.  What -- there's an indication here that you were asked a question on policy, who asked you the question and what was the question?

A.  I don't recall what question I was asked and I don't recall anybody asking me the question or I don't recall the person who asked me the question.

Q.  Do you recall being asked a question?

A.  No, sir.

Q.  Why didn't you write the question down when you e-mailed it to Dr. Kline?

MR. STEELY:  Object to form.  You can answer.

THE WITNESS:  I have no idea.

BY MR. ANSCOMBE:

Q.  Was it because you didn't want to put the



question in writing?

MR. STEELY:  Object to form.  You can answer.

THE WITNESS:  No, sir.

BY MR. ANSCOMBE:

Q.  Was your question to Dr. Kline related to the media inquiry received by the Governor's office two days before?

A.  I don't know.  I would assume not, because that question that went to the press was about how inmates are housed.  This seems to be a question that was asked about hormone treatment, so if I was looking at the two, I would assume not, but I don't recall.

Q.  Okay.  Sarah, could you go back to the preceding Exhibit, Exhibit Number 8, put that one back up.  All right.  Let's -- actually that was in exactly the right place.  Let's -- let's get Brian Griffin's response.  Okay.

Did you provide any information to the executive office of the Governor that contributed to Mr. Griffin's response?

A.  No.

Q.  Have you ever talked to anybody within the executive office of the Governor about this media



inquiry?

A.   No.   Not that I can recall.

Q.   Do you recall ever talking to anybody within the executive office of the Governor about the response given to Mr. O'Neil?

A.   No.   Not that I can recall.

Q.   You did eventually see this response; correct?

A.   Can you scroll up?

Q.   Sarah, can you please scroll up.  Do you see that on January 18th, Michelle Glady sent it to you?

A.   Yes.

Q.   What does F-Y-S-A mean?

A.   For my situation alerts.

Q.   What does that mean?

A.   That means Ms. Glady sent me the below e-mail to make sure that I was aware of the request that came in.

Q.   Let's go back down to the Governor's response, please.  All right.  Mr. Brian, was that -- yeah -- I'm sorry, Mr. Griffin, he states "The Governor wants conservative Governors across America to work together for reform."

So let me ask you there, what reform did you



discussed with synchronization and coordination of staff. And then my -- I don't try to assume that everything is free to share, so that would be my general comment to why I would ask that question but I have no specific recollection of why I would ask that question, just generally how I conduct business.

Q. Did -- could you scroll up, Sarah, please. Michelle Glady indicated she had no objections; correct?

A. That is as it appears, yes, sir.

Q. She told you that the next morning?

A. Yes, sir.

Q. Who is Lance?

A. Are you referring to Lance Neff?

Q. It's -- you are the one who was referring to Lance, so Lance Neff would be -- would be one; right?

A. Yes, sir. The only Lance that I would know would be Lance Neff, he was general counsel.

Q. Why did you want to provide the information to Lance Neff?

A. I don't recall why I specifically wanted to share that information with him, but generally speaking as my course of business is to just share



information across staff that might have an interest.

Q.   Okay.  Well, Mr. Neff would mostly be interested if there were legal implications for FDC; correct?

MR. STEELY:  Object to form.  You can answer.

THE WITNESS:  Can you restate the question, sir?

BY MR. ANSCOMBE:

Q.   What would Mr. Neff's interest be in this topic of conversation?

A.   I don't know particularly what Lance's interest would be or specifically, but as the general counsel for the agency, I try to make him aware of many different topics.

Q.   Why is that?

A.   Normally with the general counsel it is because they're -- they have a broad involvement in every aspect of the agency.

Q.   Is that to ensure that the agency complies with the law?

A.   In a broad sense, yes.

Q.   Going back to the conversation or going back to the e-mail exchange with Dr. Kline on



the -- on the 12th, did she call you?

A.  Could you -- could you provide me a document to refresh my memory of exactly what you're talking about, sir?

Q.  Yes.  Sarah, can you go to that Exhibit. In this e-mail you ask Dr. Kline to call you, so my question is, did she call you?

A.  I'm sure she did, but I don't recall it.

Q.  Do you recall having a conversation with her on or about January 12th regarding transgender hormone treatment?

A.  No, I don't.

Q.  Why did you want to talk to her about transgender hormone treatment?

A.  Inferring from the e-mail, I was asked a question and needed an answer.

Q.  And as you sit here today you don't know what the question was or what the answers was; correct?

A.  No, sir.

Q.  Was -- did the -- did your conversation with Dr. Kline involve the need to enact conservative policies?

MR. STEELY:  Object to form.

THE WITNESS:  I don't think so.



Like I said, I don't -- I don't even remember if she called me or what that conversation was about.

BY MR. ANSCOMBE:

Q.  Do you have a recollection that you had had conversations with people in the Governor's office about ways to re-evaluate FDC's policies with respect to transgender inmates?

A.  I didn't have any policies regarding -- or I didn't have any conversations regarding those policies.

Q.  Since you don't remember who asked you the question, is it fair to say that you can't say that it wasn't somebody at the Governor's office?

A.  I think it's fair to say that I know that I didn't talk with anybody in the Governor's office about transgender policy or crafting of transgender policy, because it's not my normal course of business to be part of that.

BY MR. ANSCOMBE:

Q.  Well, isn't --

A.  So I would have no information to share.

Q.  Isn't part of your --

A.  Would be --



Q.   I'm sorry, sir, go ahead.

A.   Just generally speaking.

Q.   Well, part of your job is to help ensure that there is alignment in policy between the Governor's office and the Florida Department of Corrections; right?

MR. STEELY:  Object to form.

THE WITNESS:  Normally and generally that is within my scope of responsibility.  The transgender policy is not in my scope of responsibility.

BY MR. ANSCOMBE:

Q.   But -- but ensuring alignment of policies is within scope; correct?

A.   Generally, yes.

Q.   Do you have any idea what Dr. Kline told you when you -- when you spoke with her?

A.   I have no recollection of what she told me.

Q.   All right.  Let's go to the next Exhibit, please.

THE REPORTER:  Exhibit 10.

(Exhibit 10 was marked for identification.)

BY MR. ANSCOMBE:



Q.  Exhibit 10 is a -- bears Bates Numbers FDC Officials 043575 through 43577.

Sarah, could you start at the bottom and scroll up slowly so that Mr. Fitzgerald can see this.  All right.  Let's go to the -- well, let's just pause for a minute at the top.  All right.

The -- the most recent part of this e-mail chain is January 13th, 2023 from you to Suzonne Kline where you say thank you, ma'am.

Did I read that correctly?

A.  Yes, sir, thank you.

Q.  All right.  Let's go to the bottom of this.  All right.  Who is Katie Fabian, if you know?

A.  Her e-mail signature block says she's the mental health quality assurance manager.

Q.  Do you know -- have you ever met her, know anything about her?

A.  I may have met her, but I have no recollection of her.

Q.  Okay.  All right.  Sarah, could you scroll a tiny bit higher there.  So on January 13th at 2:39 in the afternoon Katie Fabian sends information to Suzonne Kline:

"Dr. Kline, please see the stats below for



TIM FITZGERALD
KEOHANE vs DIXON

December 10, 2025
118

E R R A T A   S H E E T

PAGE 20 LINE 10 CHANGE Fon 1998 to 1989 REASON transcribing error

PAGE 65 LINE 5 CHANGE ~~FOR~~ TO "FOR YOUR SITUATIONAL AWARENESS REASON transcribing

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

PAGE____ LINE ____ CHANGE _____ REASON _____

Under penalties of perjury, I declare that I have
read the foregoing document and that the facts
stated in it are true.

_____          1/5/2026
              Witness                        DATE

                                          1/5/2026

Timothy S. Fitzgerald
Chief of Staff



TIFFANY SOUTHERLAND
Notary Public
State of Florida
Comm# HH454515
Expires 10/16/2027

ESQUIRE
DEPOSITION SOLUTIONS

800.211.DEPO (3376)
EsquireSolutions.com