# EXHIBIT 25

                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF FLORIDA
                        TALLAHASSEE DIVISION

                              CASE NO. 4:24-cv-00434-AW-MAF

REIYN KEOHANE, et al.,

      Plaintiffs,

vs.

RICKY D.DIXON, et al.,

      Defendants.
_____/


                        DEPOSITION OF
                        MICHAEL HARRELL

            DATE:            August 19, 2025
            TIME:            10:00 a.m. - 1:41 p.m.
            PLACE:           Florida Department of Corrections
                             501 South Calhoun Street
                             Tallahassee, Florida 32399

         Examination of the witness taken before:

                        JEFFREY R. BABCOCK
                           Stenographer



medical need for social transition accommodations, and there was no HSB prohibiting it, would FDC provide the accommodation even if there were security concerns?

MR. STEELY:  Object to form.

THE WITNESS:  Could you repeat that for me?

BY MS. FRALING:

Q.  If it were determined by medical or mental health staff that an inmate with gender dysphoria had a medical need for social transition accommodations, and there were no HSB prohibiting it, would FDC provide the accommodation even if there were security concerns?

MR. STEELY:  Object to form.

THE WITNESS:  It would be an individual decision based on the specifics of that situation.  I believe the answer would be no; however, previously I talked about the inmate that was housed in the Administrative Management unit housing status who was granted access to alternative canteen items through this process.  And the security concerns related -- associated with that inmate and that particular housing status and at that prison were -- in my mind were overriding concerns that ultimately ended up resulting in the inmate being -- his housing status being changed and he received treatment at another facility.  So that's typically the way that something



like that would be handled.

BY MS. FRALING:

Q.  And at the beginning of your answer I believe you said no.  Could you explain why that's the case?

A.  Because, ultimately, if it's deemed by medical that it's a medically necessary device or treatment that has to be provided to the inmate, then security doesn't stand in the way of that treatment.  We work with health care providers and we work with the Office of Health Services to provide a suitable alternative, if there's an overriding security concern on a particular device.  But, you know, it's not a -- certainly not a goal of security to intervene in medically necessary treatment.

Q.  And does the HSB permit alternative canteen items for individuals with gender dysphoria?

A.  And you're referring to the current HSB?

Q.  Yes.

A.  Do you mind if I review it real fast?

Q.  Please.

A.  All right.  Could you repeat your question, please?

Q.  Does the HSB, the one that is currently in effect, permit alternative canteen items for individuals with gender dysphoria?

A.  No, it does not.



Q.  Does the HSB permit grooming standards for individuals with gender dysphoria, consistent with their gender identity?

A.  Correct.  It does not have a provision to allow for grooming standards that aren't consistent with their assigned sex at birth.

Q.  And to be clear, you said are not?

A.  It does not.  Correct.

Q.  And absent a provision, that would not be permitted?

A.  Correct.

Q.  Does the HSB, which is currently in effect, permit clothing items that are consistent with an individual's gender identity for inmates with gender dysphoria?

A.  No.  It does not.

Q.  And absent a provision, that would not be permitted?

MR. STEELY:  Object to form.

THE WITNESS:  Correct.

BY MS. FRALING:

Q.  Now, I have a few questions which I believe you've already answered these, but I want to be very clear that you understand.

If a transgender woman was determined to have a



medical necessity to grow out her hair, would the Department allow her to grow out her hair?

A.  If it were deemed medically necessary, then I believe it would allow.  I don't know that I can speak for what the Department would or wouldn't do absent an existing policy.

MS. FRALING:  Thank you.  So, Mr. Harrell, those were the questions that I have for you.  I want to take a pause here, if that's okay, five-minute pause, would that be --

MR. STEELY:  Sure.

MS. FRALING:  -- agreeable?

(Brief recess.)

MS. FRALING:  So, Mr. Harrell, those are all of my questions.  Similar to as we did with Mr. Weiss's deposition, we'd like to save the remainder of our time to reopen based on documents.

MR. STEELY:  Depends on the documents we get? Sure.  As previously discussed, that's not a problem. I have a couple follow-up questions, though, before we end, is you're done.

                    EXAMINATION

BY MR. STEELY:

Q.  Okay.  Mr. Harrell, you were asked about HSB 15.05.23, and Plaintiffs asked you if the HSB permits

