**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

| | | |
|---|---|---|
| **REIYN KEOHANE,** *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:24-cv-00434-AW-MAF** |
| | ) | |
| **RICKY D. DIXON,** *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |

**JOINT PRETRIAL STIPULATION**

Pursuant to this Court's February 17, 2026 Second Order for Pretrial Conference [ECF No. 157], Plaintiffs Reiyn Keohane, *et al.* ("Plaintiffs") and Defendants Ricky D. Dixon ("Secretary Dixon"), in his official capacity as Secretary of the Florida Department of Corrections ("FDC"), Clayton Weiss, in his official capacity as Health Services Director of the Florida Department of Corrections ("Weiss"), Gary Hewett, in his official capacity as Warden of Wakulla Correctional Institution ("Hewett"), Alonzo Horner, in his official capacity as Warden of Homestead Correctional Institution ("Horner"), and Nan Jeffcoat, in her official capacity a Warden of Florida Women's Reception Center ("Jeffcoat," and together with Secretary Dixon, Weiss, Hewett, and Horner, the "FDC Officials"), stipulate as follows:

1

A.    **BASIS FOR FEDERAL JUDISDICTION**

This Court possesses jurisdiction under 28 U.S.C. §1331 (federal question jurisdiction) and 28 U.S.C. §1343 (civil rights claim jurisdiction).

B.    **CONCISE STATEMENT OF THE NATURE OF THE ACTION**

Plaintiffs and the Certified Class bring this action against the FDC Officials pursuant to 42 U.S.C. §1983 for the alleged violation of civil rights guaranteed by the Eighth Amendment to the United States Constitution.  Plaintiffs claim that FDC has a blanket policy prohibiting the provision of accommodations to enable social transition ("social transition accommodations") to individuals with gender dysphoria, and by implementing this policy, FDC is knowingly subjecting Plaintiffs and other class members to serious harm to their health in violation of the Eighth Amendment. The FDC Officials contend that they did not deny Plaintiffs or class members constitutionally required treatment.

C.    **BRIEF STATEMENT OF EACH PARTY'S CASE**

1.    **Plaintiffs' Statement of the Case**

Plaintiffs, on behalf of themselves and the Class, bring an Eighth Amendment challenge to FDC's policy categorically prohibiting patients with gender dysphoria from being provided social transition accommodations such as clothing, grooming standards, and personal items consistent with their gender identity, regardless of individual medical need for them. The policy, which was enacted in late 2024,

rescinded FDC's prior policy of permitting such accommodations when healthcare providers deemed them likely to help alleviate a patient's gender dysphoria and improve their mental health. Under the prior policy, social transition accommodations were recommended for and provided to all Plaintiffs and other class members. After the change in policy, FDC withdrew all class members' social transition accommodations without considering individual patients' need for them. And under the new policy, social transition accommodations are no longer permitted for anyone, including those patients who—according to FDC medical records and its providers—experienced significant improvement in their mental health as a result of this intervention, and whose mental health significantly decompensated when accommodations were withdrawn. FDC healthcare providers would continue to recommend social transition accommodations to some patients with gender dysphoria if they were permitted to do so, but they have been told that this is no longer permitted.

This is not a dispute between Plaintiffs and their healthcare providers over appropriate treatment for them; they are aligned, but the providers are barred from providing this care they know is significantly improving some patients' mental health. Defendants are, thus, aware of the deleterious effect of the denial of social transition accommodations to some class members and have exhibited deliberate

3

indifference to the serious medical needs of Plaintiffs and the Class by categorically prohibiting this care.

Plaintiffs' claim would prevail solely based on the evidence of FDC's providers' documented observations of the impact of social transition accommodations and their withdrawal on some class members' mental health. But it will be further reinforced by the psychological evaluations of Plaintiffs conducted by Dr. Jennifer Evans, and the testimony of Dr. Dan Karasic—who has treated thousands of patients with gender dysphoria in his more than 30 years as a psychiatrist—about the decades of research and clinical experience showing that social transition can effectively alleviate gender dysphoria.

Defendants' assertion that social transition accommodations can never be medically necessary care is at odds with this research and clinical experience— including FDC's own experience providing this care. They rely on the opinion of their retained expert witness who has barely any experience with patients with gender dysphoria; generally opposes all gender affirming care for incarcerated people—including hormone therapy that FDC deemed medically necessary for many gender dysphoric patients; and asserts that psychotherapy is the preferred treatment for gender dysphoria even though he admits there is no evidence demonstrating that it can help alleviate this condition.

Defendants are aware that denial of social transition accommodations has caused significant mental health deterioration among Plaintiffs and members of the Class, and prohibiting this care from even being considered for any patients with gender dysphoria puts others at substantial risk of harm, in violation of the Eighth Amendment.

An additional independent reason that the categorical ban on social transition accommodations violates the Eighth Amendment is that the decision to rescind this treatment was based not on medical judgment but, rather, political influence. See, e.g. Giraldes v. Roche, 357 Fed. Appx. 885, 886 (9th Cir. 2009) (that "a treatment decision was motivated by something other than medical judgment" can support a deliberate indifference claim).  In the fall of 2022, FDC affirmed that the existing policy, 403.102, should remain in effect, but in early 2023, after the Governor's Office prompted FDC to align its policy with the administration's policy against gender affirming care and the Florida legislature introduced and passed a bill banning the use of state funds for gender-affirming care, FDC initiated the process of rescinding the policy to abolish gender affirming care.

Earlier in this lawsuit, Plaintiffs also challenged FDC's policy regarding hormone therapy for gender dysphoria, but because all Plaintiffs currently receive hormone treatment and there is no imminent risk of that care being discontinued, that issue is not currently justiciable.

## 2.    The FDC Officials' Statement of the Case

Beginning in 2020, the FDC Officials undertook a robust process and conducted extensive research on gender dysphoria.  After this process and research, FDC Officials determined no evidence showed social accommodations qualified as constitutionally required treatment.  As such, FDC Officials removed the blanket authorization for social accommodations when drafting HSB 15.05.23.

The FDC Officials maintain that social accommodations do not qualify as constitutionally required treatment for gender dysphoria.  Outside of a prison, an individual does not receive social accommodations as medical treatment; rather, an individual can simply adopt the clothing and grooming styles of his or her choice. (Doc. 154-6, 7-8 (104:15-105:6)).  While FDC previously granted access to some social accommodations to inmates with gender dysphoria, the undisputed evidence reflects that FDC provided those accommodations to assist inmates with transitioning, not as medical treatment.  (Doc. 154-12, 8 (145:1-19)). Plaintiffs offer only the self-serving statements of their purported experts to support their argument that social accommodations qualify as constitutionally required treatment.  (Doc. 154-4, 32 ¶¶ 68, 69).  At most, Plaintiffs present a difference in medical opinion, "and it's well established that 'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [cannot] support a claim of cruel and unusual punishment.'"  Keohane v.

6

Fla. Dep't Corr. Sec'y, 952 F.3d 1257, 1274 (11th Cir. 2020) ("Keohane I") (quoting

Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991)).  The treatment FDC

provides to class members "isn't 'so unconscionable as to fall below society's

minimum standards of decency'—and thus violat[e] the Eighth Amendment—

merely because it conflicts with the opinions of [Plaintiffs'] retained expert."  Id. at

1275 (quoting Kosilek v. Spencer, 774 F.3d 63, 96 (1st Cir. 2014) (*en banc*)).  Thus,

Plaintiffs cannot demonstrate that social accommodations constitute medical

treatment at all.

Even assuming social accommodations could qualify as medical treatment

under some circumstances, Plaintiffs cannot establish social accommodations

qualify as constitutionally required treatment for any Plaintiff or class member.

Plaintiffs' advocate, Dr. Dan Karasic, did not examine any Plaintiff or class member,

nor did he identify any Plaintiff or class member for whom he believed social

accommodations qualified as constitutionally required.  Karasic's general statements

that social accommodations can be helpful for some gender dysphoric individuals

fails to establish that social accommodations qualify as constitutionally required

treatment for any Plaintiff or class member.  Plaintiffs' other advocate, Plaintiffs'

retained advocate, Jennifer Evans, opined that social accommodations would relieve

Plaintiffs' symptoms of gender dysphoria, but Evans admitted she lacks the

experience to provide medical treatment.  (Doc. 154-9, 6 (175:4-14)).  Evans also

could not think of a situation where she would not find social accommodations constitutionally required for someone who requested them, showing she based her opinions largely on the request of the person rather than on a medical evaluation. (Id., 7 (218:18-23)). Finally, Plaintiffs' argument that Centurion's medical providers would recommend social accommodations for some gender dysphoric inmates but do not so because FDC's policy disallows these accommodations runs contrary to the testimony of Centurion professionals. Centurion's Medical Director testified that "Centurion's contract with FDC requires Centurion to provide health care in accordance with constitutional standards and requires Centurion to ensure that its staff members comply with ethical and professional licensure standards," and, "[w]ith regard to social accommodations, the change from the 2019 Policy to the current HSB did not impact the ability of Centurion providers to meet those requirements when provide mental health care and medical care to inmates diagnosed with gender dysphoria within the parameters of the HSB." (Doc. 145-22, 4, ¶ 8). Thus, no evidence supports Plaintiffs' argument that Centurion providers would recommend social accommodations but FDC's policy prevents them from doing so.

Finally, the undisputed record evidence establishes, if a Centurion provider recommended social accommodations as constitutionally required for a particular inmate, FDC would consider the recommendation and would provide the

accommodations if deemed constitutionally required upon review.  (Doc. 154-7, 15 (203:6-17); Doc. 57, 59:3-6, 99:20-25).  Thus, Plaintiffs cannot demonstrate that the FDC Officials deny constitutionally required care in violation of the Eighth Amendment.

In their Motion for Summary Judgment, the FDC Officials argued that Plaintiffs lack standing to raise their hormone-related claims because FDC continues to provide all Plaintiffs with hormones, and Plaintiffs therefore cannot argue that the HSB denies them medical care.  (Doc. 155 at 29-31).  Plaintiffs agreed that they lacked standing, but only because, in their view, "neither FDC nor Centurion is enforcing the HSB as written with respect to hormone therapy."  (Doc. 161 at 40-41).  Plaintiffs' concession represents an apparent attempt to avoid a ruling on the merits of this claim without conceding the core point of the FDC Officials' standing argument: Plaintiffs lack standing because the HSB complies with the Constitution, and FDC does not deny constitutionally required care to Plaintiffs.  Accordingly, the FDC Officials remain entitled to a ruling that, as to hormone treatment, the HSB complies with the Constitution.

**D.    LIST OF ALL EXHIBITS TO BE OFFERED AT TRIAL WITH OBJECTIONS**

1.    Plaintiffs' Exhibit List, with the FDC Officials' objections noted, is attached hereto as **<u>Exhibit A</u>**.

2.    The FDC Officials' Exhibit List, with Plaintiffs' objections noted, is

attached hereto as **Exhibit B**.

- Plaintiffs also object to FDC Officials' asserted reservation of the right to supplement their exhibit list with numerous broad categories of documents.

**E.    LIST OF ALL WITNESSES, INCLUDING REBUTTAL AND EXPERT**

1. Plaintiffs' Witness List is attached hereto as **Exhibit C**.

2. The FDC Officials' Witness List is attached hereto as **Exhibit D**.

- Plaintiffs object to the following witness because they were not previously disclosed:  Ralph Miller (DC # N06312).

- Plaintiffs further object to FDC Officials' inclusion of categories of unnamed individuals.

**F.    LIST OF WITNESS DEPOSITION DESIGNATIONS**

1. Plaintiffs' Deposition Designations are attached hereto <u>as **Exhibit E.**</u>

- The FDC Officials indicated they object to Plaintiffs submitting deposition designations for FDC witnesses.

**G.    STATEMENT OF ADMITTED FACTS**

1. Centurion of Florida, FDC's medical contractor, provides hormone therapy to treat gender dysphoria for some inmates in FDC custody.

2. FDC's healthcare providers diagnosed Plaintiffs Reiyn J. Keohane (DC # Y55036), Sasha Mendoza (George Mendoza, DC # 099172), Sheila

Diamond (Kelvin L. Coleman Jr., DC # 971855), Karter Jackson (Candace K. Jackson, DC # V29455), and Nelson Booth (Natasha D. Boothe, DC # A62460) with gender dysphoria.

3. FDC is aware that Plaintiffs and the other class members have been diagnosed with gender dysphoria.

4. FDC is responsible for providing treatment to Plaintiffs, including treatment for individuals diagnosed with gender dysphoria.

5. FDC provides hormone therapy to all named Plaintiffs and some other class members to address their gender dysphoria.

6. FDC implemented Procedure 403.012 on July 13, 2017 (the "2017 Procedure"). This procedure provided for mental-health treatment, hormones, and "other treatment and accommodations, although limited to those determined to be medically necessary by the Gender Dysphoria Review Team." (Doc. 154-5, 18, 22).

7. FDC revised Procedure 403.012 in 2019.

8. The revised version of Procedure 403.012 (the "2019 Procedure") specified the accommodations that can be provided to inmates with gender dysphoria, including "allow[ing] inmates to grow and style their hair in accordance with female hair standards," "allow[ing] inmates to wear make-up inside the housing unit," "issu[ing] opposite gender

11

inmate uniforms and undergarments," and "providing alternate canteen and quarterly order menus." (Doc. 154-5, 29).

9. The alternate canteen lists available when the 2019 Procedure was in effect included hairbrushes, makeup, deodorants, shampoos, and undergarments (separate from the state-issued undergarments) that inmates could purchase with their own funds.

10. The Gender Dysphoria Review Team ("GDRT") approved Plaintiffs and other Class Members to receive some social transition accommodations under the 2019 Procedure.

11. Under the 2019 Procedure, after a psychologist's evaluation and recommendation, MDST recommended treatment for gender-dysphoric inmates, and GDRT approved or denied the recommendations.

12. FDC rescinded the 2019 Procedure and implemented HSB 15.05.23 (the "HSB") on September 30, 2024.

13. The HSB defines gender dysphoria as a "psychological disorder caused by clinically significant distress or impairment due to the perceived discrepancy between a person's expressed/experienced gender identity and his or her biological sex." (Doc. 154-1, 12).

14. After the change in policy on September 30, 2024, social transition

12

accommodations previously granted to patients with gender dysphoria were discontinued.

15. Plaintiffs wish to resume receiving social transition accommodations.

16. Following the implementation of the HSB, some inmates with gender dysphoria received medical passes for a bra if FDC deemed them to have sufficient breast development to require a bra for physical support.

17. Plaintiff Mendoza received and continues to hold a bra pass under the HSB.

18. Plaintiffs' expert Dr. Karasic did not examine Plaintiffs or their medical records.

19. FDC Officials' expert Dr. Kaliebe did not meet or examine Plaintiffs.

20. Dr. Evans is a psychologist, not an endocrinologist or a medical doctor and, thus, does not prescribe medication, including hormones.

21. Weiss is not a licensed medical or mental health provider.

## H.   STATEMENT OF AGREED ISSUES OF LAW

1. Prison officials violate the Eighth Amendment's prohibition of cruel and unusual punishments when they act with "deliberate indifference to serious medical needs of prisoners." Estelle v. Gamble, 429 U.S. 97, 104 (1976).

## I.   ISSUES OF FACT REMAINING TO BE LITIGATED

1.    Plaintiffs maintain that the following issues of fact remain to be litigated:

- Whether social transition accommodations can ever be medically necessary to alleviate the symptoms of gender dysphoria.

- Whether FDC's current policy imposes a blanket ban on social transition accommodations regardless of individual medical need.

2.    The FDC Officials maintain that no material issues of fact remain to be litigated and that the Court should grant summary judgment to the FDC Officials.

**J.    ISSUES OF LAW REMAINING FOR DETERMINATION BY COURT**

1.    Plaintiffs maintain the following issues of law remain to be determined by the Court:

- Whether categorically banning social transition accommodations as part of treatment for gender dysphoria without considering individual patients' medical need for them is a violation of the Eighth Amendment.

- Whether the denial of individualized determinations of the medical necessity of social transition accommodations is a violation of the Eighth Amendment.

14

2.    The FDC Officials maintain the following issues of law remain to be determined by the Court:

- Whether FDC violates the Eighth Amendment by denying social accommodations to inmates with gender dysphoria where no FDC or Centurion medical provider recommended them as constitutionally required for any Plaintiff or class member.

- Whether Plaintiffs may assert official-capacity claims against officials who possess no authority to implement any injunctive relief the Court may order.

- Whether Plaintiffs can establish that any of the named FDC Officials violated the Eighth Amendment rights of any named Plaintiff or class member.

**K.    STATEMENT OF DISAGREEMENTS AS TO APPLICATION OF THE F.R.C.P.**

None.

**L.    LIST OF MOTIONS REQUIRING THE COURT'S ATTENTION**

**1.    Plaintiffs:**

- Plaintiffs' Motion in Limine to Treat Centurion Employees as hostile witnesses.

15

**2.    The FDC Officials:**

- The FDC Officials' Motion for Summary Judgment.

- The FDC Officials' Rule 702 Motion to Exclude Testimony of Plaintiffs' Purported Expert Dan Karasic.

- The FDC Officials' Rule 702 Motion to Exclude Testimony of Plaintiffs' Purported Expert Jennifer Evans.

**M.    STATEMENT ON WHETHER THIS IS A JURY OR NON-JURY CASE**

This will be a non-jury trial.

**N.    ESTIMATED LENGTH OF TRIAL**

Counsel for the Parties estimate that five days are required for the trial.

Dated: June 8, 2026

/s/ Li Nowlin-Sohl

Li Nowlin-Sohl (*Pro Hac Vice*)
Leslie Cooper
Sruti J. Swaminathan (*Pro Hac Vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street
New York, NY 10004
Tel: (212) 549-2584
lnowlin-sohl@aclu.org
lcooper@aclu.org
sswaminathan@aclu.org

Daniel B. Tilley (Florida Bar No. 102882)
Samantha J. Past (Florida Bar No. 1054519)
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA**
4343 West Flagler Street, Suite 400
Miami, FL 33134
Tel: (786) 363-2714
dtilley@aclufl.org
spast@aclufl.org

Anthony J. Anscombe (*Pro Hac Vice)*
Sarah E. Norise (*Pro Hac Vice*)
George V. Desh (*Pro Hac Vice*)
Sadaf Misbah (*Pro Hac Vice*)
**STEPTOE LLP**
227 West Monroe, Suite 4700
Chicago, IL 60606
Tel: (312) 577-1300
aanscombe@steptoe.com
snorise@steptoe.com
gdesh@steptoe.com
smisbah@steptoe.com

*Attorneys for Plaintiffs*

_/s/ William R. Lunsford_
William R. Lunsford (*Pro Hac Vice*)
Megan N. McNab (*Pro Hac Vice*)
Macey Rae Jones (*Pro Hac Vice*)
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
megan.everett@butlersnow.com

17

macey.jones@butlersnow.com

George A. Wright (*Pro Hac Vice*)
**BUTLER SNOW LLP**
445 North Blvd.
Suite 300
Baton Rouge, LA 70802
Telephone: (225) 325-8700
Facsimile: (225) 325-8800
george.wright@butlersnow.com

Daniel A. Johnson (Florida Bar No. 91175)
**FLORIDA DEPARTMENT OF CORRECTIONS**
501 South Calhoun Street
Tallahassee, FL 32399-2500
Telephone: (850) 717-3605
dan.johnson@fdc.myflorida.com

*Attorneys for the FDC Officials*

18