**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**REIYN KEOHANE, et al.,**

      **Plaintiffs,**

**v.**                              **Case No. 4:24-cv-434-AW-MAF**

**RICKY D. DIXON, in his official capacity
as Secretary of the Florida Department of
Corrections, et al.,**

      **Defendants.**

_____/

### ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Plaintiffs challenge the State's current policy regarding cross-sex hormone treatment and "clothing and grooming accommodations" for transgender prison inmates. ECF No. 66 at 2-5. The policy substantially limits administration of cross-sex hormones, and it prohibits all inmates—including those with gender dysphoria—from accessing alternate canteen items, wearing opposite-sex undergarments, or departing from sex-specific grooming standards. For example, male inmates with gender dysphoria may not wear long hair, makeup, or women's undergarments. *Id.* at 2-3. In Plaintiffs' view, the State's policy constitutes cruel and unusual punishment in violation of the Eighth Amendment.

The court earlier denied a motion for preliminary injunction. ECF No. 55. The case proceeded through discovery, and at issue now is the Department's summary-

1

judgment motion.[1] After careful consideration of the parties' submissions and their thoughtful and helpful oral arguments, I now conclude the court lacks jurisdiction to consider Plaintiffs' claim as it relates to hormone treatment, but that Plaintiffs' social-accommodations claim survives summary judgment. That portion of Plaintiffs' claim will proceed to trial.

## I.

Plaintiffs are transgender inmates who have been diagnosed with gender dysphoria, which "in general terms, 'refers to the distress that may accompany the incongruence between one's experienced or expressed gender and one's assigned gender.'" *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1262 (11th Cir. 2020) (*Keohane I*) (quoting Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 451 (5th ed. 2013)). They seek cross-sex hormone treatments, which they contend constitute appropriate and necessary medical care for some people with gender dysphoria. They also seek social accommodations, which they contend likewise constitute appropriate and necessary medical care.

In the past, the Florida Department of Corrections provided cross-sex hormone treatment to them and inmates like them. The Department also allowed

---

[1] As before, I will refer to the Defendants collectively as the Department. There are several official-capacity Defendants, *see* ECF No. 66 ¶¶ 19-23, but the claim is essentially one against the Department, an arm of the State. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

social accommodations. For example, it allowed male-to-female transgender inmates to present as women, with makeup, long hair, bras, and other accommodations. But a new policy, issued in September 2024, changes this. Under Health Services Bulletin 15.05.23 (the "HSB"), "[a]ll inmates diagnosed with gender dysphoria will be individually evaluated." ECF No. 154-1 Ex.1A (HSB) at 3. For those requiring treatment, "[p]sychotherapy should be prioritized" and "should include, at a minimum, individual or group clinical psychotherapy weekly and case management at least every 60 days." *Id.* at 5. The HSB removed all provisions related to approval of social accommodations by the Gender Dysphoria Review Team, which were included in previous versions of Procedure 403.012 (Identification and Management of Transgender Inmates and Inmates Diagnosed with Gender Dysphoria). *See* ECF No. 161-8 at 7; ECF No. 161-9 at 7.

As to using cross-sex hormones to treat gender dysphoria, the HSB concludes the practice "is invasive to the integrity of the human body, has effects and consequences which are not readily known or reversible, and may be requested by persons experiencing short-termed delusions or beliefs which may later be changed and reversed." HSB at 6. It also notes that "State law prohibits the Department from expending any state funds to purchase cross-sex hormones" to treat gender dysphoria. *Id.* at 7. Still, it allows for variances to allow administration of cross-sex

hormones to inmates with gender dysphoria "[i]n rare instances deemed medically necessary." *Id.*

Consistent with the new policy, the Department began prohibiting inmates with gender dysphoria from purchasing alternate items from the canteen, such as makeup and opposite-sex undergarments. They also began requiring all male inmates to comply with the male grooming standards, which prohibit long hair. *See* ECF No. 161-24 (HSB 15.05.23 Action Plan: "Inmate will be advised that the alternate canteen and quarterly order menus will be rescinded, and they will have to comply with the grooming standard in accordance with their biological sex. Inmate will be given 30-days (10/24/2024) to come into compliance with the grooming standards, and to consume, dispose, or mail alternate canteen items home at FDCs expense"); *see also* ECF No. 161-25 (HSB FAQs for Non-Health Care Staff); ECF No. 161-26 (Centurion PowerPoint on new HSB).

Through this lawsuit, Plaintiffs challenge both aspects of the new policy. They contend that denying cross-sex hormone treatment and denying social accommodations for transgender inmates violates the Eighth Amendment.

## II.

First, the parties now agree that Plaintiffs lack standing to challenge the policy as it relates to cross-sex hormone treatment. I agree as well, so that aspect of the claim must be dismissed without prejudice.

4

To succeed on any claim, a plaintiff must have standing, which is "an essential and unchanging part of the case-or-controversy requirement." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Standing requires (1) an injury in fact (2) traceable to the defendant's action (3) that is redressable by a favorable decision. *Id.* at 560-61; *see also Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019). Mere disagreement with a policy is insufficient to establish standing. Instead, a plaintiff "must have a 'personal stake' in the dispute." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 379 (2024). In other words, "[a]s Justice Scalia memorably said, Article III requires a plaintiff to first answer a basic question: 'What's it to you?'" *Id.* (quoting A. Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 882 (1983)).

Because Plaintiffs seek prospective relief, they must show "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in original) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). They must support each element of standing "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. So here at the summary-judgment stage, they had to present evidence that there is an imminent threat they will suffer harm from the denial of cross-sex hormone treatment. They must do more than show the possibility of such harm; they must

5

show that such harm is "certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

As Plaintiffs acknowledge, they cannot show such "certainly impending" harm because each of them is currently receiving cross-sex hormone treatment, either under a policy variance or while awaiting a variance determination. ECF No. 162-1 at 41. In Plaintiffs' view, the HSB still prohibits such treatment in most cases, but the Department is not "enforcing the HSB as written." *Id.* at 40. At any rate, the parties agree Plaintiffs are receiving the hormones they seek, and Plaintiffs have not shown any imminent risk of any changed circumstances. Therefore, as they acknowledge, Plaintiffs lack standing to challenge the policy as it relates to cross-sex hormone treatment. That claim will be dismissed without prejudice. *See Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1235 (11th Cir. 2008) (absence of Article III jurisdiction requires dismissal without prejudice).

## III.

Plaintiffs do have standing to challenge the policy as it relates to social accommodations. The parties agree the new policy precludes male-to-female transgender Plaintiffs from wearing long hair, makeup, and women's undergarments.[2] That is a concrete and particularized harm for Article III purposes.

---

[2] Similarly, the policy precludes female-to-male transgender inmates from purchasing alternate canteen items typically available only to male inmates and from purchasing or wearing male undergarments.

*See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339-40 (2016) (noting that a particularized harm is one that "affect[s] the plaintiff in a personal and individual way" and that "intangible injuries can nevertheless be concrete"). That harm is also traceable to the Department's actions, and an injunction requiring the Department to permit social accommodations would redress the injury. I will therefore turn to the merits as to that claim.

Because "inmates must rely on prison authorities to treat their medical needs," governments "have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) (cleaned up). "Prison personnel may not subject inmates to acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* (cleaned up) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Under Supreme Court precedent, "such 'deliberate indifference' by a correctional system to the serious medical needs of its prisoners constitutes the kind of 'unnecessary and wanton infliction of pain'" the Eighth Amendment proscribes. *Id.* at 1504-05 (cleaned up).

To show deliberate indifference, a Plaintiff must make both an objective and a subjective showing. *Keohane I*, 952 F.3d at 1266. For the objective component, the prisoner "must establish an objectively serious medical need—that is, one that has been diagnosed by a physician as mandating treatment or one that is so obvious

that even a lay person would easily recognize the necessity for a doctor's attention—that, if left unattended, poses a substantial risk of serious harm." *Id.* (cleaned up). The Department does not dispute that gender dysphoria constitutes a "serious medical need." The dispute, then, is about the subjective component. To succeed in proving that component, Plaintiffs must show that the Department "acted with 'subjective recklessness as used in the criminal law,'" and that it actually knew its conduct put them "at substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (en banc). This is a heavy burden, but the "whole point" of the subjective requirement is "to isolate those who inflict punishment within the meaning of the Eighth Amendment." *Id.* at 1259 (cleaned up and quoting *Farmer v. Brennan*, 511 U.S. 825, 839 (1994)). Applying these standards, and recognizing that I must accept Plaintiffs' evidence as true at this stage, I conclude Plaintiffs have shown enough as to their social-accommodations claim to survive summary judgment.[3]

---

[3] Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A "material" fact is one that might affect the outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The key issue is "whether the evidence presents a sufficient disagreement to require submission to a [factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. In deciding whether the evidence is "so one-sided," the court must believe all of the non-movants' evidence and draw all reasonable inferences in their favor. *Id.* at 255.

In arguing against summary judgment, the Department first insists there is no actual ban against social accommodations. It maintains that if any inmate demonstrates a medical need for the accommodations, the Department will provide them. And it offers evidence supporting that contention. *See* ECF No. 154-7 at 15 (203:6-17) (testimony from Department's Chief of Medical Services that if the Multidisciplinary Services Team showed that social accommodations were medically necessary, the Department "would have to take it into consideration"). But at this stage, I cannot accept that evidence over Plaintiffs' competing evidence. Viewing the record in the light most favorable to Plaintiffs, I conclude there is a true ban.

First, the HSB does not include social accommodations among the treatment options for consideration. *See* HSB at 4-5. And although the policy indicates cross-sex hormones are available with a variance, it references no possible variances for social accommodations. *See id.* at 6-8. There is also evidence that the Department understood the HSB as a ban on social accommodations. *See* ECF No. 161-24 (HSB 15.05.23 Action Plan: "Inmate will be advised that the alternate canteen and quarterly order menus will be rescinded, and they will have to comply with the grooming standard in accordance with their biological sex. Inmate will be given 30-days (10/24/2024) to come into compliance with the grooming standards, and to consume, dispose, or mail alternate canteen items home at FDCs expense"); *see also*

9

ECF No. 161-25 (HSB FAQs for Non-Health Care Staff); ECF No. 161-26 (Centurion PowerPoint on new HSB). After the new HSB took effect, the section related to accommodations was removed from the gender dysphoria evaluation template Centurion providers used. And the forms once used to indicate that an inmate could purchase alternative canteen items or could grow long hair no longer exist. *See* ECF No. 161-18 at 23 (159:8-21); *id.* at 31 (204:16-24). Next, it is undisputed that no inmates are currently receiving social accommodations. And finally, Plaintiffs have submitted evidence that healthcare providers are declining to provide the accommodations based on the policy. For example, Centurion's 30(b)(6) witness testified that providers "don't have a process to recommend or request accommodations any longer." *See* ECF No. 161-5 at 37-38 (125:23-126:6). And one Centurion psychologist explained that she previously recommended social accommodations but can no longer recommend them because they are not available in any circumstances. *See* ECF No. 161-6 (Joshi Depo.) at 8, 21-22 (35:12-20, 180:20-181:18). Therefore, for summary-judgment purposes, I will accept that the ban applies across the board and would prohibit any inmate from receiving social accommodations at any time—notwithstanding any individual analysis or any medical provider's recommendation.

The parties also dispute whether social accommodations are ever medically necessary. The Department submitted evidence that it is never medically necessary

10

to provide those with gender dysphoria with opposite-sex undergarments or to allow male-to-female transgender inmates with gender dysphoria to wear makeup or long hair. *See, e.g.*, ECF No. 154-6 (Martinez 30(b)(6) Depo. Vol. 2) at 13 (164:8-20); ECF No. 154-14 (Kaliebe Depo.) at 6 (118:2-13); ECF No. 161-2 (Kline Depo.) at 55 (259:21-23) ("The accommodations case, I haven't seen any evidence to show that it's medically necessary."). But Plaintiffs have submitted contrary evidence. They offer their expert's opinion that social accommodations are medically necessary for each of the named Plaintiffs. *See* ECF Nos. 162-12, 162-13, 162-14, 162-15, 162-16. They also point to testimony from the Department's witnesses acknowledging that social accommodations can improve the mental distress associated with gender dysphoria and losing the accommodations can increase symptoms. *See* ECF No. 161-6 (Joshi Depo) at 11 (72:3-8); ECF No. 161-5 (Lay 30(b)(6) Depo.) at 22 (44:11-14); ECF No. 162-3 (Sealed 30(b)(6) Lay Depo.) at 146:19-25 (aware that providers were reporting an improvement in mental health for inmates approved for accommodations under previous policy); ECF No. 161-2 (Kline Depo.) at 13, 52 (53:14-16, 247:12-16). Similarly, Plaintiffs point to sealed evidence that Department providers documented mental health improvements while some named Plaintiffs were provided with accommodations and documented deterioration in some when the accommodations were revoked. *See e.g.*, ECF No. 162-9 at 5; ECF No. 162-10 at 2; ECF No. 162-4 (Sealed Joshi Depo.) at 172:10-18.

11

When presented with competing facts, I do not decide which side is correct; I must accept the version favoring the nonmoving parties. *Cf. Farrow v. West*, 320 F.3d 1235, 1239 n.2 (11th Cir. 2003) (noting that "the 'facts' for summary judgment purposes may not be the actual facts established at trial").[4] Thus, for summary-judgment purposes, I accept that social accommodations can be medically necessary in at least some circumstances.

The bottom line is that for summary-judgment purposes, Plaintiffs have shown that the Department implemented a complete ban on a particular treatment that can be medically necessary. Moreover, for summary-judgment purposes, Plaintiffs have shown that the Department was aware of the fact that denying the requested accommodations placed Plaintiffs or other class members at risk of serious harm. *See, e.g.*, ECF No. 161-5 (Lay 30(b)(6) Depo.) at 22 (44:11-14) (aware that some inmates had an increase in their gender dysphoria symptoms when accommodations were revoked); *id.* at 47 (147:12-17) (Centurion sent FDC provider opinions indicating that previous accommodations were improving inmates' mental

---

[4] As to medical necessity, the Department argues "social accommodations do not constitute 'treatment' at all, much less medically necessary treatment." ECF No. 155 at 37. This is so, the Department contends, because "[o]utside the prison context, an individual could simply adopt the clothing and grooming styles of his or her choice." *Id.* But the fact that certain items are readily obtainable outside the prison context does not mean prison officials are not required to provide them when medically necessary. Regardless, I must accept as true Plaintiffs' evidence that social accommodations are medically necessary for some.

health); ECF No. 162-4 (Sealed Joshi Depo.) at 183:20-184:11 (Centurion psychologist unsurprised that loss of social accommodation was one factor in inmate's suicide "[c]onsidering that some patients were . . . experiencing increased depression and reporting negative symptoms, increased dysphoria, increased anxiety after the accommodations were removed . . . ."). Under these circumstances, Plaintiffs have done enough to survive summary judgment on the issue of whether the Department acted with sufficient subjective recklessness for Eighth Amendment purposes. *See Wade*, 106 F.4th at 1262.

In arguing the opposite, the Department relies heavily on *Keohane I*, in which the Eleventh Circuit upheld the Department's refusal to provide the same accommodations at issue here. *Keohane v. Fla. Dep't of Corr.*, 952 F.3d 1257 (11th Cir. 2020). In that case, the Court explained that it faced—"[a]t worst"—"a situation where medical professionals disagree as to the proper course of treatment for Keohane's gender dysphoria." *Id.* at 1274. And, the Court noted, "it's well established that a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment cannot support a claim of cruel and unusual punishment." *Id.* (cleaned up). But that decision came after a trial on the merits—not at summary judgment. Here, viewing the record in a light most favorable to Plaintiffs, we have—at worst—something beyond a mere disagreement among different providers. The Department acknowledges that gender

13

dysphoria is a serious medical need. Plaintiffs have submitted evidence that the symptoms of gender dysphoria pose significant mental health risks and that social accommodations lessen those symptoms. They have also submitted evidence that the Department was aware that social accommodations ameliorated dangerous symptoms for some inmates and that revocation of social accommodations worsen those symptoms. This is enough for now.[5]

To be sure, Plaintiffs will have to prove at trial that this is something beyond a difference of opinion as to appropriate treatment for gender dysphoria. They will have to show a consensus in the medical community that the requested accommodations are appropriate and necessary. *See Keohane I*, 952 F.3d at 1275 ("Put simply, when the medical community can't agree on the appropriate course of care, there is simply no legal basis for concluding that the treatment provided is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" (quoting *Harris*, 941 F.2d at 1505)); *Gibson*

---

[5] Similarly, *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014) (en banc), on which the Department also relies, *see* ECF No. 155 at 41, was decided after a trial on the merits. In that case, the question was whether the Massachusetts Department of Corrections violated the Eighth Amendment by limiting treatment options for those with gender dysphoria. *Id.* at 81-82. The Department provided some treatment but did not offer sex reassignment surgery. *Id.* at 90-91. Thus, the Court concluded, there was no constitutional violation even if the DOC did not provide the most efficacious treatment. But it did not do so on a summary-judgment record, on which it would have had to view all evidence in a light most favorable to the plaintiff.

*v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) (noting that where "there is robust and substantial good faith disagreement dividing respected members of the expert medical community, there can be no claim under the Eighth Amendment"); *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc) ("The law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is not the place of our court to 'second guess medical judgments' or to require that the DOC adopt the more compassionate of two adequate options."); *Colwell v. Bannister*, 763 F.3d 1060, 1070 (9th Cir. 2014) ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference.").

This will likely be a difficult burden. Indeed, prisoners presenting deliberate-indifference claims always have "a steep hill to climb." *Keohane I*, 952 F.3d at 1266; *accord Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272 (11th Cir. 2020). That is in part because "the Constitution doesn't require that the medical care provided to prisoners be 'perfect, the best obtainable, or even very good.'" *Keohane I*, 952 F.3d at 1266 (quoting *Harris*, 941 F.2d at 1510). Instead, "medical treatment violates the Eighth Amendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* (quoting *Harris*, 941 F.2d at 1505) (alterations adopted). But the issue at this

15

stage is whether the court can say the record is so one-sided that the Department must prevail as a matter of law. The Department has not shown that to be the case.

The Department also argues that even if social accommodations are medically necessary, there can be no finding of deliberate indifference because the Department provides other care for those with gender dysphoria. This argument is not without some force. It is undisputed the Department does not turn a blind eye to gender dysphoria. It provides psychotherapy. And as explained above, it provides hormone treatment. Thus, there can be no conclusion based on this record that the Department offers medical care for gender dysphoria that "is so cursory as to amount to no treatment at all." *Cf. Mandel v. Doe*, 888 F.2d 783, 789 (11th Cir. 1989) ("When the need for treatment is obvious, medical care which is so cursory as to amount to no treatment at all may amount to deliberate indifference.").

Still, even when there is some treatment, there can be an Eighth Amendment violation. "[D]eliberate indifference may be established by a showing of grossly inadequate care as well as by a decision to take an easier but less efficacious course of treatment." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *cf. also Fields v. Smith*, 653 F.3d 550, 556 (7th Cir. 2011) ("Surely, had the Wisconsin legislature passed a law that DOC inmates with cancer must be treated only with therapy and pain killers, this court would have no trouble concluding that the law was unconstitutional. Refusing to provide effective treatment for a serious medical

16

condition serves no valid penological purpose and amounts to torture."); *cf. also West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) (cited in *Mandel v. Doe*) ("Although the plaintiff has been provided with aspirin, this may not constitute adequate medical care. If deliberate indifference caused an easier and less efficacious treatment to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care." (marks omitted)).[6]

At trial, Plaintiffs will have to prove that the care they do (or can) receive is constitutionally inadequate. It will not be enough to show that social accommodations are helpful or more efficacious than other treatments alone. *Cf. Kosilek*, 774 F.3d at 89 ("The question before our court . . . is not whether antidepressants and psychotherapy alone are sufficient to treat GID, or whether GID constitutes a serious medical need. Rather, the question is whether the decision not to provide [sex reassignment surgery]—in light of the continued provision of all ameliorative measures currently afforded Kosilek and in addition to antidepressants and psychotherapy—is sufficiently harmful to Kosilek so as to violate the Eighth

---

[6] Plaintiffs rely on *Fields v. Smith*, which upheld a decision finding unconstitutional a state law prohibiting hormones and surgery for inmates with gender dysphoria. 653 F.3d 550 (7th Cir. 2011); *see* ECF No. 161 at 27. But that case involved a factual record omitting "any evidence that another treatment could be an adequate replacement for hormone therapy." *Fields*, 653 F.3d at 556. Here, Defendants will have an opportunity to present evidence that its selected methods of treatment adequately substitute for the specific relief Plaintiffs seek.

Amendment."); *Hoffer*, 973 F.3d at 1271-72 (explaining that the question is not "whether, if we were sitting as a common-law court, we might conclude that ordinary prudence requires [the requested] treatment"). Instead, Plaintiffs will have to show that care that excludes social accommodations "is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271. This, again, will be a difficult task. Still, the Department has not shown entitlement to summary judgment.

The Department also argued at the hearing that Plaintiffs cannot point to a particular human being who acted with deliberate indifference. *See* ECF No. 184 at 8:19-9:11. But Plaintiffs have presented evidence that the Department itself has imputed knowledge that its policy is causing harm or will cause harm. *See, e.g.*, ECF No. 161-5 (Lay 30(b)(6) Depo.) at 22 (44:11-14). Plaintiffs will of course have to demonstrate at trial that the Department "was actually aware that [its] own conduct caused a substantial risk of serious harm to the plaintiff[s]." *Wade*, 106 F.4th at 1261. And that the Department "acted with 'subjective recklessness as used in the criminal law.'" *Id.* (quoting *Farmer*, 511 U.S. at 839). A defendant who subjectively believes he is acting appropriately and that his course of action will not cause harm is not violating the Eighth Amendment. The question to be answered at trial will not be whether social accommodations are appropriate treatment; it will be whether the denial of them constitutes deliberate indifference. *Cf. Kosilek*, 774 F.3d at 91 ("Even

18

if the district court had been correct in its erroneous determination that [sex reassignment surgery] was the only medically adequate treatment for Kosilek's GID, the next relevant inquiry would be whether the DOC also knew or should have known this fact, but nonetheless failed to respond in an appropriate manner. In answering this question, it is not the district court's own belief about medical necessity that controls, but what was known and understood by prison officials in crafting their policy." (citation omitted)).

### CONCLUSION

The Department's motion for summary judgment (ECF No. 155) is GRANTED in part and DENIED in part as set out above. The Eighth Amendment claim as it relates to cross-sex hormone treatment is dismissed without prejudice for lack of Article III jurisdiction. The Eighth Amendment claim as it relates to a ban on social accommodations will proceed to trial as currently scheduled.

SO ORDERED on June 24, 2026.

s/ *Allen Winsor*
Chief United States District Judge

19